UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTINA MELITO, CHRISTOPHER LEGG, ALISON PIERCE, and WALTER WOOD, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN EAGLE OUTFITTERS, INC., a Delaware corporation, AEO MANAGEMENT CO., a Delaware corporation, and EXPERIAN MARKETING SOLUTIONS, INC.,<br><br>Defendants. | NO. 1:14-cv-02440-VEC<br><br>**CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY** |

Plaintiffs Christina Melito, Christopher Legg, Alison Pierce, and Walter Wood (hereinafter referred to as "Plaintiffs"), by their undersigned counsel, for this class action complaint against Defendants American Eagle Outfitters, AEO Management Co. (collectively referenced herein as "AEO"), Experian Marketing Solutions, Inc., and their present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities (hereinafter referred to as "Defendants") allege as follows:

## INTRODUCTION

1.     <u>Nature of Action</u>.  Plaintiffs, individually and as class representatives for all others similarly situated, bring this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

## PARTIES

2.     <u>Plaintiff  Melito</u>.  Plaintiff, Christina Melito ("Melito"), is a citizen of New York, residing in Suffolk County, New York.

3.     <u>Plaintiff  Legg</u>.  Plaintiff, Christopher Legg ("Legg"), is a citizen of Florida, residing in Broward County, Florida.

4.     <u>Plaintiff  Pierce</u>.  Plaintiff, Alison Pierce ("Pierce"), is a citizen of New York, residing in Erie County, New York.

5.     <u>Plaintiff  Wood</u>.  Plaintiff, Walter Wood ("Wood"), is a citizen of California, residing in Santa Barbara County, California.

6.     <u>Defendant American Eagle Outfitters, Inc.</u>  Defendant, American Eagle Outfitters, Inc., is a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania. AEO is registered to do and is doing business in New York, including in the Southern District, and throughout the United States.

7.     <u>Defendant AEO Management Co</u>.  Defendant, AEO Management Co., is a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania.  AEO Management is registered to do and is doing business in New York, including in the Southern District, and throughout the United States.

8.     <u>Defendant Experian Marketing Solutions, Inc.</u>  Defendant, Experian Marketing Solutions, Inc. ("Experian"), is a Delaware corporation with its principal place of business in Costa Mesa, California.  Experian is registered to do and is doing business in New York, including in the Southern District, and throughout the United States.

## <u>JURISDICTION AND VENUE</u>

9.     <u>Subject Matter Jurisdiction</u>.  This Court has subject matter jurisdiction over Plaintiffs' TCPA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' TCPA claims arise under the laws of the United States, specifically 47 U.S.C. § 227.

10.    <u>Personal Jurisdiction</u>.  This Court has personal jurisdiction over Defendants because they have submitted to New York jurisdiction by registering with the Secretary of State to do business in the state of New York, and the wrongful acts alleged in this Complaint were committed in New York.

11.     <u>Venue</u>.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) as Defendants reside in the district.

### THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

12.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

13.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service."  *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

14.     The TCPA also makes it unlawful for any entity to make more than one call in a 12-month period to any number that is registered with the National Do-Not-Call Registry or that entity's company specific do-not-call list.  *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2) & (d).  The TCPA provides a private cause of action to persons receiving calls in violation of 47 U.S.C. § 227(c)(5).

15.     Federal Communication Commission ("FCC") promulgated regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."  *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum and Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

16.     The FCC confirmed this principle in 2013, when it explained that "a seller …. may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."  *See In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6574 (2013).

17.     The FCC also promulgated regulations that mass dialing from prescreened lists constitutes calling from an Automatic Telephone Dialing System ("ATDS").  The Commission then held that a dialing system is an ATDS if:

> "The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, *or from a database of numbers. . .* [1]

18.     The FCC again confirmed in 2008 that mass dialing from a list of numbers is an ATDS.  Specifically, the FCC held:

> In this Declaratory Ruling, we affirm that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers.  In its Supplemental Submission, ACA argues that the Commission erred in concluding that the term "automatic telephone dialing system" includes a predictive dialer. ACA states that debt collectors use predictive dialers to call specific numbers provided by established customers, and that a predictive dialer meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, *not when it dials numbers from customer telephone lists.*

> …

> Most importantly, the Commission said that, to find that calls to emergency numbers, health care facilities, and wireless numbers are permissible when the dialing equipment is paired with predictive dialing software and a database of numbers, but prohibited when the equipment operates independently of such lists, *would be inconsistent with the avowed purpose of the TCPA and the intent of Congress in protecting consumers from such calls.* [2]

## BACKGROUND ON UNSOLICITED SMS ACTIVITY

19.     In recent years, marketers who have often felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

---

[1] *See* 2003 TCPA Order, 18 FCC Rcd at 14091, para. 131 (emphasis added).
[2] FCC TCPA Order, Jan. 4, 2008, *available at* http://hraunfoss.fcc.gov/edocs_public/attachmatch/FCC-07-232A1.pdf (emphasis added).

20.     One of the most prevalent alternatives is bulk advertising through so-called Short Message Services. "Short Message Services" or "SMS" is a messaging system that allows for the transmission and receipt of short text messages (usually no more than 160 characters) to and from wireless telephones.

21.     SMS messages are directed to a wireless device using the telephone number assigned to the device. When an SMS message is successfully made, the recipient's wireless phone rings, alerting him or her that a message is being received. As wireless telephones are inherently mobile and are frequently carried on their owner's person, SMS messages may be received by the called party virtually anywhere in the world.

22.     According to a recent study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds – from coupons to phishing schemes – sent directly to user's cell phones."[3] In fact, "57% of adults with cell phones have received unwanted or spam text messages on their phone."[4]

23.     Unlike more conventional advertisements, SMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text messaging plan, regardless of whether the message is authorized.

24.     Due to the growing concern over unwanted SMS message advertisements, the Federal Communications Commission ("FCC") updated its rules on consent.

---

[3] Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research Center (2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx (last visited January 15, 2015).
[4] *Id.*

## FACTUAL ALLEGATIONS

### Defendant AEO

25.     Defendant American Eagle Outfitters, Inc. is a publicly traded company and is a leading global specialty retailer offering high-quality clothing, accessories, and personal care products at affordable prices under its American Eagle Outfitters and Aerie brands.

26.     Defendant AEO Management Co. is a subsidiary of Defendant American Eagle Outfitters, Inc. and operates Defendant American Eagle Outfitters, Inc.'s website and promotions.

27.     AEO utilizes bulk marketing by advertising through SMS.

28.     AEO makes, either directly or through Experian, SMS calls using ATDS equipment and software that has the capacity to dial numbers randomly or sequentially as well as dial numbers from lists to cellular telephones whose owners have not provided prior express consent to receive such calls ("Spam Texts"), including Plaintiffs.

29.     Until November 21, 2013, eBay Inc. ("eBay") provided marketing services to AEO, which included the transmission of Spam Texts.

30.     eBay made SMS calls using ATDS equipment and software that has the capacity to dial numbers randomly or sequentially as well as dial numbers from lists to cellular telephones whose owners have not provided prior express consent to receive such calls (Spam Texts).

### Defendant Experian

31.     Defendant Experian provides marketing services, including the use of mass text message advertising, to clients including Defendant AEO.

32.     AEO hired Experian to send Spam Texts on its behalf in November 2013 and continues to hire Experian through 2015.

33.     Experian caused texts to be sent on behalf of AEO as follows:



AEO Program Flow: American Eagle

34.     As can be seen from this overview: 1) AEO provides Experian with the campaign request form; 2) AEO deploys to Experian a list of numbers to which texts will be sent ("Campaign Ready File"); 3) Experian sends the information to Archer USA, Inc.'s ("Archer") texting platform; 4) Experian schedules text messages to be sent; and 5) text messages are sent.

35.     In causing the texts to be made, Defendant Experian uses ATDS equipment and software that has the present capacity to dial numbers randomly or sequentially as well as dial from lists.

36.     Further, the system used by Experian uses prize logic to run promotions for different coupons that are randomly selected from a pre-arranged award amount or percentage. For example, a person who clicks the link can receive 10%, 20% or 30% off.  The fact that the

system uses prize logic to randomly picks "winners" for various discounts demonstrates that the system has the capacity to randomly or sequentially dial numbers.

37.     In addition, there is no human intervention in the actual dialing of the texts. Instead, the texts are sent out from a database list en masse by the thousands without human intervention.

38.     Starting on or around November 21, 2013, Defendant Experian caused the transmission of Spam Texts on behalf of AEO.

39.     AEO approved of the content of these texts prior to Experian causing the Spam Texts to be sent.

40.     Experian provided AEO reports as to the Spam Texts sent on its behalf.

41.     These Spam Texts were sent to cellular telephones whose owners have not provided prior express consent to receive such Spam Texts, including Plaintiffs.

42.     Experian had control over the texts sent and is directly liable for the texts sent on behalf of Experian.  It is the party with whom AEO contracted to send the texts; it is the party that was provided with the campaign request form; it was the party to whom AEO deployed the campaign ready file; it was the party that sent the information to Archer in order for Experian to use Archer's platform; and it was the party that scheduled the text messages to be sent.  Experian is also the party that sent AEO the reports on the results of the text messaging campaigns.

43.     In the alternative, to the extent that Experian is not directly liable, it is vicariously liable for the actions of Archer to the extent that Archer is deemed to have sent the texts.  Archer is Experian's agent in that Experian used Archer's texting platform to send the texts.

44.     Experian had control of the texting campaign as Experian is the party with whom AEO contracted to send the texts, it is the party that was provided with the campaign request form; it was the party who AEO deployed the campaign ready file; it was the party that sent the information to Archer in order for Experian to use Archer's platform; and it was the party that scheduled the text messages to be sent.  Experian is also the party that sent AEO the reports on the results of the text messaging campaigns.

**Plaintiff Melito**

45.     Beginning in or around February 2014, Melito received numerous Spam Texts from, or on behalf of, AEO on her cellular telephone.

46.     The Spam Texts were from short code 324-53 and advertised promotions offered by AEO and Experian caused the Spam Texts to be sent.  Such advertised promotions included, "AEO:  Free AEO Jeans," "AEO: Award Worthy Outfits:  Get up to $30 off your purchase…," "AEO:  Every fit & length you could ever want.  20% off when you buy our newest shorts…," "AEO:  Party all weekend!  25% off today or 20% off Sat & Sun…," "AEO: Flip flop you don't stop:  FREE flip flops when you buy any two AEO shorts," and "AEO:  Introducing American Beagle Outfitters:  the first line for you & your dog!"

47.     The Spam Texts direct the recipient to go to the websites:  http://dqs.co/8hy86u, on.ae.com/outfit, on.ae.com/Award, on.ae.com/AEOshorts, ae.com, on.ae.com/Lucky, on.ae.com/flipflop, and/or on.ae.com/ABO.

48.     Each of the websites is owned, maintained, and/or operated by Defendant AEO.

49.     Melito did not provide prior express consent, either written or oral, to receive Spam Texts on her cellular telephone from, or on behalf of, AEO.

50.     AEO and Experian are responsible for sending the above-described Spam Texts.

51.     AEO and Experian have sent a large number of Spam Texts to persons in New York, and throughout the United States.

52.     AEO and Experian intend to continue to send similar Spam Texts to persons in New York, and throughout the United States.

**Plaintiff Legg**

53.     Prior to November 22, 2013, AEO and its then-mobile marketer, eBay, promoted a text alert service that utilized the short code 32453, which is the alphanumeric equivalent of the word "EAGLE" when typed on a telephone keypad.

54.     Multiple text messages were sent to Legg offering him discounts if he shopped at AEO online.

55.     On or around November 22, 2013, a time period in which Experian was sending Spam Texts on behalf of AEO, Legg replied to a text sent on behalf of AEO with the instruction to Stop sending him texts.

56.     On or about November 22, 2013, Experian and AEO caused a response text message to be sent, confirming that it received Legg's stop instruction, and further stating that Legg would not receive any more texts from AEO.[5]

57.     Despite confirming Legg's stop request and stating that Legg would not receive any further texts, AEO and Experian caused Spam Texts to be sent to Legg on November 28, 2013 and November 29, 2013.

58.     On or about November 30, 2013, Legg again replied to a Spam Text with the instruction to stop sending him Spam Texts, and received a text message back stating that he would no longer receive Spam Texts regarding AEO.

59.     On or about December 1, 2013, Legg again replied to a Spam Text with the instruction to Stop sending him Spam Texts.

60.     Despite again confirming Legg's Stop request and stating that Legg would not receive any more Spam Texts relating to AEO, AEO and Experian caused additional Spam Texts to be sent to Legg on December 2, 2013.

61.     On or about December 2, 2013, Legg again replied to an AEO Spam Text with the instruction to Stop sending him texts.

62.     Despite more than four Stop requests, AEO and Experian caused Legg to be sent an additional Spam Text on December 3, 2013.

63.     AEO and Experian are responsible for sending the above-described Spam Texts.

64.     AEO and Experian have made a large number of Spam Texts to persons in Florida, and throughout the United States.

_____

[5] Legg does not allege that the confirmatory opt-out text message was in any way unlawful – only the subsequent Spam Texts send by Defendants thereafter.

65.     AEO and Experian intend to continue to send similar Spam Texts to persons in Florida, and throughout the United States.

**Plaintiff Pierce**

66.     In or around December 2013, Pierce provided consent to AEO for the receipt of texts to her cellular telephone.

67.     In January 2014, Pierce decided she no longer wanted to receive texts from AEO and texted STOP in response to several text messages sent on behalf of AEO that advertised AEO's AERIE brand.

68.     On at least four occasions in December 2013, Pierce attempted to opt-out of receiving Spam Texts from AEO by texting "STOP" in response to the Spam Texts she received from AEO.  But the texts did not end after Pierce attempted to opt-out.  Instead, the Spam Texts continued.

69.     Pierce complained to AEO customer service via Facebook messaging on multiple occasions.  Only after she had received dozens of Spam Texts did the texting cease.

70.     AEO and Experian are responsible for sending the above-described Spam Texts.

71.     AEO and Experian have sent a large number of Spam Texts to persons in New York, and throughout the United States.

72.     AEO and Experian intend to continue to send similar Spam Texts to persons in New York, and throughout the United States.

**Plaintiff Wood**

73.     On December 12, 2014, Defendants began transmitting Spam Texts to Wood's cellular phone.

74.     The "from" field of the SMS transmissions was identified as "237-43."

75.     Defendants use the SMS short-code "237-43" to send text messages.

76.     The Spam Texts advertised promotions offered by AEO its brand, Aerie, including on December 12, 2014 at 11:02 a.m.:

Aerie: What she REALLY
wants! 40% off our fave
holiday bras & MORE! Get
gifting & ship it all for free!
Only on.ae.com/favebras

77.     On December 12, 2014 at 2:03 p.m., Defendants transmitted the following text

message to Wood's wireless phone:

Aerie: Get it by Christmas!
Last day for FREE
standard shipping.
Plus, BOGO 50% off
including new arrivals!
on.ae.com/BOGO

78.     On December 31, 2014 at 2:03 p.m., Defendants transmitted the following text

message to Wood's wireless phone:

Aerie: NYW Special! Take 25%
Off + Free Shipping, on.ae.com/
NYE only! Use Code
NEWYEARS now thru 1.1.

79.     On January 3, 2015 at 11:03 p.m., Defendants transmitted the following text

message to Wood's wireless phone:

Aerie: Free Legging w/ $45
purchase in stores today only!
Plus, save up to $40 thru
Tomorrow, 1.11. Get coupon:
on.ae.com/Save.

80.     On January 16, 2015 at 2:04 p.m., Defendants transmitted the following text

message to Wood's wireless phone:

Aerie: AMAZING,
MINDBLOWING, HUGE SALE!
Take an extra 60% off clearance
+ up to $40 off your purchase
online w/code LONGWKND thru
1.19! Shop: on.ae.com/SALE

81.     Wood did not provide prior express consent, either written or oral, to receive

Spam Texts on her cellular telephone from, or on behalf of, AEO.

82.    AEO and Experian are responsible for sending the above-described Spam Texts.

83.    AEO and Experian have sent a large number of Spam Texts to persons in California, and throughout the United States.

84.    AEO and Experian intend to continue to send similar Spam Texts to persons in California, and throughout the United States.

## AEO CLASS ACTION ALLEGATIONS

85.    <u>Class Definition</u>.  Pursuant to CR 23(b)(2) and (b)(3), Plaintiffs bring this case as a class action on behalf of National Classes as defined as follows:

> <u>AEO Spam Text Class</u>:  All persons in the United States who:  (a) received a text message sent by AEO and/or a third party acting on AEO's behalf; (b) promoting AEO's goods or services; (c) on their cellular telephone line; (d) that were sent using the telephony systems that caused the texts to be sent to Plaintiffs; (e) at any time in the period that begins four years before April 8, 2010 to trial.

> <u>AEO Revocation Class</u>:  All persons in the United States who:  (a) received a text message sent by AEO and/or a third party acting on AEO's behalf; (b) after unsubscribing from receiving further text messages from AEO; (c) on their cellular telephone line; (d) that were sent using the telephony systems that caused the texts to be sent to Plaintiffs; (e) at any time in the period that begins April 8, 2010 to trial.

## EXPERIAN CLASS ACTION ALLEGATIONS

86.    <u>Class Definition</u>.  Pursuant to CR 23(b)(2) and (b)(3), Plaintiffs bring this case as a class action on behalf of National Subclasses as defined as follows:

> <u>Experian Spam Text Subclass</u>:  All persons in the United States who:  (a) received a text message sent by Experian and/or a third party acting on Experian's behalf; (b) promoting AEO's goods or services; (c) on their cellular telephone line; (d) that were sent using the telephony systems that caused the texts to be sent to Plaintiffs; (e) at any time in the period that begins November 21, 2013 to trial.

> <u>Experian Revocation Subclass</u>:  All persons in the United States who:  (a) received a text message sent by Experian and/or a third party acting on Experian's behalf; (b) after unsubscribing from receiving further text messages from Experian; (c) on their cellular

telephone line; (d) that were sent using the telephony systems that caused the texts to be sent to Plaintiffs; (e) at any time in the period that begins November 21, 2013 to trial.

Excluded from the AEO Spam Text Class and the AEO Revocation Class are AEO, any entity in which Defendants AEO have a controlling interest or that has a controlling interest in AEO, and Defendant AEO's legal representatives, assignees, and successors.  Excluded from the Experian Spam Text Subclass and the Experian Revocation Subclass are any entity in which Experian has a controlling interest or that has a controlling interest in Experian, and Experian's legal representatives, assignees, and successors.  Also excluded from the aforementioned, collectively referenced as "Classes," is the judge to whom this case is assigned and any member of the Judge's immediate family.

87.    <u>Numerosity</u>.  The Classes are so numerous that joinder of all members is impracticable.  On information and belief, the Classes each have more than 1,000 members.  Moreover, the disposition of the claims of the Classes in a single action will provide substantial benefits to all parties and the Court.

88.    <u>Commonality</u>.  There are numerous questions of law and fact common to Plaintiffs and members of the Classes.  These common questions of law and fact include, but are not limited to, the following:

a.    As to Plaintiffs Melito and Wood and members of the AEO Spam Text Class, whether AEO and/or their affiliates, agents, and/or other persons or entities acting on AEO's behalf violated 47 U.S.C. § 227(b)(1)(A)(iii) by sending unsolicited commercial Spam Texts to the cellular telephone numbers of Plaintiffs and members of the AEO Spam Text Class;

b.    As to Plaintiffs Melito and Wood and members of the AEO Spam Text Class, whether AEO and/or their affiliates, agents, and/or other persons or entities acting on AEO's behalf knowingly and/or willfully violated 47 U.S.C. § 227(b)(1)(A)(iii) by sending unsolicited commercial Spam Texts to the cellular telephone numbers of Plaintiffs and members of the AEO Spam Text Class, thus entitling Plaintiffs and members of the AEO Spam Text Class to treble damages;

      c.      As to Plaintiff Legg and Pierce and members of the AEO Revocation Class, whether AEO and/or their affiliates, agents, and/or other persons or entities acting on AEO's behalf violated 47 U.S.C. § 227(b)(1)(A)(iii) by sending unsolicited commercial Spam Texts to the cellular telephone numbers of Plaintiffs Legg and Pierce and members of the AEO Revocation Class after unsubscribing from receiving such Spam Texts;

      d.      As to Plaintiffs  Legg and Pierce and members of the AEO Revocation Class, whether AEO and/or their affiliates, agents, and/or other persons or entities acting on AEO's behalf knowingly and/or willfully violated 47 U.S.C. § 227(b)(1)(A)(iii) by sending unsolicited commercial Spam Texts to the cellular telephone numbers of Plaintiffs Legg and Pierce and members of the AEO Revocation Class after unsubscribing from receiving such Spam Texts, thus entitling Plaintiffs Legg and Pierce and members of the AEO Revocation Class to treble damages;

      e.      Whether AEO is liable for Spam Texts promoting AEO's products and/or services sent by AEO's affiliates, agents, and/or other persons or entities acting on AEO's behalf;

      f.      Whether AEO is liable for Spam Texts promoting AEO's products and/or services sent to persons after those persons unsubscribed from receiving such Spam Texts, whether sent by AEO, AEO's affiliates or agents, and/or other persons or entities acting on AEO's behalf;

      g.      Whether the telephony systems that caused the texts to be sent to Plaintiffs fit the definition of an Automatic Telephone Dialing System;

      h.      Whether AEO and/or their affiliates, agents, and/or other persons or entities acting on AEO's behalf should be enjoined from violating the TCPA in the future;

      i.      As to Plaintiffs Melito and Wood and members of the Experian Spam Text Subclass, whether Experian and/or its affiliates, agents, and/or other persons or entities acting on Experian's behalf violated 47 U.S.C. § 227(b)(1)(A)(iii) by sending unsolicited commercial

Spam Texts to the cellular telephone numbers of Plaintiffs Melito and Wood and members of the Experian Spam Text Subclass;

j.      As to Plaintiffs Melito and Wood and members of the Experian Spam Text Subclass, whether Experian and/or its affiliates, agents, and/or other persons or entities acting on Experian's behalf knowingly and/or willfully violated 47 U.S.C. § 227(b)(1)(A)(iii) by sending unsolicited commercial Spam Texts to the cellular telephone numbers of Plaintiffs Melito and Wood and members of the Experian Spam Text Subclass, thus entitling Plaintiffs Melito and Wood and members of the Experian Spam Text Subclass to treble damages;

k.      As to Plaintiffs Legg and Pierce and members of the Experian Revocation Subclass, whether Experian and/or its affiliates, agents, and/or other persons or entities acting on Experian's behalf violated 47 U.S.C. § 227(b)(1)(A)(iii) by sending unsolicited commercial Spam Texts to the cellular telephone numbers of Plaintiffs Legg and Pierce and members of the Experian Revocation Subclass after unsubscribing from receiving such Spam Texts;

l.      As to Plaintiffs Legg and Pierce and members of the Experian Revocation Subclass, whether Experian and/or its affiliates, agents, and/or other persons or entities acting on Experian's behalf knowingly and/or willfully violated 47 U.S.C. § 227(b)(1)(A)(iii) by sending unsolicited commercial Spam Texts to the cellular telephone numbers of Plaintiffs Legg and Pierce and members of the Experian Revocation Subclass after unsubscribing from receiving such Spam Texts, thus entitling Plaintiffs Legg and Pierce and members of the Experian Revocation Subclass to treble damages;

m.      Whether Experian is liable for Spam Texts promoting AEO's products and/or services sent by Experian's affiliates, agents, and/or other persons or entities acting on Experian's behalf;

n.      Whether Experian is liable for Spam Texts promoting AEO's products and/or services sent to persons after those persons unsubscribed from receiving such Spam Texts, whether sent by Experian, Experian's affiliates or agents, and/or other persons or entities acting on Experian's behalf;

o.      Whether Experian is liable for Spam Texts to persons on Experian's internal do-not-call list sent by Experian's affiliates, agents, and/or other persons and entities acting on Experian's behalf; and

p.      Whether Experian and/or its affiliates, agents, and/or other persons or entities acting on Experian's behalf should be enjoined from violating the TCPA in the future.

89.      Typicality.  Plaintiffs' claims are typical of the claims of the Classes.  Plaintiffs' claims, like the claims of Classes arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

90.      Adequacy.  Plaintiffs will fairly and adequately protect the interests of the Classes.  Plaintiffs have retained competent and capable attorneys with significant experience in complex and class action litigation, including consumer class actions and TCPA class actions. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so.  Neither Plaintiffs nor their counsel have interests that are contrary to or that conflict with those of the proposed Classes.

91.      Predominance.  Defendants have engaged in a common course of conduct toward Plaintiffs and members of the Classes.  The common issues arising from this conduct that affect Plaintiffs and members of the Classes predominate over any individual issues.  Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

92.      Superiority.  A class action is the superior method for the fair and efficient adjudication of this controversy.  Class wide relief is essential to compel Defendants to comply with the TCPA.  The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Defendants is small because the damages in an individual action for violation of the TCPA are small.  Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the Spam Texts at issue are all automated.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of

adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

93.    <u>Injunctive and Declaratory Relief Appropriate</u>. Defendants have acted on grounds generally applicable to the Classes, thereby sending final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a classwide basis. Moreover, on information and belief, Plaintiffs allege that the Spam Texts sent by Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

**FIRST CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)**
**(Brought on behalf of Plaintiffs Melito and Wood and members of the AEO Spam Text**
**Class and Experian Spam Text Subclass)**

94.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

95.    Plaintiffs bring this claim against Experian as the sender of the Spam Texts. Plaintiffs also bring this claim against AEO because it is liable for the actions of Experian and liable for causing the Spam Texts to be sent without consent.

96.    The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by sending unsolicited commercial Spam Texts to the cellular telephone numbers of Plaintiffs and members of the AEO Spam Text Class and Experian Spam Text Subclass (hereinafter collectively referred to as the "Spam Text Classes").

97.    As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiffs and members of the Spam Text Classes presumptively are entitled to an award of $500

in damages for each and every Spam Text in violation of the statute, pursuant to 47 U.S.C.
§ 227(b)(3)(B).

98.     Plaintiffs and members of the Spam Text Classes are also entitled to and do seek
injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or
entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(A), by
sending unsolicited commercial Spam Texts to cellular telephone numbers, in the future.

<u>SECOND CAUSE OF ACTION</u>
**Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C.
§ 227(b)(1)(A)
(Brought on behalf of Plaintiffs Melito and Wood and members of the AEO Spam Text
Class and Experian Spam Text Subclass)**

99.     Plaintiffs re-allege and incorporate by reference paragraphs 1-93.

100.    Plaintiffs bring this claim against Experian as the sender of the Spam Texts, and
against AEO, as it is liable for the actions of Experian, as well as its own actions, which caused
the Spam Texts to be sent without consent.

101.    The foregoing acts and omissions of Defendants and/or their affiliates, agents,
and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple
knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by sending
unsolicited commercial Spam Texts to the cellular telephone numbers of Plaintiffs and members
of the Spam Text Classes.

102.    As a result of Defendants' and/or their affiliates, agents, and/or other persons or
entities acting on Defendants' behalf knowing and/or willful violations of the TCPA, 47 U.S.C.
§ 227(b)(1)(A)(iii), Plaintiffs and members of the Spam Text Classes are entitled to treble
damages of up to $1,500 for each and every Spam Text in violation of the statute, pursuant to
47 U.S.C. § 227(b)(3).

103.    Plaintiffs and members of the Spam Text Classes are also entitled to and do seek
injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or

entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by sending unsolicited commercial Spam Texts to cellular telephone numbers, in the future.

### THIRD CAUSE OF ACTION
**Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)**
**(Brought on behalf of Plaintiffs Legg and Pierce and members of the AEO Revocation Class and Experian Revocation Subclass)**

104.    Plaintiffs re-allege and incorporate by reference paragraphs 1-93.

105.    Plaintiffs bring this claim against Experian as the sender of the Spam Texts, and against AEO, as it is liable for the actions of Experian, as well as its own actions, which caused the Spam Texts to be sent without consent.

106.    The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by sending unsolicited commercial Spam Texts to the cellular telephone numbers of Plaintiffs Legg and Pierce and members of the AEO Revocation Class and Experian Revocation Subclass (hereinafter collectively referred to as the "Revocation Classes") after unsubscribing from receiving such Spam Texts.

107.    As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiffs Legg and  Pierce and members of the Revocation Classes presumptively are entitled to an award of $500 in damages for each and every Spam Text in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

108.    Plaintiffs Legg and Pierce and members of the Revocation Classes are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(A), by sending unsolicited commercial Spam Texts to cellular telephone numbers that have been unsubscribed from receiving such Spam Texts, in the future.

## FOURTH CAUSE OF ACTION

**Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)**
**(Brought on behalf of Plaintiffs Legg and Pierce and members of the AEO Revocation Class and Experian Revocation Subclass)**

109.   Plaintiffs re-allege and incorporate by reference paragraphs 1-93.

110.   Plaintiffs bring this claim against Experian as the sender of the Spam Texts, and against AEO, as it is liable for the actions of Experian, as well as its own actions, which caused the Spam Texts to be sent without consent.

111.   The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by sending unsolicited commercial Spam Texts to the cellular telephone numbers of Plaintiffs Legg and Pierce and members of the Revocation Classes after unsubscribing from receiving such Spam Texts.

112.   As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiffs Legg and Pierce and members of the Revocation Classes are entitled to treble damages of up to $1,500 for each and every Spam Text in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

113.   Plaintiffs Legg and Pierce and members of the Revocation Classes are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by sending unsolicited commercial Spam Texts to cellular telephone numbers that have been unsubscribed from receiving such Spam Texts, in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the members of the Classes, pray for judgment against Defendants as follows:

A.   Certification of the proposed Classes;

B.      Appointment of Plaintiffs Melito and Wood as representatives of the AEO Spam Text Class;

C.      Appointment of Plaintiffs Legg and Pierce as representatives of the AEO Revocation Class;

D.      Appointment of Plaintiffs Melito and Wood as representatives of the Experian Spam Text Subclass;

E.      Appointment of Plaintiffs Legg and Pierce as representatives of the Experian Revocation Subclass;

F.      Appointment of the undersigned counsel as counsel for the Classes, with Beth E. Terrell and Keith J. Keogh as Co-Lead Class Counsel;

G.      A declaration that Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

H.      An order enjoining Defendants and/or their affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

I.      An award to Plaintiffs and the Classes of damages, as allowed by law;

J.      An award to Plaintiffs and the Classes of attorneys' fees and costs, as allowed by law and/or equity;

K.      Leave to amend this Complaint to conform to the evidence presented at trial; and

L.      Orders granting such other and further relief as the Court deems necessary, just, and proper.

## **DEMAND FOR JURY**

Plaintiffs demand a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this 26th day of June, 2015.

FITAPELLI & SCHAFFER, LLP

By:   /s/ Joseph A. Fitapelli
      Joseph A. Fitapelli
      Email: jfitapelli@fslawfirm.com
      Brian S. Schaffer
      Email:  bschaffer@fslawfirm.com
      Frank J. Mazzaferro
      Email:  fmazzaferro@fslawfirm.com
      475 Park Avenue South, 12th Floor
      New York, New York 10016
      Telephone:  (212) 300-0375
      Facsimile:  (212) 481-1333

TERRELL MARSHALL DAUDT
  & WILLIE PLLC

By:  /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
      Beth E. Terrell, *Admitted Pro Hac Vice*
      Email:  bterrell@tmdwlaw.com
      Mary B. Reiten, *Admitted Pro Hac Vice*
      Email:  mreiten@tmdwlaw.com
      Adrienne D. McEntee, *Admitted Pro Hac Vice*
      Email:  amcentee@tmdwlaw.com
      936 North 34th Street, Suite 300
      Seattle, Washington  98103-8869
      Telephone:  (206) 816-6603
      Facsimile:  (206) 350-3528

SCOTT D. OWENS, P.A.

By:  /s/ Scott D. Owens, *Admitted Pro Hac Vice*
      Scott D. Owens, *Admitted Pro Hac Vice*
      Email:  scott@scottdowens.com
      Patrick C. Crotty
      pccrotty@gmail.com
      3800 S. Ocean Dr., Suite 235
      Hollywood, Florida 33019
      Telephone:  (954) 589-0588
      Facsimile:  (954) 337-0666

KEOGH LAW, LTD

By:   /s/ Keith J. Keogh, *Admitted Pro Hac Vice*
      Keith J. Keogh, *Admitted Pro Hac Vice*
      Email:  keith@keoghlaw.com
      Michael S. Hilicki, *Admitted Pro Hac Vice*
      Email:  michael@keoghlaw.com
      55 W. Monroe St., Suite 3390
      Chicago, Illinois 60603
      Telephone:  (312) 726-1092
      Facsimile:  (312) 726-1093

SIPRUT PC

By: /s/ Joseph J. Siprut
      Joseph J. Siprut
      *jsiprut@siprut.com*
      Ismael T. Salam
      *isalam@siprut.com*
      17 North State Street
      Suite 1600
      Chicago, Illinois 60602
      Telephone:  (312) 236-0616
      Facsimile:  (312) 241-1260

AHDOOT & WOLFSON, PC

By: /s/ Bradley K. King, *Admitted Pro Hac Vice*
      Bradley K. King, *Admitted Pro Hac Vice*
      Email:  bking@ahdootwolfson.com
      1016 Palm Avenue
      West Hollywood, California 90069
      Telephone:  (310) 474-9111
      Facsimile:  (310) 474-8585

*Attorneys for Plaintiffs and the Putative Class*

<u>CERTIFICATE OF SERVICE</u>

I, Beth E. Terrell, hereby certify that on June 26, 2015, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which will send notification of such filing

to the following:

> Craig J. Mariam, *Admitted Pro Hac Vice*
> Email:  cmariam@gordonrees.com
> Kristie Morgan Simmerman, *Admitted Pro Hac Vice*
> Email: ksimmerman@gordonrees.com
> GORDON & REES LLP
> 633 West Fifth Street, Suite 5200
> Los Angeles, California 90071
> Telephone: (213) 576-5000
> Facsimile:  (877) 306-0043
>
> Richard T. Victoria, *Admitted Pro Hac Vice*
> Email: rvictoria@gordonrees.com
> GORDON & REES LLP
> 707 Grant St, Suite 3800
> Pittsburgh, PA 15219
> Phone: (412) 577-7400
> Facsimile: (412) 347-5461
>
> Eric Robert Thompson
> GORDON & REES LLP
> Email: ethompson@gordonrees.com
> 200 South Biscayne Boulevard, Suite 4300
> Miami, Florida  33131
> Telephone:  (305) 428-5300
> Facsimile:  (877) 634-7245
>
> *Attorneys for Defendants American Eagle Outfitters, Inc., and AEO Management*
> *Co.*
>
> Christopher Martin Lomax
> Email: clomax@jonesday.com
> JONES DAY
> 600 Brickell Avenue, Suite 3300
> Miami, Florida  33131
> Telephone:  (305) 714-9719
> Facsimile:  (305) 714-9799

John Alexander Vogt, *Admitted Pro Hac Vice*
Email: javogt@jonesday.com
Richard J. Grabowski, *Admitted Pro Hac Vice*
Email: rgrabowski@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, California  92612
Telephone:  (949) 851-3939
Facsimile:  (949) 553-7539

Paul Bartholomew Green
Email: bartgreen@jonesday.com
JONES DAY
222 East 41st Street
New York, New York 10017
Telephone:  (212) 326-3968
Facsimile:  (212) 755-7306

*Attorneys for Defendant Experian Marketing Solutions, Inc.*

DATED this 26th day of June, 2015.

TERRELL MARSHALL DAUDT & WILLIE PLLC

By:   /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
Beth E. Terrell, *Admitted Pro Hac Vice*
Email:  bterrell@tmdwlaw.com
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
Telephone:  (206) 816-6603
Facsimile:  (206) 350-3528

*Attorneys for Plaintiffs and the Putative Class*

4816-4728-9893, v.  2