UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTINA MELITO, CHRISTOPHER LEGG, ALISON PIERCE, and WALTER WOOD, individually and on behalf of all others similarly situated,<br><br>         Plaintiffs,<br><br>   v.<br><br>AMERICAN EAGLE OUTFITTERS, INC., a Delaware corporation, AEO MANAGEMENT CO., a Delaware corporation, and EXPERIAN MARKETING SOLUTIONS, INC.,<br><br>         Defendants. | NO. 1:14-cv-02440-VEC |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS SETTLEMENT, CONDITIONAL
CERTIFICATION OF CLASS AND ENTRY OF SCHEDULING ORDER**

# TABLE OF CONTENTS

**Page No.**

I.   INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................... 2

    A.   Background and Procedural History ............................................................ 2

    B.   Discovery, Mediation, and Settlement Negotiations ................................... 4

    C.   The Settlement Terms .................................................................................. 6

        1.   The Settlement Class .......................................................................... 6

        2.   Monetary Relief .................................................................................. 6

            a.   Named Plaintiffs' incentive awards ........................................... 7

            b.   Attorneys' fees and litigation expenses ..................................... 7

            c.   Administration costs ................................................................... 8

            d.   Settlement Class payments ......................................................... 8

        3.   Settlement Notice ............................................................................... 9

III. AUTHORITY AND ARGUMENT ..................................................................... 10

    A.   The Settlement Approval Process ............................................................... 10

    B.   Criteria for Settlement Approval ............................................................... 12

        1.   The Settlement Is the Product of Informed, Non-collusive
            Negotiations ...................................................................................... 13

        2.   The Settlement Treats All Class Members Fairly and Raises
            No Red Flags ..................................................................................... 14

        3.   The Settlement Falls Within the Range of Possible Approval .............. 15

            a.   The stage of the proceedings and the amount of
                discovery completed ................................................................... 15

            b.   The risks of establishing liability and damages .......................... 16

        c.      The length and expense of continued litigation ......................... 17

        d.      The range of reasonableness of the settlement fund
                in light of the best possible recovery and in light of
                all the attendant risks of litigation ................................................ 18

IV.     THE COURT SHOULD CERTIFY A SETTLEMENT CLASS ................................... 19

        A.      Rule 23(a) Requirements ...................................................... 20

                1.      Numerosity Is Satisfied ................................................... 20

                2.      Commonality Is Satisfied ................................................. 20

                3.      Plaintiffs' Claims Are Typical of the Settlement Class ......................... 21

                4.      Plaintiffs and Their Counsel Will Adequately Represent
                        the Proposed Settlement Class ................................................ 21

        B.      Rule 23(b)(3) .......................................................... 22

                1.      Common Issues Predominate ................................................ 22

                2.      A Class Action Is Superior ................................................... 23

V.      THE PROPOSED NOTICE PROGRAM IS CONSTITUTIONALLY SOUND ........... 24

VI.     SCHEDULING A FINAL APPROVAL HEARING IS APPROPRIATE ................... 25

VII.    CONCLUSION .......................................................... 25

# TABLE OF AUTHORITIES

**Page No.**

## FEDERAL CASES

*Adams v. AllianceOne Receivables Mgmt., Inc.*,
   No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) .................... 19

*Agne v. Papa John's Int'l, Inc.*,
   286 F.R.D. 559 (W.D. Wash. 2012) ............................................................................ 17

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) .................................................................................................... 23

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
   603 F.2d 263 (2d Cir. 1979) ....................................................................................... 16

*Chin v. RCN Corp.*,
   No. 08-7349, 2010 WL 1257586 (S.D.N.Y. Mar. 12, 2010) ........................................ 14

*Clark v. Ecolab, Inc.*,
   No. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC),
   56722009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ....................................................... 11

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995) .......................................................................................... 20

*Cubbage v. Talbots, Inc.*,
   No. 09-cv-00911-BHS, Dkt. No. 114 (W.D. Wash. Nov. 5, 2012) ............................... 19

*Desai v. ADT Sec. Servs., Inc.*,
   Case No. 1:11-cv-01925 (Dkt. No. 229) (N.D. Ill. Feb. 14, 2013) ............................... 19

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ........................................................................................ 15

*Erica P. John Fund, Inc. v. Halliburton*,
   131 S. Ct. 2179 (2011) ................................................................................................ 22

*Estrada v. iYogi, Inc.*,
   No. 2:13–01989 WBS CKD, 2015 WL 5895942 (E.D. Cal. Oct. 6, 2015) .................... 19

*Fogarazzao v. Lehman Bros., Inc.*,
   232 F.R.D. 176 (S.D.N.Y. 2005) ................................................................................. 21

*Franklin v. Wells Fargo Bank, N.A.*,
    Case No. 14cv2349-MMA (BGS), 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) .......... 19

*Garret, et al. v. Sharps Compliance, Inc.*,
    Case No. 1:10-cv-04030 (Dkt. No. 65) (N.D. Ill. Feb. 23, 2012) ................................... 19

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982) ................................................................................................... 23

*Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    114 F.R.D. 48 (S.D.N.Y. 1987) ................................................................................. 22

*Green v. Service Master*,
    2009 WL 1810769 (N.D. Ill. June 22, 2009) ............................................................. 17

*Hawk Valley, Inc. v. Taylor*,
    301 F.R.D. 169 (E.D. Pa. 2014) .......................................................................... 20, 21

*Hicks v. Morgan Stanley & Co.*,
    No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ............... 17, 18

*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984) ........................................................................... 18

*In re Baldwin-United Corp.*,
    105 F.R.D. 475 (S.D.N.Y. 1984) ............................................................................... 12

*In re Gilat Satellite Networks, Ltd.*,
    No. 02 Civ. 1510, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) .......................... 12, 13

*In re Michael Milken & Assoc. Sec. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) ................................................................................. 13

*In re NASDAQ Market-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) .......................................................................... 11, 12

*In re PaineWebber Ltd., P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) .......................................................... 10, 13, 14, 18

*In re Traffic Executive Ass'n*,
    627 F.2d 631 (2d Cir.1980) ....................................................................................... 12

*Johansen v. GVN Michigan, Inc.*,
    No. 1:15-cv-00912, 2015 WL 3823036 (June 18, 2015) ........................................... 22

*Kalkstein v. Collecto, Inc.*,
   304 F.R.D. 114 (E.D.N.Y. Jan. 5, 2015).........................................................................20

*Kaye v. Amicus Mediation & Arbitration Group, Inc.*,
   300 F.R.D. 67 (D. Conn. 2014)........................................................................................23

*Kristensen v. Credit Payment Serv.*,
   12 F. Supp. 3d 1292 (D. Nev. 2014).................................................................................20

*Maley v. Del Global Tech. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)...............................................................................15

*Manouchehri v. Styles for Less, Inc.*,
   Case No. 14cv2521 NLS, 2016 WL 3387473 (S.D. Cal. June 20, 2016).......................19

*McKenzie Constr. Inc. v. Maynard*,
   758 F.2d 97 (3d Cir.1985)................................................................................................15

*McReynolds v. Richards-Cantave*,
   588 F.3d 790 (2d Cir. 2009).............................................................................................12

*Milstein v. Huck*,
   600 F. Supp. 254 (E.D.N.Y. 1984) ..................................................................................17

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)..........................................................................................................24

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)..........................................................................................................24

*Reed v. Gen. Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) ...........................................................................................13

*Roach v. T.L Cannon Corp.*,
   773 F.3d 401 (2d Cir. 2015).............................................................................................22

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)..............................................................................................21

*Steinfeld v. Discover Fin. Servs.*,
   No. C 12-01118, Dkt. No. 96 (N.D. Cal. Mar. 10, 2014) ...............................................19

*Strougo v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003)..............................................................................18

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
    No. 01 Civ. 11814 (MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ...................... 15

*Versteeg v. Bennett, Deloney & Noyes, P.C.*,
    271 F.R.D. 668 (D. Wyo. 2011) ................................................................. 17

*Vigus v. Southern Ill. Riverboat/Casino Cruises, Inc.*,
    274 F.R.D. 229 (S.D. Ill. 2011) ............................................................. 17

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ............................................................................ 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ..................................................................... 10

*West Virginia v. Chas. Pfizer & Co.*,
    314 F. Supp. 710 (S.D.N.Y. 1970) ......................................................... 16

*Zyburo v. NCSPlus, Inc.*,
    44 F. Supp. 3d 500 (S.D.N.Y. 2014) ............................................... 21, 22

## FEDERAL STATUTES

47 U.S.C. § 227 ...................................................................................................... 1

## FEDERAL RULES

Fed. R. Civ. P. 23(a)(1) ....................................................................................... 20

Fed. R. Civ. P. 23(a)(2) ....................................................................................... 20

Fed. R. Civ. P. 23(a)(3) ....................................................................................... 21

Fed. R. Civ. P. 23(b)(3) ....................................................................................... 22

Fed. R. Civ. P. 23(e)(1) ....................................................................................... 24

## OTHER AUTHORITIES

*Manual for Complex Litigation (Fourth)* §21.312 (2016) ...................................... 24

*Manual for Complex Litigation (Fourth)* §§ 21.632 – 21.634 (2016) ...................... 11

William B. Rubenstein, *Newberg on Class Actions* § 11.28 (3d. ed. 1992) ............................... 13

William B. Rubenstein, *Newberg on Class Actions* § 13.1 (5th ed. 2016 Supp.) ................ 10, 11

William B. Rubenstein, *Newberg on Class Actions* § 13.13 (5th ed. 2016 Supp.) ...................... 1

## I.  INTRODUCTION

Plaintiffs Christina Melito, Christopher Legg, Alison Pierce, and Walter Wood ("Plaintiffs"), have reached a settlement with Defendants American Eagle Outfitters, Inc. and AEO Management Co. ("AEO"), in this proposed class action brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.[1]  The settlement requires AEO to pay $14,500,000 to establish a non-reversionary settlement fund for the benefit of Plaintiffs and the approximately 618,289 proposed Settlement Class members.  All Settlement Class members who submit a simple claim form will receive a cash payment.

The common fund also will be used to pay (1) all costs associated with administration of the settlement, at this time estimated by Plaintiffs at between $408,000 and $647,000[2]; (2) incentive awards of up to $10,000 each to the Plaintiffs, as approved by the Court; (3) an award of attorneys' fees of up to one third, which equals up to $4,832,850, as approved by the Court; (4) an award of costs estimated to be $111,943.80, as approved by the Court; and (5) a maximum payment of $100,000 for database expert work.  If approved, approximately $8,768,206 will be used to pay Settlement Class members.  Plaintiffs' counsel estimate that each claimant will receive between $142 and $285 depending upon the number of claims submitted.

The proposed settlement is more than fair, reasonable, and adequate, and exceeds many approved class settlements under the TCPA on a per class member recovery.  Accordingly, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the settlement; (2)

---

[1] The Settlement Agreement is attached as <u>Exhibit 1</u> to the Declaration of Beth E. Terrell ("Terrell Decl.") submitted in support of this motion.
[2] The final cost of administration will depend on a several factors, including how many names and addresses AEO has in its possession, which will determine how many numbers the administrator must pay third party data sources for names and addresses.  Terrell Decl. ¶ 37. AEO is cross-referencing the texts at issue against its databases for this information.  *Id*.

provisionally certify the proposed Settlement Class; (3) appoint as Class Counsel the law firms Keogh Law, Ltd.; Terrell Marshall Law Group PLLC; Fitapelli & Schaffer, LLP; and Scott D. Owens, PA; (4) appoint Christina Melito, Christopher Legg, Alison Pierce, and Walter Wood as Class Representatives; (5) approve the proposed notice plan; (6) appoint KCC to serve as claims administrator; and (7) schedule the final fairness hearing and related dates.

## II.  STATEMENT OF FACTS

### A.  Background and Procedural History

American Eagle Outfitters, Inc. is a leading global specialty retailer offering clothing, accessories, and personal care products under its American Eagle Outfitters and Aerie brands. Terrell Decl. ¶ 21.  AEO Management Co. is a subsidiary of American Eagle Outfitters, Inc. and operates American Eagle Outfitters, Inc.'s website and promotions.  *Id*. Plaintiffs have alleged that to market its services and increase its customer volume, AEO retains telemarketers that use an automatic telephone dialing system ("ATDS") to send advertising texts on its behalf.  *Id*.  In the operative Consolidated Third Amended Complaint, Plaintiffs allege that AEO (or a vendor on its behalf) sent texts to the cell phones of Plaintiffs Christina Melito, Christopher Legg, Alison Pierce, and Walter Wood, even though Plaintiffs never provided AEO with prior express written consent to do so, or after Plaintiffs unsubscribed from receiving text messages from AEO.  *Id*.  Plaintiffs further allege that AEO sent these unauthorized texts to class members.  *Id*. at ¶ 22. Together, the parties' experts[3] determined that during the Class Period AEO sent authorized texts to approximately 618,289 unique cell phone numbers.  *Id*.

Plaintiff Melito initiated this action on April 8, 2014 in the United States District Court

---

[3] Both Plaintiffs and Defendants retained experts to examine the call data at issue.  Terrell Decl. ¶ 22.  As part of the settlement, the parties agreed to a third database expert to examine the data to identify the class based on the work of the parties' experts.  *Id*.

for the Southern District of New York entitled *Melito v. American Eagle Outfitters, Inc. et al.*, No. 1:14-cv-02440 (S.D.N.Y.) (the "*Melito* Action").   Terrell Decl. ¶ 23.   On May 3, 2014, Plaintiff Legg filed a second lawsuit in the United States District Court for the Southern District of Florida entitled *Legg v. American Eagle Outfitters, Inc.*, No. 0:14-cv-61058 (S.D. Fla.) (the "*Legg* Action"), and later amended his Complaint to add Experian Marketing Solutions.  *Id.*

On December 22, 2014, AEO filed a successful motion to transfer the *Legg* Action to the Southern District of New York pursuant to the First to File Rule, and the *Legg* and *Melito* Actions were consolidated under this case number.   Terrell Decl. ¶ 24.   Plaintiffs then filed a Consolidated Second Amended Complaint against AEO, and included telemarketing vendors eBay Enterprise, Inc. ("eBay"), and Experian Marketing Solutions, Inc. ("Experian").  *Id.*

Near this time, Plaintiff Walter Wood filed a Complaint in the United States District Court for the Northern District of Illinois entitled *Wood v. American Eagle Outfitters, Inc.* Terrell Decl. ¶ 25.   On March 9, 2016, the Parties Stipulated to transfer the *Wood* Action to the Southern District of New York.   *Id.*   On May 12, 2015, AEO successfully filed a Motion to Consolidate the *Wood* Action into the *Melito* Action.   *Id.*   Thereafter, Plaintiffs filed a Consolidated Third Amended Complaint against AEO and Experian (eliminating eBay as a party).  *Id.*  The Court subsequently granted Experian's motion to dismiss without prejudice.  *Id.* AEO then filed a third party action against Experian, which remains pending.  *Id.*

AEO denies all material allegations of the Complaints in the *Melito* Action, the *Legg* Action, the *Wood* Action, and the Consolidated Amended Complaints.  Terrell Decl. ¶ 26.  AEO specifically disputes that it sent or caused to be sent text messages to Plaintiffs or putative class members without their prior express consent, disputes that it violated the TCPA, and disputes that Plaintiffs and putative class members are entitled to any relief from AEO.  *Id.*  AEO further

contends that the Actions would not be amenable to class certification if class certification were sought by Plaintiffs and opposed by AEO.  *Id.*

**B.      Discovery, Mediation, and Settlement Negotiations**

The parties have actively litigated this action for over two years.  Terrell Decl. ¶ 27. Plaintiffs propounded written discovery requests targeting AEO's telemarketing policies and practices, correspondence relating to the relationship between AEO and its vendors, and the calling data necessary to identify the class and establish the scope of the violations.  *Id.*  AEO produced nearly twenty thousand pages of documents, including email correspondence that sheds light on the control that AEO had over its telemarketing agents.  *Id.*

AEO contended that the text data was in the hands of a third party texting platform provider, Archer International.  Terrell Decl. ¶ 28.  AEO's marketing vendor, Experian, hired Archer to send texts on AEO's behalf.  *Id.*  Plaintiffs immediately pursued the data, but Archer declared bankruptcy shortly after being served with Plaintiffs' subpoena.  *Id.*  Plaintiffs were forced to hire bankruptcy counsel to navigate the subpoena process.  *Id.*  When their counsel had to withdraw, Plaintiffs started over with a second law firm.  *Id.*  Eventually, Plaintiffs negotiated with Archer's bankruptcy counsel production of the data, as well as an order requiring Archer to preserve the data and other assets pending the sale of its assets to Waterfall International, Inc.  *Id.* After Archer produced calling records that identify the dates and phone numbers to which Archer sent texts on AEO's behalf, Plaintiffs retained an expert witness who analyzed the call records to identify class members and the number of allegedly unlawful calls.  *Id.*

Plaintiffs also engaged in additional third party discovery.  Terrell Decl. ¶ 29.  Prior to adding Experian as a defendant, Plaintiffs served Experian with a third party subpoena.  *Id.* Experian resisted it, and the parties engaged in substantial meet and confer efforts before Experian agreed to produce over 160,000 pages of documents in a format that was difficult to

search.  *Id.*  These documents were instrumental in determining the glitches and errors in AEO's, Experian's and Archer's systems that made it possible for the unlawful texts to be sent.  *Id.*

AEO's and Experian's documents were also instrumental to Plaintiffs in deposing AEO's Rule 30(b)(6) designees, Erica Dudash, Clinton Field, and Rafiq Ghaswala, and Experian's Rule 30(b)(6) designee, Michael Puffer.  Terrell Decl. ¶ 30.  In addition, AEO took the depositions of Plaintiffs.  *Id.*  Plaintiffs also responded to written discovery.  *Id.*

Moreover, during the course of discovery, Plaintiffs alleged, and AEO denied, that AEO's violations continued after the sale of Archer's assets to Waterfall, forcing Plaintiffs to engage in third party discovery with Waterfall.  Terrell Decl. ¶ 31.  As a result, Waterfall and AEO coordinated to obtain data regarding texts sent Waterfall purchased Archer's assets.  *Id.*

The parties also engaged in motions practice.  Prior to the transfer of the *Legg* Action to this court, Legg compelled production of class data from third party, eBay.  Declaration of Keith Keogh ("Keogh Decl.") ¶ 2.  As part of the process, the *Legg* court ordered an independent expert to assist with data queries.  *See* 14-cv-61058-BLOOM/VALLE (S.D. Fl. Nov. 21, 2014), Dkt. No. 69.  Legg also moved to compel class data from AEO.  *Id.* Dkt. No. 33-1.

In addition, after the *Legg* case was transferred to this Court, the Plaintiffs amended the complaint several times, opposed Experian's motion to dismiss and to strike class allegations in the third party complaint (Dkt. Nos. 130, 131), opposed AEO's motion to stay proceedings (Dkt. No. 167), and opposed Experian's second motion to dismiss based on *Spokeo v. Robins,* 136 S. Ct. 1540 (2016) (Dkt. No. 223).  The outcome of these motions informed the parties about the strengths and weaknesses of their respective claims and defenses.  Terrell Decl. ¶ 32.

As a result of the extensive discovery they engaged in, by the time the parties commenced settlement negotiations, they understood generally the size of the class, and the

extent of class wide damages.  Terrell Decl. ¶ 34.  The parties mediated with the Honorable

Morton Denlow of Judicial Arbitration and Mediation Services, Inc. on June 28, 2016.  *Id.*

During that full-day mediation session, the parties made substantial progress but were unable to

resolve the case due to disagreement over the size of the class.  *Id.*  After months of follow-up

meetings and negotiations, and work with their respective experts, the parties reached agreement

regarding the scope of the class, and on all other material terms.  Keogh Decl. ¶ 5.

## C.    The Settlement Terms

The terms of the parties' proposed settlement are contained within the Settlement

Agreement.  Terrell Decl., Ex. 1.  The following summarizes the Settlement Agreement's terms.

### 1.    The Settlement Class

The proposed "Settlement Class" is comprised of approximately 618,289 persons who,

on or after April 8, 2010 and through and including the date of entry of the Preliminary Approval

Order, received a text message from AEO or any entity acting on its behalf, to his or her unique

cellular telephone number, and who did not provide AEO with appropriate consent under the

TCPA.  Excluded are the Judge to whom this Action is assigned, any member of the Court's staff

and immediate family, and all persons who have excluded themselves from the Settlement Class.

### 2.    Monetary Relief

The Settlement Agreement requires AEO to pay $14,500,000 into a "Settlement Fund."

Settlement Agreement § 2.37.  The Settlement Fund will cover all of the following as approved

by the Court:  payments to Settlement Class members who timely file valid claims; payments to

Class Counsel of up to $4,832,850 in fees and up to approximately $111,943.80 in litigation

costs, which will be updated in the fee petition; costs of administration estimated at between

$408,000 and $647,000; and incentive awards to Plaintiffs Christina Melito, Christopher Legg,

Alison Pierce, and Walter Wood of up to $10,000 each.  *Id.* § 2.36, §§ 11.1-11.3, §§ 12.1-12.2.

If any amounts remain in the Settlement Fund as a result of uncashed checks, the parties will ask the Court to disburse those funds to the National Consumer Law Center.  *Id.* § 12.3.

      a.     Named Plaintiffs' incentive awards

The Settlement Agreement provides that Plaintiffs' counsel may request that the Court approve an incentive award to Plaintiffs.  Settlement Agreement § 6.2.  If approved by the Court, Plaintiffs Christina Melito, Christopher Legg, Alison Pierce, and Walter Wood each will receive an incentive award of $10,000.  The Plaintiffs assisted with drafting the complaints, provided information about their interactions with AEO, responded to discovery, and sat for long, contentious depositions.  Terrell Decl. ¶ 36.  They were also ready to testify at trial.  *Id*.  These awards compensate Plaintiffs for their time, effort, and risks undertaken in prosecuting the case.

      b.     Attorneys' fees and litigation expenses

Under the Settlement Agreement, Plaintiffs' counsel may request that the Court approve an award of attorneys' fees and costs.  Settlement Agreement § 6.1.  Plaintiffs' counsel will file a fee petition with the Court requesting an attorneys' fee award of 33.33% of the Settlement Fund ($4,832,850) to compensate them for the work performed in the case and the risk incurred in taking this action on a contingent basis.  *See* Terrell Decl. ¶ 6; Keogh Decl. ¶ 8-16; Declaration of Joseph Fitapelli ("Fitapelli Decl.") ¶ 9.  The Settlement Agreement is not contingent on the amount of attorneys' fees or costs awarded.  In order for Class Members to review it, Counsel will file their fee and cost request thirty days prior to the objection deadline.  *Id.*

Counsel has incurred approximately $1,999,613 in fees and will update this figure in their fee petition.  *See* Keogh Decl. ¶ 16 ($1,388,955); Terrell Decl. ¶¶ 6-15, 38 ($443,925); Fitapelli Decl. ¶ 10 ($87,623); Declaration of Scott Owens ("Owens Decl.") ¶ 29 ($79,110).

Plaintiffs' Counsel also seek reimbursement for the out-of-pocket costs they have incurred prosecuting this action.  Although the costs may increase slightly, the amount of costs

already incurred is approximately $111,943.80.  Terrell Decl. ¶ 33; Keogh Decl. ¶ 17; Fitapelli Decl. ¶ 11; Owens Decl. ¶ 31.  This amount includes $44,850 in expert fees Plaintiffs' counsel incurred to analyze Defendants' data, identify class members, and determine the number of violations.  The remaining amount is attributable to general litigation expenses such as travel and transcript costs, mediation expenses, and the cost to retain bankruptcy counsel.  In their fee petition, Class Counsel will provide the Court with an updated report itemizing these expenses.

        c.      Administration costs

The parties have retained KCC to administer the settlement and process claims.  Terrell Decl. ¶ 37.  KCC shall be responsible for preparing and sending notice (via email and U.S. mail), fielding questions from Settlement Class members regarding the settlement, establishing and maintaining a settlement website, processing claims, serving CAFA notice, and issuing checks to all members of the Settlement Class who file claims.  Settlement Agreement §§ 10.1-10.2.  As noted above, the parties will have a clearer picture of the administration costs once they know how many names and addresses need to be obtained from third parties.  Yet, even at the high end of the estimate, the costs are very competitive based on the class size and notice scheme.

        d.      Settlement Class payments

The remainder of the Settlement Fund, approximately $8,768,206, will be distributed proportionally to all Settlement Class members who submit a valid and timely claim form.  Settlement Agreement §§ 11-12.  Assuming the Court grants the requested attorneys' fees and litigation expenses, Plaintiffs estimate that each Settlement Class member who submits a claim will receive between $142 and $285.  Terrell Decl. ¶ 35.

To receive a cash payment, Settlement Class members must submit a claim form.  Settlement Agreement § 11.2.  The claims administrator will provide individual notice for any email addresses that AEO provides, or if no e-mail address exists (or is returned as undelivered),

will mail a postcard that can be signed and returned. *Id*. § 10.2. Settlement Class members also may submit claim forms electronically on the Settlement Website. *Id*. Settlement Class members may also download a claim form on the Settlement Website or request to receive a hard copy claim form by mail. Regardless of the method by which they submit their claims, Settlement Class members only need to sign the claim form certifying that the information is correct; although Settlement Class members should include the cellular telephone number at which AEO allegedly contacted them, no documentation or proof is required. *Id*. § 11.2.

Once all the claims have been received, the claims administrator will calculate the amount of an individual Settlement Class member's award on a pro rata basis after deducting any court-awarded attorneys' fees, litigation costs, notice and claims administration expenses, and any court-awarded service awards for the named Plaintiffs. Settlement Agreement § 11.1.

3.   <u>Settlement Notice</u>

In conjunction with preliminary approval, Plaintiffs respectfully ask the Court to approve a notice program, which KCC will administer by (1) performing reverse phone lookups to obtain mailing addresses for Settlement Class members for whom AEO does not have mailing addresses or email addresses; (2) updating Settlement Class address information using the National Change of Address database; (3) emailing notice to Settlement Class members for whom AEO has email addresses; (4) mailing a postcard with a claim form to Settlement Class members for whom AEO does not have email addresses, or for whom email addresses were undeliverable; (5) setting up and maintaining the settlement website; (6) establishing and maintaining a telephone number for Settlement Class members; (7) tracking and processing any persons who request to opt out from the Settlement Class; (8) preparing an internet or print media campaign or to reach cell phone owners; (9) preparing and serving CAFA notice; and (10) calculating and issuing Settlement Awards. Settlement Agreement §§ 10-11.

Settlement Class members will have sixty days from the date the postcard and claim form are mailed, or notice is emailed, to submit a written request to be excluded from the Settlement Class.  Settlement Agreement § 8.1(F).  Settlement Class members also will have sixty days from the initial mailing to object to the settlement.  *Id.*  Class Counsel will post their fee petition on the Settlement Website at least thirty days before the deadline to object.

The postcard that KCC will mail to Settlement Class members, which is written in plain English, summarizes the settlement and clearly sets forth the deadline to submit a claim, request exclusion, or object to the settlement.  Settlement Agreement, Ex. 1.  The postcard includes the amount of Class Counsel's requested fee and provides Settlement Class members with an estimate of their cash award if they file a claim.  *Id.*  The postcard directs the Settlement Class members to a settlement website for further information.  At the settlement website, copies of the Settlement Agreement, settlement notice, claim form, preliminary approval order, and operative complaint will be available for viewing and downloading.  Settlement Agreement § 10.2(B).  The settlement website will also contain detailed information about the settlement, which Settlement Class members can either download or read online.

## III.  AUTHORITY AND ARGUMENT

### A.    The Settlement Approval Process

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (observing there is a "strong judicial policy in favor of settlements, particularly in the class action context") (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)) (internal quotation marks omitted); *see also* William B. Rubenstein, *Newberg on Class Actions* ("Newberg") § 13.1 (5th

ed. 2016 Supp.) (citing cases).  The traditional means for handling claims like those at issue here — individual litigation — would unduly tax the court system, require a massive expenditure of public and private resources, and, given the small value of the claims of the individual class members, would be wholly impracticable.  The proposed settlement is the best vehicle for Settlement Class Members to receive relief in a prompt and efficient manner.

The Manual for Complex Litigation describes a three-step procedure for approval of class action settlements: (1) preliminary approval of the proposed settlement; (2) dissemination of notice of the settlement to all affected class members; and (3) a "fairness hearing" or "final approval hearing," at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.  *Manual for Complex Litigation (Fourth)* ("MCL 4th") §§ 21.632 – 21.634, at 433-34 (2016).  This procedure safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests.  *See* Newberg § 13.1.

Plaintiffs request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement Agreement.  Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and, in some cases, an informal presentation by the settling parties.  *Clark v. Ecolab, Inc.*, No. 07 Civ. 8623(PAC, 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), 56722009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (citation omitted).  The purpose of preliminary evaluation of a proposed class action settlement is to determine whether the settlement "is within the range of possible approval" and thus whether notice to the class is worthwhile.  Newberg § 13.13; *see also In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("Preliminary approval of a proposed settlement is the first in a two-step process required

- 11 -

before a class action may be settled.").  This Court has broad discretion to approve or reject a proposed settlement.  *See McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) ("This Court will disturb a judicially-approved class action settlement only when there is a clear showing that the District Court abused its discretion.").

The Court's grant of preliminary approval will allow the Settlement Class to receive direct notice of the proposed Settlement Agreement's terms and the date and time of the final approval hearing, at which Settlement Class members may be heard regarding the Settlement Agreement, and at which time further evidence and argument concerning the settlement's fairness, adequacy, and reasonableness may be presented.  *See* MCL 4th § 21.634. *see also In re Baldwin-United Corp.*, 105 F.R.D. 475, 485 (S.D.N.Y. 1984) (authorizing provisional class certification and notice "without prejudice to the findings the Court will make after conducting the fairness hearing, at which time all objections or arguments in opposition to the proposed settlements will be heard and considered and proponents must discharge their burden to prove that the proposed settlement agreements are fair and reasonable"); *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir.1980) (to grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness).

## B.    Criteria for Settlement Approval

Preliminary approval of a proposed settlement is warranted "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the reasonable range of possible approval."  *See NASDAQ*, 176 F.R.D. at 102 (citing MCL (Third), at § 30.41 (1995)); *see also In re Gilat Satellite*

*Networks, Ltd.*, No. 02 Civ. 1510, 2007 WL 1191048, at *9 (E.D.N.Y. Apr. 19, 2007).  These criteria are satisfied here.

> 1.   The Settlement Is the Product of Informed, Non-collusive Negotiations

Where a settlement is reached only after extensive arm's-length negotiations by competent counsel who had more than adequate information regarding the circumstances of the Action and the strengths and weaknesses of their respective positions, it is entitled to a "strong initial presumption of fairness."  *In re PaineWebber Ltd., P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).   The opinion of experienced counsel supporting the settlement is entitled to considerable weight in a court's evaluation of a proposed settlement.  *In re Michael Milken & Assoc. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993); *see also Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid.  Lawyers know their strengths and they know where the bones are buried.").   Courts generally presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion, absent evidence to the contrary.  Newberg § 11.28, at 11-59 (3d ed. 1992) (counsel are "not expected to prove the negative proposition of a noncollusive agreement").

The parties engaged the services of a retired judge, the Honorable Morton Denlow, who has extensive experience in resolving TCPA class actions, to assist them with their settlement discussions.  Terrell Decl. ¶ 34.  At all times the settlement discussions were arms-length and adversarial in nature.  *Id.*  The parties made substantial progress toward resolution during a full-day mediation session, but were unable to reach an agreement.  During mediation, it became clear that the parties needed to conduct further discovery into the call data before the case could resolve.  *Id.*  Following mediation, the parties worked with their experts and engaged in additional third party discovery to determine the proper scope of the class.

Plaintiffs' counsel, experienced class action litigators who have litigated and settled dozens of cases, including TCPA cases, are satisfied that they obtained the best deal possible for the class.  *Id.*   Terrell Decl. ¶ 35; Keogh Decl. ¶¶ 10, 12 and 21.  Thus, the proposed settlement is entitled to a "strong initial presumption of fairness."  *PaineWebber*, 171 F.R.D. at 125.

    2.    <u>The Settlement Treats All Class Members Fairly and Raises No Red Flags</u>

Because preliminary approval is simply the first step in the process of approving a settlement, courts have typically screened proposed settlements to determine if they have "obvious deficiencies, such as unduly preferential treatment of class representatives ... or excessive compensation for attorneys."  *Chin v. RCN Corp.*, No. 08-7349, 2010 WL 1257586, at *2 (S.D.N.Y. Mar. 12, 2010) (quoting MCL § 30.41 (3d ed.) (1995)).

This settlement raises no such red flags.  The settlement is not contingent upon approval of attorneys' fees or any incentive awards to the named Plaintiffs.  The Court will separately and independently determine the appropriate amount of fees, costs, and expenses to award to Plaintiffs' counsel and the appropriate amount of any award to the named Plaintiffs.  Plaintiffs' counsel will file a fee petition seeking 33.33% of the Settlement Fund in attorneys' fees plus out-of-pocket litigation costs estimated at $111,943.80.  The notice will disclose Plaintiffs' counsel's fee and cost request to Settlement Class members and Plaintiffs' counsel will post their fee request on the settlement website thirty days before the objection deadline so that Settlement Class members will have sufficient time to evaluate the request and object if they desire.

The settlement treats all class members fairly.  All class members will receive an equal, pro rata share of the Settlement Fund.  The named Plaintiffs will request incentive awards in the amount of $10,000 each.  Like Plaintiffs' counsel's fee request, the Court will independently evaluate the incentive award request and the request will be posted on the settlement website so that Settlement Class members will have an opportunity to object.  For all these reasons, the

proposed settlement treats all proposed Settlement Class members equally and fairly, and there are no "obvious deficiencies" which would prevent preliminary approval.

        3.      <u>The Settlement Falls Within the Range of Possible Approval</u>

To assess a settlement proposal, courts must balance the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the reaction of the class to the settlement; the stage of proceedings and the amount of discovery completed; the risks of establishing liability and damages; the risks of maintaining the class action through trial; the ability of the defendant to withstand a greater judgment; the range of reasonableness of the settlement fund in light of the best possible recovery; and the range of reasonableness of the settlement fund in light of all the attendant risks of litigation. *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). Even at this preliminary stage all of these factors favor settlement approval.

        a.      The stage of the proceedings and the amount of discovery completed

In evaluating the reasonableness of a settlement, courts consider whether the litigation has advanced to a stage where the parties "have a clear view of the strengths and weaknesses of their cases." *See Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01 Civ. 11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) (citation and internal marks omitted). Moreover, "a prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the interests of justice." *McKenzie Constr. Inc. v. Maynard*, 758 F.2d 97, 101–2 (3d Cir.1985). In the class action context, early settlement has far reaching benefits in the judicial system. *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002).

The parties have litigated this case, thoroughly and effectively, for over two years. Plaintiffs' counsel thoroughly analyzed the factual and legal issues involved in this case. Terrell

Decl. ¶¶ 27-32; Keogh Decl. ¶ 6.  Plaintiffs' counsel propounded written discovery, sent subpoenas, and reviewed hundreds of thousands of pages of documents.  *Id.*  When it became clear during mediation that the parties needed additional information regarding the call data to thoroughly assess their respective positions, they agreed to work collaboratively to determine the scope of the class.  The parties reached a settlement only after seeking and obtaining additional call data.  *Id.*  This factor favors settlement approval.

> b.     The risks of establishing liability and damages

In assessing a proposed settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation.  *See Grinnell*, 495 F.2d at 463.  Plaintiffs and their counsel are confident in the strength of their case and their ability to prevail both at class certification and on the merits.  However, AEO insists that it should not be held vicariously liable for calls it did not place, and Plaintiffs risk losing this issue on summary judgment.  Even if Plaintiffs were to win everything at trial, they still would have to collect those amounts from AEO.  It is likely that AEO would file bankruptcy if a much larger judgment was entered.  There was substantial risk that any victory at trial would be hollow, leaving class members with nothing. *See West Virginia v. Chas. Pfizer & Co.,* 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), *aff'd,* 440 F.2d 1079 (2d Cir. 1971); *see also Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).

By contrast, the proposed settlement provides Settlement Class members immediate and certain payment.  Each Settlement Class member who submits a claim will receive a cash payment of approximately $142 to $285.

In addition, Courts have offered differing opinions in other cases under the TCPA regarding whether questions of consent require an individualized inquiry, and therefore whether class certification is appropriate. *Compare, e.g.*, *Vigus v. Southern Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011) (refusing to certify TCPA class where the "proposed class includes a substantial number of people who voluntarily gave their telephone numbers to the [defendant]"), *and Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011) (declining to certify TCPA class in light of individualized inquiry "into whether each individual gave 'express consent' by providing their wireless number" (internal citations omitted)), *with Green v. Service Master*, 2009 WL 1810769, at *2 (N.D. Ill. June 22, 2009) (in a fax blast case, "the question of consent may rightly be understood as a common question and the possibility that some class members may have consented is not sufficient to defeat class certification." (internal citations omitted)), *and Agne v. Papa John's Int'l, Inc.,* 286 F.R.D. 559, 567 (W.D. Wash. 2012) ("Defendants' speculation that customers may have given their express consent to receive text message advertising is not sufficient to defeat class certification.").

### c.     The length and expense of continued litigation

"The expense and possible duration of the litigation are major factors to be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984). Substantial work remained to prepare this case for trial. Although Plaintiffs had obtained calling data and performed expert work, their experts had not been deposed. Substantial briefing, including motions for class certification, summary judgment, and possibly a decertification motion also remained. Further, even in the event that the Class could recover a larger judgment after a trial, the additional delay through trial, post-trial motions, and the appellate process could deny the Class any recovery for years, further reducing its value. *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24,

2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action."); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 257 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation…the passage of time would introduce yet more risks…and would, in light of the time value of money, make future recoveries less valuable than this current recovery").

Because this litigation would have placed significant burdens on both parties and the Court, this factor favors settlement approval.

> d.   The range of reasonableness of the settlement fund in light of the best possible recovery and in light of all the attendant risks of litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. Apr. 1987).   The Court need only determine whether the Settlement falls within a "range of reasonableness." *In re PaineWebber Ltd., P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

The Settlement Agreement provides excellent relief for the proposed class.   AEO has agreed to pay $14,500,000 into a Settlement Fund.   The Settlement Fund is non-reversionary—all funds will be disbursed following final approval.   No funds will revert to AEO.   Each Settlement Class member who submits a claim form will receive a pro rata share of the Settlement Fund after settlement expenses are deducted.   The precise amount of each claimant's award cannot be determined until all claims have been submitted, but Plaintiffs estimate that each claimant will receive between $142 and $285, based on a conservative claims rate range of 5% to 10%, which is slightly higher than claims rates in recent TCPA actions.   Terrell Decl. ¶ 35.

The estimated awards are in line with — and indeed exceed — awards approved in other TCPA settlements.  *See Manouchehri v. Styles for Less, Inc.*, Case No. 14cv2521 NLS, 2016 WL 3387473, at *2, 5 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive $10 cash or $15 voucher); *Franklin v. Wells Fargo Bank, N.A.*, Case No. 14cv2349-MMA (BGS), 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) (approving settlement where class members received $71.16); *Estrada v. iYogi, Inc.,* No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (preliminarily approving TCPA settlement where class members estimated to receive $40); *Cubbage v. Talbots, Inc.*, No. 09-cv-00911-BHS, Dkt. No. 114 (W.D. Wash. Nov. 5, 2012) (finally approving TCPA settlement where class members would receive $40 cash or $80 certificate); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, Dkt. No. 96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98 each); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40 each); *Desai v. ADT Sec. Servs., Inc.,* Case No. 1:11-cv-01925 (Dkt. No. 229) (N.D. Ill. Feb. 14, 2013) (estimating claimants would receive between $50 and $100); *Garret, et al. v. Sharps Compliance, Inc.*, Case No. 1:10-cv-04030 (Dkt. No. 65) (N.D. Ill. Feb. 23, 2012) (claimants received between $27.42 and $28.51).

The proposed settlement is an excellent outcome for the class, especially in light of the risks of continued litigation, as described above.  Even at this preliminary stage, all factors favor settlement approval.  Because the proposed settlement is "within the range" of possible approval, the class should be notified and given the opportunity to evaluate the settlement's terms.

## IV.  THE COURT SHOULD CERTIFY A SETTLEMENT CLASS

Plaintiffs respectfully request that this Court provisionally certify the proposed Settlement Class for settlement purposes under Federal Rule of Civil Procedure 23(a) and (b)(3). Such certification will allow the Settlement Class to receive notice of the settlement and its

terms, including the right to submit a claim and recover money if the settlement is approved, the right to be heard on the settlement's fairness, the right to opt out of the settlement, and the date, time and place of the formal settlement hearing.  For the following reasons, certification of the Class for settlement purposes is appropriate under Rule 23(a) and (b)(3).

**A.      Rule 23(a) Requirements**

1.      Numerosity Is Satisfied

The numerosity requirement of Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1); *see Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (finding numerosity requirement met if a class consists of at least 40 members).  Plaintiffs estimate the proposed Settlement Class consists of approximately 618,289 persons spread throughout the country.  Numerosity is satisfied.

2.      Commonality Is Satisfied

Rule 23(a)(2)'s commonality requirement is satisfied where a plaintiff asserts claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011).  Even a single common question will do.  *Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114, 120 (E.D.N.Y. Jan. 5, 2015) (commonality satisfied despite existence of individualized issues where injuries resulted from a unitary course of conduct).

This case raises numerous common issues, including whether AEO is vicariously liable for texts sent on its behalf and whether class members consented.  Thus, commonality is satisfied.  *See* Fed. R. Civ. P. 23(a)(2); *see also Kristensen v. Credit Payment Serv.*, 12 F. Supp. 3d 1292, 1306 (D. Nev. 2014) (vicarious liability a common issue in TCPA action); *Hawk*

*Valley, Inc. v. Taylor*, 301 F.R.D. 169, 182 (E.D. Pa. 2014) (commonality satisfied in TCPA action where questions included whether vendor exceeded scope of authority by sending faxes).

> 3.   Plaintiffs' Claims Are Typical of the Settlement Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement is not demanding." *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005). Typicality is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) (reversing denial of class certification). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Id.* at 936–37;

Here, Plaintiffs' and Settlement Class members' claims arise from the same course of events: Telemarketing texts sent on AEO's behalf to cell phones. Plaintiffs and proposed Settlement Class members all seek statutory damages for these calls. Typicality is satisfied.

> 4.   Plaintiffs and Their Counsel Will Adequately Represent the Proposed Settlement Class

"The Second Circuit has held that the adequacy requirement is satisfied with respect to the lead plaintiff in this kind of consumer case unless 'plaintiff's interests are antagonistic to the interest of other members of the class.'" *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 503 (S.D.N.Y. 2014) (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009)). Here, Plaintiffs' interests in this litigation are aligned with those of the class. All seek recovery for unlawful telemarketing calls. Plaintiffs hired lawyers that are experienced in class actions generally and TCPA litigation in particular. *See* Keogh Decl. ¶¶ 11-12, 18-26; Terrell

Decl. ¶¶ 16-20; Declaration of Scott Owens ¶¶ 15-23; Declaration of Joseph Fitapelli ¶ 5.  All counsel support the settlement.  *See id.*  Adequacy is satisfied.

**B.      Rule 23(b)(3)**

Class certification under Rule 23(b)(3) is appropriate where (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); *see also Erica P. John Fund, Inc. v. Halliburton*, 131 S. Ct. 2179, 2184 (2011).

1.    Common Issues Predominate

Predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Roach v. T.L Cannon Corp.*, 773 F.3d 401, 405 (2d Cir. 2015) (quotation omitted).  Common questions predominate if class wide adjudication of the common issues will significantly advance the adjudication of the merits of all class members' claims.  *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, 52 (S.D.N.Y. 1987).

This case is particularly well-suited for class treatment because the focus of the case is on AEO's conduct.  The central issue — whether AEO is liable for texts sent using an automatic telephone dialing system to cell phones — will be proved through Archer's and Waterfall's calling records.   Unlike many TCPA actions, individualized issues of consent do not predominate.  The burden is on the defendant to plead and produce evidence of that consent. *Johansen v. GVN Michigan, Inc.*, No. 1:15-cv-00912, 2015 WL 3823036, at *1 (June 18, 2015) (noting burden is on the defendant to plead consent affirmative defense); *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 503 (S.D.N.Y. 2014) (holding defendant failed to make a sufficient

showing that individualized issues of consent would predominate where defendant failed to keep records of consent).  No evidence of consent exists in this case.  Thus, any individualized issues of consent do not predominate.

### 2.    A Class Action Is Superior

Rule 23(b)(3) also requires that a class action be superior to other available methods for adjudicating the controversy.  "The superiority requirement is often met where class members' claims would be too small to justify individual suits, and a class action would save litigation costs by permitting the parties to assert their claims and defenses in a single proceeding.  *Kaye v. Amicus Mediation & Arbitration Group, Inc*., 300 F.R.D. 67, 81 (D. Conn. 2014); *see also Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617 (1997) (noting that "the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all").

A class action is a superior method for the fair and efficient adjudication of this case. Plaintiffs' claims are shared by hundreds of thousands of consumers.  The resolution of all claims held by members of the Classes in a single proceeding would promote judicial efficiency and avoid inconsistent opinions.  *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (noting "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23").  Further, the statutory damages available under the TCPA ($500 per violation, or $1,500 if the violation is willful) are small in comparison to the costs of litigation. As a result, class members are unlikely to be willing or able to pursue relief on an individual basis, making the class action the superior method of adjudicating these claims.

Because the claims are being certified for purposes of settlement, there are no issues with manageability. *Amchem Prods.,* 521 U.S. at 620 ("Confronted with a request for settlement-only

certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").  For these reasons, provisional certification of the Settlement Class is appropriate.

## V.  THE PROPOSED NOTICE PROGRAM IS CONSTITUTIONALLY SOUND

The Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement.  Fed. R. Civ. P. 23(e)(1); *see also* MCL 4th § 21.312.  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The proposed forms of notice, attached as Exhibits 3 and 5 to the Settlement Agreement ("Notices"), do just that.  The Notices are clear, straightforward, and provide persons in the Settlement Class with enough information to evaluate whether to participate in the settlement.  Thus, the Notices satisfy the requirements of Rule 23.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985) (explaining a settlement notice must provide settlement class members with an opportunity to present their objections to the settlement).

The Settlement Agreement provides for direct notice via email and U.S. Mail to members of the Settlement Class for whom AEO has such addresses, and KCC will perform reverse look-ups to obtain addresses for the remaining members of the Settlement Class.  The settlement administrator also will design and implement a print or online media campaign designed to reach Settlement Class members.  This Notice Program satisfies due process especially because Rule 23 does not require that each potential class member receive actual notice of the class action.  *Mullane*, 339 U.S. at 316 (explaining that the Supreme Court "has not hesitated to approve of resort to publication as a customary substitute in [a] class of cases where it is not reasonably

possible or practicable to give more adequate warning"). All in all, the Notice Program constitutes the best notice practicable under the circumstances, provides due and sufficient notice to the Settlement Class, and fully satisfies the requirements of due process and Rule 23.

### VI.  SCHEDULING A FINAL APPROVAL HEARING IS APPROPRIATE

The last step in the settlement approval process is a final approval hearing at which the Court may hear all evidence and argument necessary to make its settlement evaluation. Proponents of the settlement may explain the terms and conditions of the Settlement Agreement, and offer argument in support of final approval. The Court will determine after the final approval hearing whether the settlement should be approved, and whether to enter a final order and judgment under Rule 23(e). Plaintiffs request that the Court set a date for a hearing on final approval at the Court's convenience, but no earlier than 60 days after the objection/exclusion deadline, and schedule further settlement proceedings as set forth in the Proposed Order (1) Conditionally Certifying a Settlement Class, (2) Preliminarily Approving Class Action Settlement, (3) Approving Notice Plan, and (4) Setting Final Approval Hearing.

### VII.  CONCLUSION

For all of the above reasons, the proposed Settlement presented to this Court by all parties is well within "the range of possible approval" and should be preliminarily approved in all respects, as specifically set forth in Plaintiff' Unopposed Motion for Preliminary Approval of Class Settlement and Conditional Certification of Class, and Entry of Scheduling Order.

RESPECTFULLY SUBMITTED AND DATED this 21st day of December, 2016.

TERRELL MARSHALL LAW GROUP PLLC


By:  /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
    Beth E. Terrell, *Admitted Pro Hac Vice*
    Email:  bterrell@terrellmarshall.com
    Mary B. Reiten, *Admitted Pro Hac Vice*
    Email:  mreiten@terrellmarshall.com
    Adrienne D. McEntee, *Admitted Pro Hac Vice*
    Email:  amcentee@terrellmarshall.com
    936 North 34th Street, Suite 300
    Seattle, Washington  98103-8869
    Telephone:  (206) 816-6603
    Facsimile:  (206) 319-54540

    Joseph A. Fitapelli
    Email: jfitapelli@fslawfirm.com
    Brian S. Schaffer
    Email:  bschaffer@fslawfirm.com
    Frank J. Mazzaferro
    Email:  fmazzaferro@fslawfirm.com
    FITAPELLI & SCHAFFER, LLP
    28 Liberty Street, 30th Floor
    New York, New York 10005
    Telephone:  (212) 300-0375
    Facsimile:  (212) 481-1333

    Scott D. Owens, *Admitted Pro Hac Vice*
    Email:  scott@scottdowens.com
    Patrick C. Crotty
    Email:  pccrotty@gmail.com
    SCOTT D. OWENS, P.A.
    3800 S. Ocean Drive, Suite 235
    Hollywood, Florida 33019
    Telephone:  (954) 589-0588
    Facsimile:  (954) 337-0666

Keith J. Keogh, *Admitted Pro Hac Vice*
Email:  keith@keoghlaw.com
Michael S. Hilicki, *Admitted Pro Hac Vice*
Email:  michael@keoghlaw.com
Michael Karnuth, *Admitted Pro Hac Vice*
KEOGH LAW, LTD.
55 West Monroe Street, Suite 3390
Chicago, Illinois 60603
Telephone:  (312) 726-1092
Facsimile:  (312) 726-1093

*Attorneys for Plaintiffs and the Putative Classes*

<u>CERTIFICATE OF SERVICE</u>

I, Beth E. Terrell, hereby certify that on December 21, 2016, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

such filing to the following:

Craig J. Mariam, *Admitted Pro Hac Vice*
Email:  cmariam@gordonrees.com
Kristie Morgan Simmerman, *Admitted Pro Hac Vice*
Email: ksimmerman@gordonrees.com
GORDON & REES LLP
633 West Fifth Street, Suite 5200
Los Angeles, California 90071
Telephone: (213) 576-5000
Facsimile:  (877) 306-0043

Richard T. Victoria, *Admitted Pro Hac Vice*
Email: rvictoria@gordonrees.com
GORDON & REES LLP
707 Grant St, Suite 3800
Pittsburgh, PA 15219
Phone: (412) 577-7400
Facsimile: (412) 347-5461

Eric Robert Thompson
GORDON & REES LLP
Email: ethompson@gordonrees.com
200 South Biscayne Boulevard, Suite 4300
Miami, Florida  33131
Telephone:  (305) 428-5300
Facsimile:  (877) 634-7245

*Attorneys for Defendants American Eagle Outfitters, Inc., and AEO Management Co.*

Christopher Martin Lomax
Email: clomax@jonesday.com
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, Florida  33131
Telephone:  (305) 714-9719
Facsimile:  (305) 714-9799

John Alexander Vogt, *Admitted Pro Hac Vice*
Email: javogt@jonesday.com
Richard J. Grabowski, *Admitted Pro Hac Vice*
Email: rgrabowski@jonesday.com
Paul Bartholomew Green
Email: bartgreen@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, California  92612
Telephone:  (949) 851-3939
Facsimile:  (949) 553-7539

*Attorneys for Defendant Experian Marketing Solutions, Inc.*

DATED this 21st day of December, 2016.

TERRELL MARSHALL LAW GROUP PLLC


By:   /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
      Beth E. Terrell, *Admitted Pro Hac Vice*
      Email:  bterrell@terrellmarshall.com
      936 North 34th Street, Suite 300
      Seattle, Washington  98103-8869
      Telephone:  (206) 816-6603
      Facsimile:  (206) 319-5450

*Attorneys for Plaintiffs and the Putative Classes*