# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

CHRISTINA MELITO, CHRISTOPHER
LEGG, ALISON PIERCE, and WALTER
WOOD, individually and on behalf of all
others similarly situated,

                Plaintiffs,

    v.

AMERICAN EAGLE OUTFITTERS, INC.,
a Delaware corporation, AEO
MANAGEMENT CO., a Delaware
corporation, and EXPERIAN
MARKETING SOLUTIONS, INC.,

                Defendants.

No. 1:14-cv-02440-VEC


**EXPERIAN MARKETING SOLUTIONS, INC.'S**
**OBJECTIONS TO THE PROPOSED CLASS ACTION SETTLEMENT**


JONES DAY
250 VESEY STREET
NEW YORK, NEW YORK  10281
TEL: (212) 326-3939

ATTORNEYS FOR THIRD-PARTY DEFENDANT
EXPERIAN MARKETING SOLUTIONS, INC.

# TABLE OF CONTENTS

Page

I. THE COURT LACKS SUBJECT MATTER JURISDICTION TO ENTER THE PROPOSED SETTLEMENT ............................................................................1

    A.    Legal Standard ............................................................................................1

    B.    Experian Has The Legal Right To Challenge Plaintiffs' Standing.........................3

    C.    Plaintiffs Lack Article III Standing, And The Case Must Be Dismissed ................4

II. THE CLASS DEFINITION IMPERMISSIBLY SWEEPS IN INDIVIDUALS THAT LACK STANDING.................................................................................9

III. ANY ATTEMPT TO NARROW THE CLASS DEFINITION TO THOSE THAT SUFFERED CONCRETE HARM WOULD DESTROY PREDOMINANCE ................12

IV. THE SETTLEMENT CLASS IS UNASCERTAINABLE ................................................13

V. THE PROPOSED SETTLEMENT CLASS DEFINITION IMPROPERLY INCLUDES MEMBERS THAT DID NOT RECEIVE A TEXT MESSAGE VIA AN AUTOMATIC TELEPHONE DIALING SYSTEM ....................................................17

# TABLE OF AUTHORITIES

**Page**

CASES

*Acton v. Intellectual Capital Mgmt., Inc.*,
    2015 WL 9462110 (E.D.N.Y. Dec. 28, 2015) .......................................................19

*Adashunas v. Negley*,
    626 F.2d 600 (7th Cir. 1980) ...............................................................................12

*Ahmed v. Holder*,
    624 F.3d 150 (2d Cir. 2010).....................................................................................1

*Allen v. Wright*
    468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)...........................................2

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)...........................................................................................2, 11

*Arar v. Ashcroft*,
    532 F.3d 157, 168 (2d Cir. 2008)............................................................................3

*Avritt v. Reliastar Life Ins. Co.*,
    615 F.3d 1023 (8th Cir. 2010) ...............................................................................11

*Braitberg v. Charter Communications, Inc.*,
    836 F.3d 925 (8th Cir. 2016) ...................................................................................8

*Brecher v. Republic of Argentina*,
    806 F.3d 22 (2d Cir. 2015)..............................................................................13, 14

*Carrera v. Bayer Corp.*,
    727 F.3d 300 (3d Cir. 2013)..................................................................................14

*Carter v. HealthPort Techs., LLC*,
    822 F.3d 47 (2d Cir. 2016).......................................................................................2

*Coatney v. Synchrony Bank*,
    2016 WL 4506315 (M.D. Fla. Aug. 2, 2016) .......................................................19

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013)..............................................................................................2

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006)......................................................................................11

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006)................................................... *passim*

*Dreher v. Experian Information Solutions, Inc.*,
No. 15-2119, 2017 WL 1948916 (4th Cir. May 11, 2017)......................................8

*Epps v. Earth Fare, Inc.*,
No. 16-08221, 2017 WL 1424637 (C.D. Cal. Feb. 27, 2017) ...............................15

*Errington v. Time Warner Cable, Inc.*,
2016 WL 2930696 (C.D. Cal. May 18, 2016) .......................................................19

*Fontes v. Time Warner Cable Inc.*,
2015 WL 9272790 (C.D. Cal. Dec. 17, 2015) .......................................................19

*Frable v. Synchrony Bank*,
2016 WL 6123248 (D.Minn. Oct. 17, 2016) .........................................................18

*Fullwood v. Wolfgang's Steakhouse, Inc.*,
13 Civ. 7174 (KPF), 2017 WL 377931 (S.D.N.Y. Jan. 26, 2017)...........................7

*General Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 ..........................................................................................................10

*Goodman v. Lukens Steel Co.*,
777 F.2d 113 (3d Cir. 1985)...................................................................................12

*Harper v. Trans Union, LLC*,
2006 WL 3762035 (E.D.Pa. Dec. 20, 2006) .........................................................12

*Hollingsworth v. Perry*,
133 S. Ct. 2652 (2013)..............................................................................................1

*In re Initial Pub. Offering Sec. Litig.*,
471 F.3d 24 (2d Cir. 2006).....................................................................................14

*In re New Motor Vehicles Can. Exp. Antitrust Litig.*,
522 F.3d 6 (1st Cir. 2008)......................................................................................12

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
725 F.3d 244 (D.C. Cir. 2013) .................................................................10, 11, 12

*In re Scotts EZ Seed Litig.*,
304 F.R.D. 397 (S.D.N.Y.2015) ........................................................................13

*Jaffe v. Bank of America, N.A.*,
197 F. Supp. 3d 523 (S.D.N.Y. 2016).................................................................1

*Janes v. Tribourough Bridge & Tunnel Auth.*,
889 F. Supp. 2d 462 (S.D.N.Y. 2012).............................................................10

*Jones v. Credit Acceptance Corp.*,
2016 WL 7320919, *3 (E.D. Mich. Oct. 31, 2016) .........................................18

*Leyse v. Lifetime Entertainment Servs., LLC*,
— Fed. Appx. —, 2017 WL 659894 (2d Cir. Feb. 15, 2017)........................6, 7

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)............................................................................... *passim*

*Lydonville Sav. Bank & Trust Co. v. Lussier*,
211 F.3d 697 (2d Cir. 2000)..............................................................................3

*Marcus v. BMW of North America, LLC*,
687 F.3d 583 (3d Cir. 2012).......................................................................14, 16

*Mazur v. eBay, Inc.*,
257 F.R.D. 563 (N.D. Cal. 2009)....................................................................12

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2011) ............................................................................9

*Morrison v. Nat'l Australia Bank, Ltd.*,
547 F.3d 167 (2d Cir. 2008)..............................................................................3

*O'Shea v. Epson Am., Inc.*,
No. CV 09-8063 PSG CWX, 2011 WL 4352458 (C.D. Cal. Sept. 19, 2011) ........................12

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999)........................................................................................12

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
244 F. Supp. 2d 289 (S.D.N.Y. 2003).............................................................10

*Rajput v. Synchrony Bank*,
2016 WL 6433150 (M.D.Pa. Oct. 31, 2016) ...................................................18

*Reynolds v. Time Warner Cable, Inc.*,
  2017 WL 362025 (W.D.N.Y. Jan. 25, 2017) ........................................................18

*Ries v. AriZona Beverages USA LLC*,
  287 F.R.D. 523 (N.D. Cal. 2012) .......................................................................14

*Rogers v. Epson Am., Inc.*,
  No. 11-57016, 2016 WL 1566698 (9th Cir. Apr. 19, 2016) ................................12

*Rose v. Wells Fargo Advisors, LLC*,
  2016 WL 3369283 (N.D. Ga. June 14, 2016) ......................................................19

*Royal Park Investments SA/NV v. Deutsche Bank National Trust Company*,
  14-CV-4394, 2017 WL 1331288 (S.D.N.Y April 4, 2017) .............................13, 14

*Sartin v. EKF Diagnostics, Inc.*,
  No. CV 16–1816, 2016 WL 3598297 (E.D. La. July 5, 2016) ...............................7

*Satterfield v. Simon & Schuster, Inc.*,
  569 F.3d 946 (9th Cir. 2009) ...............................................................................5

*Schlesinger v. Reservists Comm. to Stop the War*,
  418 U.S. 208 (1974)...........................................................................................10

*Self-Forbes v. Advanced Call Center Technologies, LLC*,
  No. 16-1088, 2017 WL 1364206 (D. Nev. Apr. 12, 2017)....................................15

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016)................................................................................ *passim*

*State Mut. Life Assur. Co. of Am. v. Aurthur Anderson & Co.*,
  581 F.2d 1045 (2d Cir. 1978)................................................................................4

*St. Louis Heart Center, Inc. v. Nomax, Inc.*,
  No. 4:15-CV-517 RLW, 2017 WL 1064669 (E.D.Mo. March 20, 2017) ................8

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009)..............................................................................................6

*Susan B. Anthony List v. Driehaus*,
  134 S. Ct. 2334 (2014)...........................................................................................2

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016).........................................................................................11

*Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*,
  454 U.S. 464 (1982)..................................................................................................6

*Van Patten v. Vertical Fitness Group, LLC*,
  847 F.3d 1037 (9th Cir. 2017) ................................................................................7

*Villanueva v. Wells Fargo Bank, N.A.*,
  13-CV-5429, 2016 WL 7899255 (S.D.N.Y. 2016)....................................1, 3, 4, 9

*Warth v. Seldin*,
  422 U.S. 490 (1975)..............................................................................................2, 9

*Williams v. TGI Friday's Inc.*,
  2016 WL 1453032 (E.D. Mo. April 12, 2016) ......................................................19

*Xavier v. Philip Morris USA Inc.*,
  787 F. Supp. 2d 1075 (N.D. Cal. 2011) ................................................................16

**OTHER AUTHORITIES**

7 AA Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Fed. Prac. & Proc.
  Civ.3d § 1785.1 (2005) ..........................................................................................10

7A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Fed. Prac. & Proc.
  Civ.3d § 1760 (2005) ..............................................................................................13

6 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Fed. Prac. & Proc.
  Civ.3d § 1457 (2005) ................................................................................................3

TO THIS HONORABLE COURT AND COUNSEL OF RECORD, PLEASE TAKE NOTICE that Third-Party Defendant Experian Marketing Solutions, Inc., by and through its undersigned counsel, will, and hereby does, interpose the following objections to the proposed class action settlement.

## I. THE COURT LACKS SUBJECT MATTER JURISDICTION TO ENTER THE PROPOSED SETTLEMENT

"If plaintiffs lack Article III standing, a court lacks subject matter jurisdiction to hear their claim." *Jaffe v. Bank of America, N.A.*, 197 F. Supp. 3d 523, 527 (S.D.N.Y. 2016), citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005). Because subject matter jurisdiction must exist at *all stages* of the case, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), a court lacks authority to enter a proposed class action settlement—including one for which the court already has granted preliminary approval—where, as here, Plaintiffs lack Article III standing. *See, e.g., Villanueva v. Wells Fargo Bank, N.A.*, 13-CV-5429, 2016 WL 7899255, at *2 (S.D.N.Y. 2016) (dismissing case for lack of subject matter jurisdiction after preliminary approval of class action settlement because plaintiffs lacked Article III standing in light of *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)); *Ahmed v. Holder*, 624 F.3d 150, 154 (2d Cir. 2010) ("[W]e may not exercise jurisdiction that we otherwise lack simply because the parties will allow it."). Because *none* of the Plaintiffs come close to alleging facts establishing a concrete injury—pleading, instead, a bare procedural violation of the Telephone Consumer Protection Act (TCPA)—the Court lacks authority over proposed class action settlement (and, indeed, this case), and thus, dismissal is required. *Villanueva*, 2016 WL 7899255, at *1-2.

### A. Legal Standard

"Article III of the Constitution confines the judicial power of federal courts to deciding actual 'Cases' or 'Controversies.'" *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013) (quoting U.S. Const. Art. III, § 2). The "doctrine of standing" is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan*, 504 U.S. at 560.

The "irreducible constitutional minimum" for establishing standing is that a "plaintiff must have suffered an 'injury in fact,'" by sustaining an "actual or imminent" harm that is "concrete and particularized." *Id.*; *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014).

The "three elements" of standing, including injury-in-fact, form "an indispensable part of the plaintiff's case." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55–56 (2d Cir. 2016) (quoting *Lujan*, 504 U.S. at 561); *Spokeo*, 136 S. Ct. at 1547. "[E]ach element must [therefore] be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 56 (quoting *Lujan*, 504 U.S. at 561). In other words, a plaintiff must show standing at the pleading stage in the same way that he must establish anything else at that stage—by making sufficient "factual allegations" in his complaint. *Lujan*, 504 U.S. at 561.

It makes no difference that this case is styled as a class action. After all, a class action is an exception to the rule that litigation is conducted by and on behalf of the individual named parties only, *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013), and a party seeking class certification 'must affirmatively demonstrate his compliance' with Rule 23." *Id.* But Rule 23 is subject to the constitutional constraints imposed by Article III. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). Thus, before undertaking review under Rule 23, a court must assess plaintiffs' standing:

> "In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III. This is the threshold question in every federal case, determining the power of the court to entertain the suit." [Citation.] The filing of suit as a class action does not relax this jurisdictional requirement.

*Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). This is so even if, as is the case here, the court has preliminarily approved a class action settlement, *Villanueva*, 2016 WL 7899255, at *2, because the elements of Article III standing are constant throughout litigation. *Lujan*, 504 U.S. at 560–61.

**B.  Experian Has The Legal Right To Challenge Plaintiffs' Standing**

"It is axiomatic that federal courts are courts of limited jurisdiction and may not decide cases over which they lack subject matter jurisdiction.  Unlike failure of personal jurisdiction, failure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court sua sponte." *Lydonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000).  "Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Australia Bank, Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008)) (internal quotation marks omitted), aff'd, 561 U.S. 247 (2010).

Where, as here, the claims against a third-party defendant are wholly derivative of the plaintiff's claims against the third-party plaintiff, Federal Rule of Civil Procedure 14(a)(2)(C) provides that the third-party defendant may assert *any defense* that the third-party plaintiff may have against the original plaintiff's claim, including objecting to a settlement. *Atlantic Richfield Co. v. Interstate Oil Transport Co.*, 784 F.2d 106, 112 (2d Cir. 1986).  This rule not only prevents any prejudice that might result from the third-party plaintiff's failure to assert a particular defense against the plaintiff, but also reduces the possibility of collusion between the plaintiff and defendant.  Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1457 (3d ed.).

This rule is of paramount significance here, as:  (1) Plaintiff's motion for preliminary approval of the class action settlement was *unopposed* by AEO, and (2) in the stipulation of class action settlement, AEO expressly agreed to *cooperate* with Plaintiffs to effectuate the settlement. (*See* Dkt. No. 253-1 at ¶ 7.2.)  In dismissing plaintiff's case for lack of standing *sua sponte* in light of *Spokeo*, Judge Smith recognized this exact concern:

> Although Plaintiffs' counsel, who . . . were well-aware of the *Spokeo* case and the important issue of subject matter jurisdiction that it raised, they failed to bring it to the Court's attention. Rather, it appears that they were hoping that the Court would simply grant final approval to the class action settlement, a course

> of conduct to which Defendants' counsel could not object pursuant
> to the terms of the class action settlement agreement.

*Villanueva*, 2016 WL 7899255, at *1-2, n.1 and 2. Thus, even though Experian no longer is a party to Plaintiffs' complaint, Experian, by virtue of the fact that it is defending itself against derivative claims as a third-party defendant, has the right to object to the proposed settlement, and raise the issue of standing. *State Mut. Life Assur. Co. of Am. v. Aurthur Anderson & Co.*, 581 F.2d 1045, 1050 (2d Cir. 1978). Indeed, Plaintiffs' lack of standing is a complete defense to AEO's third party action against Experian, which will be lost absent this objection. *Kansas Pub. Emp. Ret. Sys. v. Reimer & Kober Assoc's*, 4 F.3d 614, 619–20 (8th Cir. 1993); *Linder v. Meadow Gold Dairies*, 515 F. Supp. 2d 1141, 1148–49 (D. Haw. 2007); cf. *United States v. Lumbermens Mut. Cas. Co.*, 917 F.2d 654, 658 n.5 (1st Cir. 1990) (third-party defendant has standing on appeal to raise errors in the judgment against the original defendant). And, regardless of Experian's objection, this Court has an independent duty to assess Plaintiffs' standing under Article III at every stage of the case, *Lujan*, 504 U.S. at 560–61, including when deciding whether to grant final approval of the proposed class action settlement. *Villanueva*, 2016 WL 7899255, at *1-2.

## C. <u>Plaintiffs Lack Article III Standing, And The Case Must Be Dismissed</u>

Plaintiffs have not alleged facts to establish Article III standing. Instead, in their operative Third Amended Consolidated Complaint, Plaintiffs allege that they received unauthorized text messages containing AEO advertising. (Dkt. No. 119 at ¶¶ 45-84.) They assert that, because these text messages were sent in violation of the TCPA, they are "presumptively" entitled to statutory damages. (*Id.*, ¶¶ 97, 102, 107 & 112.) None of the Plaintiffs alleges to have suffered any harm, or incurred any costs, as a result of receiving these allegedly unauthorized text messages.

Yet, the express holding of *Spokeo* was that "Article III requires a concrete injury _even in the context of a statutory violation_." 136 S. Ct. at 1549 (emphasis added). That is, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a

person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. Alleging a "bare" violation of a federal statute, "divorced from any concrete harm," does not suffice for purposes of Article III. *Id*. Accordingly, just as the plaintiffs in *Spokeo* had not automatically satisfied their burden of demonstrating standing simply by alleging violations of the Fair Credit Reporting Act (FCRA), *id*. at 1550, Plaintiffs here do not automatically satisfy their burden of showing standing simply by alleging violations of the TCPA. Instead, they must take the further step of alleging facts that create a link between that statutory violation and a "concrete harm"—either a "tangible" injury or an "intangible" one of the sort "that has traditionally been regarded as providing a basis for a lawsuit." *Id*. at 1549.

Just like violations of the FCRA's procedures designed to ensure provision of accurate information, TCPA violations are not in and of themselves harmful. By way of example, someone who receives a text message without express prior consent may be interested in the discounts being offered. Maybe the individual is not home when an unlawful call is placed. Maybe the recipient of the unlawful text never opens it. Like the dissemination of an "inaccurate zip code," violations of the TCPA in such circumstances cannot possibly "work any concrete harm." *Spokeo*, 136 S. Ct. at 1550.

Just as significant, the TCPA does not even prohibit making calls or sending texts without consent; rather, it prohibits only the use of an "Automatic Telephone Dialing System" (ATDS) to do so. 47 U.S.C. § 227(b)(1)(A). The Act thus imposes no substantive restriction on which calls or texts one is allowed to place or send, and does not protect anyone from receiving those calls or texts; instead, it imposes only a *procedural limit* on how one may place or send such calls or texts. Further, under the Act's definitions, "a system need not actually store, produce, or call randomly or sequentially numbers" to qualify as an ATDS; "it need only have the capacity to do it." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009). And, in yet a further attenuation, the FCC says that a device's capacity includes "potential functionalities"—tasks that it "could be modified" to perform. Rules & Regulations Implementing the TCPA, 30 FCC Rcd 7961, 7974–75 (2015). To summarize, the TCPA does

not substantively protect against unwanted calls or texts; it procedurally restricts the use of equipment that could be modified to have the ability to place potentially unwanted calls or texts.

For this reason, it is incorrect to equate a violation of the TCPA with *per se* concrete injury. At the time someone receives a call or text, it is unlikely that the recipient knows that it was sent from an ATDS, as opposed to some other type of equipment not proscribed by the TCPA. Yet, only the former procedural method of sending text messages or placing calls is actionable under the TCPA. *Obviously, if someone did not suffer any concrete harm by receiving an unwanted call or text on non-ATDS equipment, it is inconceivable to assume that this same person automatically would have suffered concrete harm had that same call or text been made through an ATDS.* Once this self-evident point is realized, merely alleging, as Plaintiffs do here, a bare procedural violation of the TCPA does not establish concrete harm flowing from that alleged violation of law. Instead, to qualify as an injury-in-fact, the asserted harm must be "actual" rather than "hypothetical." *Lujan*, 504 U.S. at 560. It therefore does not matter whether a violation of § 227(b)(1)(A) could lead to harmful consequences; *it matters only whether it did*. *Spokeo*, 136 S. Ct. at 1550.

The Court's decision in *Spokeo* is consistent with its prior precedent. The Supreme Court repeatedly has held that Congress may not override Article III's requirement of injury-in-fact. "[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009). That "hard floor" necessitates allegations of concrete harm: The Constitution's text and history—and the common law tradition at the time of the Founding—show that concrete harm is essential to establish injury-in-fact. *Spokeo*, 136 S. Ct. at 1548-49. Any argument to the contrary cannot be squared with *Spokeo*, Article III itself, the Supreme Court's standing precedents, or the separation-of-powers principles upon which they rest. Injury-in-fact requires real-world harm, not just a bare statutory violation. *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 487 n.24 (1982) ("Neither the

Administrative Procedure Act, nor any other congressional enactment, can lower the threshold requirements of standing under Art. III.").

The issue of whether a bare procedural violation of the TCPA will suffice to establish Article III standing has not yet been addressed by the Second Circuit post-*Spokeo*. Three months ago, however, the Second Circuit in *Leyse v. Lifetime Entertainment Servs., LLC*, — Fed. Appx. —, 2017 WL 659894 (2d Cir. Feb. 15, 2017), found that the plaintiffs had Article III standing to pursue their claims under the TCPA because they had presented evidence that they suffered harm beyond a mere technical violation of the TCPA itself. The Court in *Leyse* expressly declined to address whether a bare procedural violation of the TCPA of the kind alleged here is sufficient for purposes of Article III. *Id.* ("We need not here decide whether the alleged violation of 47 U.S.C. § 227(b)(1)(B) would, by itself, be sufficient to establish injury in fact.").

Elsewhere, courts are split on the issue. The Ninth Circuit, for example, in *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037 (9th Cir. 2017), found that a bare procedural violation of the TCPA was enough to establish standing, even though the Court, in the same opinion, affirmed the district court's grant of summary judgment to the defendant on the ground that the plaintiff had consented to receive the text messages at issue in the case. In other words, the Ninth Circuit found that the plaintiff who, based upon uncontroverted evidence, was not injured, nonetheless had standing based upon *allegations* that *incorrectly* contended otherwise.[1]

Other courts have justly come out the other way. For example, based upon nearly identical facts to those at hand, the district court in *Sartin v. EKF Diagnostics, Inc.*, No. CV 16–1816, 2016 WL 3598297, at *3 (E.D. La. July 5, 2016), dismissed TCPA claims under Rule 12(b)(1) because "the complaint's only reference to any kind of injury appears in a single sentence, which states that defendants' failure to comply with the TCPA's requirements 'caus[ed] Plaintiff and Plaintiff Class to sustain statutory damages, in addition to actual damages, including but not limited to those contemplated by Congress and the [Federal Communications

---

[1] Experian respectfully submits that the Ninth Circuit's decision in *Vertical Fitness* is wrongly decided and, indeed, internally inconsistent.

Commission].'" 2016 WL 3598297, at *3. That is insufficient. *Id*. ("Although Dr. Sartin has plausibly alleged that defendants violated the TCPA by sending unsolicited fax advertisements, he fails to plead facts demonstrating how this statutory violation caused him concrete harm.") More recently, Judge Failla, following *Sartin*, reached the same conclusion, albeit under the Fair and Accurate Credit Transactions Act. *See Fullwood v. Wolfgang's Steakhouse, Inc.*, 13 Civ. 7174 (KPF), 2017 WL 377931, at *7 (S.D.N.Y. Jan. 26, 2017) (the "well-pled allegations describing Plaintiff's injuries are found nowhere in the SAC").

And, two weeks ago, in *Dreher v. Experian Information Solutions, Inc.*, No. 15-2119, 2017 WL 1948916 (4th Cir. May 11, 2017), the Fourth Circuit reinforced the Supreme Court's view articulated in *Spokeo* that a bare procedural violation is not enough, and that a plaintiff must suffer a "concrete and particularized" injury to satisfy Article III's standing requirements. *Dreher* considered whether Experian's alleged decision to list a defunct credit card company, rather than the name of its servicer, as the source of information on an individual's credit report, without more, creates sufficient injury in fact under the FCRA for purposes of Article III standing. *Id*. at 3. The Fourth Circuit concluded that where, as in *Dreher*, an individual fails to allege a concrete injury stemming from allegedly incomplete or incorrect information listed on a credit report, he or she has not suffered a "concrete" injury, and therefore cannot satisfy the threshold requirements of constitutional standing. *Id*. On that ground, the Fourth Circuit reversed the district court's order denying Experian's summary judgment motion, and remanded with instructions for dismissal of the action. *Id*.

As applicable to this case, the Fourth Circuit noted that it would be an "end-run around the qualifications for constitutional standing if any nebulous frustrating resulting from a statutory violation would suffice as an . . . injury." *Id*. at 14. That is, where the purported violation had no legitimate effect on the plaintiff, there is no Article III standing. *Id*. at 15 ("Failing to identify either a common law analogue or a harm Congress sought to prevent, Dreher is left with a statutory violation divorced from any real world effect."); *id*. ("As *Spokeo* demonstrated, a statutory violation absent a concrete and adverse effect does not confer standing."); *see also*

*Braitberg v. Charter Communications, Inc.*, 836 F.3d 925, 930 (8th Cir. 2016) (affirming dismissal because complaint asserts "a bare procedural violation, divorced from any concrete harm"); *St. Louis Heart Center, Inc. v. Nomax, Inc.*, No. 4:15-CV-517 RLW, 2017 WL 1064669, at *2 (E.D.Mo. March 20, 2017) (same, following *Braitberg*, dismissing TCPA claims).

So too here, Plaintiffs have not alleged a concrete injury-in-fact—but instead, merely allege a "presumptive[]" entitlement to statutory damages based upon an alleged violation of a federal statute. That is insufficient to establish constitutional standing. *Spokeo*, 136 S. Ct. at 1550. And, because Plaintiffs' lack Article III standing, this Court does not have subject matter jurisdiction over this case. As a consequence, the Court lacks authority to enter the proposed settlement, and the case must be dismissed. *Villanueva*, 2016 WL 7899255, at *1-2.

## II.     THE CLASS DEFINITION IMPERMISSIBLY SWEEPS IN INDIVIDUALS THAT LACK STANDING

The Second Circuit has spoken with unmistakable clarity: "*[N]o class* may be certified that contains members lacking Article III standing." *Denney*, 443 F.3d at 264 (emphasis added); *see also Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2011) (same; following *Denney*). Yet, once it is recognized that a bare procedural violation of the TCPA is insufficient to confer Article III standing absent concrete injury flowing from that violation, the proposed settlement class definition is radically and impermissibly overbroad—sweeping in countless individuals with no standing (or no claim).

In *Denney*—a class action settlement case like the one at bar—the Second Circuit determined that, because "[n]o class may be certified that contains members lacking Article III standing," the "class must therefore be defined in such a way that *anyone* within it would have standing." *Denney*, 443 F.3d at 264 (emphasis added). The *Denney* test fundamentally recognizes that a class certification decision opens the doors of federal court to all members of that class. The federal courts, however, are only open to justiciable cases. *Warth*, 422 U.S. at 498 ("[Standing] is founded in concern about the proper—and properly limited—role of the courts in a democratic society. [It] is the threshold question in every federal case, determining

the power of the court to entertain the suit."). Thus, *Denney* correctly appreciates that, at the end of litigation, settlement class certification stage, courts should verify that the class definition is limited only to those with justiciable cases—that is, to those that would have standing. The touchstone of this test, as *Denny* explains, is whether the class definition encompasses only persons and entities that possess Article III Standing.

Plaintiffs and AEO ask this Court to approve the following settlement class:

> **2.31 "Settlement Class"** means the approximate 618,289 persons who, on or after April 8, 2010 through and including the date of entry of the Preliminary Approval Order, received a text message from AEO or any entity acting on its behalf, to his or her unique cellular telephone number, and who did not provide AEO with appropriate consent under the TCPA.

(Dkt. No. 253-1, ¶ 2.31.) To begin with, the proposed settlement class is not confined to those individuals that received a text message *via an ATDS*—which is the only type of procedural method proscribed by the TCPA. In other words, the class definition, on its face, impermissibly includes individuals that have no claim under the TCPA. But more fundamentally, the proposed settlement class definition does nothing to limit relief to those that suffered concrete harm flowing from the alleged violation of the TCPA.

While each settlement class member need not "submit evidence of personal standing," *Denney*, 443 F.3d at 263, there must be some theory, backed by credible evidence, that the "class representative . . . possess[es] the same interest and suffer[ed] the same injury shared by all members of the class he represents." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974); accord *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 ("We have repeatedly held that 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'") (quoting *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252 (D.C. Cir. 2013) (while plaintiffs need not "demonstrate through common evidence the precise amount of damages incurred by each class member" to support certification, they must adduce "common evidence to show all class members suffered some injury");

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp. 2d 289, 334 (S.D.N.Y. 2003) (noting that "each member of the class must have standing with respect to injuries suffered as a result of defendants' actions"); *Janes v. Tribourough Bridge & Tunnel Auth.*, 889 F. Supp. 2d 462, 465-66 (S.D.N.Y. 2012) (narrowing class definition to exclude persons who lack standing to seek relief; 7 AA Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Fed. Prac. & Proc. Civ.3d § 1785.1 (2005) (cited with approval in *Denny*) ("[T]o avoid a dismissal based on a lack of standing, the court must be able to find that both the class and the representatives have suffered some injury requiring court intervention.").

Here, Plaintiffs do not even *allege* that they—let alone every member of the proposed class—suffered a concrete injury arising out of AEO's alleged violation of the TCPA. Moreover, in support of certification of a settlement class, Plaintiffs have not put forth any evidence to establish a connection between AEO's alleged procedural violation of the TCPA, and concrete harm to the settlement class. Because "a named plaintiff cannot represent a class of persons who lack the ability to bring a suit themselves," *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010), the settlement class cannot be certified. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1053 (2016) (Roberts, C.J., concurring) ("Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not. The Judiciary's role is limited 'to provid[ing] relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm.'") (quoting *Lewis v. Casey*, 518 U. S. 343, 349 (1996)); *see also id.* at 1048 (to certify a class where members were uninjured would violate the Rules Enabling Act and "giv[e] plaintiffs and defendants different rights in a class proceeding than they could have asserted in an individual action"). *Cf. DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006) ("standing is not dispensed in gross").

The same result obtains as a matter of class action law and predominance. The predominance test of Rule 23(b)(3) confines a class to persons with constitutional standing, and that provision must therefore "be interpreted in keeping with Article III constraints." *Amchem*, 521 U.S. at 613; *see also id.* at 623 ("[The predominance] inquiry trains on the legal or

factual questions that qualify each class member's case as a genuine controversy."); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252 (D.C. Cir. 2013) ("Meeting the predominance requirement" requires plaintiffs to "show that they can prove, through common evidence, that all class members were in fact injured by the alleged" wrongdoing.). Here, there is no method of class wide proof that could establish a class wide injury. Indeed, and again, Plaintiffs do not allege *any* injury—either to themselves or the class they seek to represent—nor, again, do they put forth any theory, backed by credible evidence, that the proposed settlement class suffered concrete harm from AEO's alleged procedural violation of the TCPA. *Denney*, 443 F.3d at 264 (collecting cases); *see also O'Shea v. Epson Am., Inc.*, No. CV 09-8063 PSG CWX, 2011 WL 4352458, at *10 (C.D. Cal. Sept. 19, 2011), aff'd sub nom. *Rogers v. Epson Am., Inc.*, No. 11-57016, 2016 WL 1566698 (9th Cir. Apr. 19, 2016) (stating that "satisfaction of Article III's requirements raises individualized issues that defeat certification under Rule 23(b)(3)"); *Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980) (class certification improper where it was unclear "that the proposed class members have all suffered a constitutional or statutory violation warranting some relief").

In short, persons without concrete injury may not recover money from lawsuits in federal court. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 857-58 (1999) (error to include in a proposed class persons who presently lack standing to assert claims); *In re Rail Freight*, 725 F.3d at 252 (class cannot be certified where plaintiffs cannot "show that they can prove, through common evidence, that all class members were in fact injured" by the alleged wrongdoing); *In re New Motor Vehicles Can. Exp. Antitrust Litig.*, 522 F.3d 6, 28 (1st Cir. 2008) (no class can be certified unless the proponent of the class presents an evidence-based "means of determining that each member of the class was in fact injured"); *Goodman v. Lukens Steel Co.*, 777 F.2d 113, 122 (3d Cir. 1985) (stating that the Article III standing of absent class members "is one of compliance with the provisions of Rule 23"); *Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980) (affirming denial of class certification where it was unclear "that the proposed class members have all suffered a constitutional or statutory violation warranting some relief"); *Mazur*

*v. eBay, Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009) (class cannot be certified if it includes persons not harmed by the challenged practice).

For this additional reason, the proposed settlement class fails.

## III. ANY ATTEMPT TO NARROW THE CLASS DEFINITION TO THOSE THAT SUFFERED CONCRETE HARM WOULD DESTROY PREDOMINANCE

Any attempt to narrow the class definition to individuals who suffered concrete harm from the receipt of non-consensual text messages would destroy predominance, as there is no way, short of individual inquiry, to ascertain the members of that narrowed class. *Harper v. Trans Union, LLC*, 2006 WL 3762035 at *8 (E.D.Pa. Dec. 20, 2006) (refusing to certify a class under the FCRA, reasoning that the "plaintiff's claim may be typical of the absent class members in that all claims arise from the same conduct, but due to the highly individualized proofs required I find that common questions do not predominate").

## IV. THE SETTLEMENT CLASS IS UNASCERTAINABLE

The proposed settlement class is defined as those individuals that "did not provide AEO with appropriate consent under the TCPA" to receive text messages. (Dkt. No. 253-1, ¶ 2.31.) On its face, the proposed settlement class definition includes those individuals that never consented to receive text messages, as well as individuals that revoked consent, but nonetheless continued to receive text messages. Short of individual inquiry, however, there is no way to fairly and properly ascertain those members of the settlement class that *properly* revoked consent, but nonetheless continued to receive text messages from AEO.

The existence of an ascertainable, identifiable, or definite class is an "essential prerequisite" for maintaining a class under Rule 23. 7A Charles Alan Wright et al., Federal Practice and Procedure § 1760 (3d ed. 2005); *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 407 (S.D.N.Y.2015). In *Brecher*, the Court expressly "clarif[ied]" that the "touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member," and that, to pass muster under Rule 23, a putative class must

both be "defined by objective criteria that are administratively feasible" and be susceptible to the "identif[ication] [of] its members" without "requir[ing] a mini-hearing on the merits of each case." *Brecher*, 806 F.3d at 24-25; *see also Royal Park Investments SA/NV v. Deutsche Bank National Trust Company*, 14-CV-4394, 2017 WL 1331288, at *4-6 (S.D.N.Y April 4, 2017) (Judge Nathan summarizing *Brecher*).

With critical implications for Plaintiffs' proposed settlement class, the *Brecher* Court applied its newly articulated ascertainability guidelines to a proposed class comprised of "all holders of beneficial interests in the relevant [sovereign debt] bond series without limitation as to time held." *Brecher*, 806 F.3d at 24. It concluded that the only "objective standard" defining the class at issue—"owning a beneficial interest in a bond series without reference to time owned"—was "insufficiently definite to allow ready identification of the class or the persons who will be bound by the judgment." *Id*. at 25. Thus, the Court held, "[w]ithout a defined class period or temporal limitation, such as the continuous holder requirement, the nature of the beneficial interest itself and the difficulty of establishing a particular interest's provenance in the particular circumstances of this case make the objective criterion used here inadequate." *Id*. at 25 (also rejecting the argument that the use of some objective criteria is itself sufficient to satisfy the ascertainability requirement "when those criteria, taken together, do not establish the definite boundaries of a readily identifiable class"). The Court accordingly deemed the class, as defined, "insufficiently definite as a matter of law." *Id*. at 26; *see also In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 45 (2d Cir. 2006) (noting that "the need for numerous individualized determinations of class membership"—an "ascertainability" problem "distinct from the predominance requirement"—"provide[d] further support for [the] basic conclusion that individual questions will permeate this litigation"); *Royal Park*, 2017 WL 1331288, at *4-6 (same); *see also Carrera v. Bayer Corp.*, 727 F.3d 300, 305–12 (3d Cir. 2013).

This is *not* a case where unnamed class members purchased a product, and have lost the receipt, such that a court could allow them to submit an affidavit to establish class membership. *See*, *e.g.*, *Ries v. AriZona Beverages USA LLC*, 287 F.R.D. 523, 535 (N.D. Cal. 2012). Instead,

class membership turns on whether each unnamed individual can establish liability under the TCPA. That is, on the face of the proposed settlement class definition, each settlement class member would need to show (1) that they received a text message, (2) *without consent*. Not only would allowing someone to self-certify consent violate due process, *Carrera*, 727 F.3d at 305–12, but would be impossible to determine "without extensive and individualized fact-finding or 'mini-trials[.]'" *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 593 (3d Cir. 2012). In those circumstances, "a class action is inappropriate." *Id.*; *see also Royal Park*, 2017 WL 1331288, at *4-6 ("Such difficulties, taken together, preclude a finding that the proposed class is sufficiently ascertainable.").

This is not a theoretical concern. Two recent TCPA decisions forcefully illustrate why the issue of consent precludes class certification. In *Epps v. Earth Fare, Inc.*, No. 16-08221, 2017 WL 1424637 (C.D. Cal. Feb. 27, 2017), the Central District of California found that the plaintiff had not reasonably revoked her consent. Despite being prompted to text "STOP" if she wished to revoke her consent, the plaintiff purported to revoke her consent by responding with the text message: "I would appreciate [it] if we discontinue any further texts[.]" The defendant moved to dismiss, and argued that the plaintiff's method of revoking consent had not been reasonable. Quite the contrary, the plaintiff's conduct had been deliberately designed to frustrate the defendant's automated system for registering revocations of consent. The defendant noted that this was one of several similar suits in which the same plaintiff had "'purposely ignored the use of the STOP Command' and chose instead to respond with long sentences—ones she knew the automated system would not understand—in order to bring this suit." The court concluded that reasonableness depends on the totality of the circumstances, including whether the called party had a reasonable expectation that the caller would recognize his or her conduct as a revocation of consent. The court held that "[t]he totality of the plausibly alleged facts, even when viewed in Plaintiff's favor, militate against finding that Plaintiff's revocation method was reasonable." It also rejected the notion that there is something improper about prompting called parties to text "STOP," explaining that "heeding Defendant's opt-out instruction would not have

plausibly been more burdensome on Plaintiff than sending verbose requests to terminate the messages."

Similarly, in *Self-Forbes v. Advanced Call Center Technologies, LLC*, No. 16-1088, 2017 WL 1364206 (D. Nev. Apr. 12, 2017), the District of Nevada entered summary judgment against a plaintiff whose affidavit regarding revocation of consent "merely restate[d] the allegations set forth in the complaint, and d[id] not set forth specific facts to raise a genuine issue for trial." In *Self-Forbes*, the plaintiff alleged that she had received more than 500 debt collection calls and that she had picked up the phone several times to tell the defendant's representatives to stop calling her. In discovery, the defendant produced call logs that showed that none of the calls had resulted in contact with the plaintiff, which would mean that the plaintiff's allegations regarding revocation could not be correct. Rather than dispute the accuracy of the logs, the plaintiff submitted an affidavit that claimed that she had revoked consent by speaking with the defendant's representatives several times in January. The court found that her affidavit did not create a genuine issue of fact because it did not identify the particular date of such conversations or the name of the defendant's representatives that she allegedly told to stop calling her.

In short, "[i]n order for a proposed class to satisfy the ascertainability requirement, membership must be determinable from objective rather than subjective criteria." *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011). Where, as here, "a class definition includes a requirement that cannot be proven directly, and that depends instead upon each putative class member's feelings and beliefs, then there is no reliable way to ascertain class membership." *Id.* at 1089. Because the question of whether any member of the settlement class properly revoked consent—such that they could establish a violation of the TCPA—"would come down to the state of mind of the putative class member," the certification of a settlement class is inappropriate. *Id.*; *see also Marcus*, 687 F.3d at 593 (cautioning "against approving a method that would amount to no more than ascertaining by potential class members' say so," such as by "having potential class members submit affidavits that their Bridgestone [run flat tires] ha[d] gone flat and been replaced.").

Finally, certifying a settlement class to include individuals that had consented to receive text messages—because they had not properly revoked consent—runs headlong into *Denny's* admonition that "no class may be certified that contains members lacking Article III standing." *Denney*, 443 F.3d at 263. After all, anyone that had consented to receive text messages from AEO could not have suffered an injury-in-fact. Moreover, because AEO is not liable to such individuals (even if others could prevail on a TCPA claim), and because the class action mechanism cannot enlarge substantive rights, no remedial measures can permissibly extend to such people. *See* 28 U.S.C. § 2072(b) (the Federal Rules of Civil Procedure—including Rule 23—"shall not abridge, enlarge or modify any substantive right").

## V. THE PROPOSED SETTLEMENT CLASS DEFINITION IMPROPERLY INCLUDES MEMBERS THAT DID NOT RECEIVE A TEXT MESSAGE VIA AN AUTOMATIC TELEPHONE DIALING SYSTEM

Finally, as defined, the proposed settlement class includes approximately 618,289 individual who, on or after April 8, 2010, received a text message from AEO to their cell phone "who did not provide AEO with appropriate consent under the TCPA." But as noted, unless the text messages to these individuals were sent via an ATDS, *none* of them has a viable claim under the TCPA (regardless of whether they consented). This defect renders the proposed class definition facially improper and objectionable.

At this point, however, the Court should decline to provide leave to amend the class definition to cure this deficiency. Instead, the Court should sustain Experian's objection, and stay this matter until after the District of Columbia Circuit decides the appeal in *ACA International v. FCC*, Docket No. 15-01211 (D.C. Cir. Jul 10, 2015). The *ACA* matter was argued on October 19, 2016, and an opinion in this landmark case is very close at hand. In short, the *ACA* matter will decide what constitutes an ATDS under the TCPA. If the Court rules against the FCC, there is a real likelihood that *none* of the Plaintiffs, and the proposed settlement class they seek to represent, would have a claim under the TCPA against AEO.

As the Court is aware, the text messages at issue in this case were sent by a third party vendor, Archer USA, Inc. Archer filed for bankruptcy, and its assets were acquired by Waterfall

in November 2014. *See* finance.yahoo.com/news/waterfall-acquires-mobile-marketing-services-120000888.html. Depending upon the outcome of *ACA*, there is a very real likelihood that Archer's (now Waterfall's) platform does not meet the statutory definition of an ATDS. *See Lennartson v. Papa Murphy's Holdings, Inc.*, No. 3:15-cv-05307-RBL (W.D.Wash. 2015), Dkt. No. 62 (Declaration of Tina Wang of Waterfall International Inc. Regarding Telephone Dialing Equipment filed by Defendants Papa Murphy's Holdings, Inc., Papa Murphy's International LLC re Motion to Stay). Thus, not only could *ACA* preclude certification of a settlement class—*i.e.*, the Court cannot approve a class action settlement that includes individuals without a claim, *see Denney*, 443 F.3d at 264—but it also could provide AEO, and by virtue of its status as a third party defendant, Experian, with a complete defense.

Prudence dictates that the Court, like many others have done, should wait until *ACA* is decided before taking any further action on the proposed settlement. That is, the Court should sustain Experian's objection that the proposed settlement class definition is facially improper—as it is not confined to individuals that received a text message via an ATDS—but should decline to provide leave to amend the settlement class definition until after the *ACA* matter is decided, which could be any day now. *See Reynolds v. Time Warner Cable, Inc.*, 2017 WL 362025, at *2–3 (W.D.N.Y. Jan. 25, 2017) (Judge Payson stayed a TCPA case pending the outcome of *ACA*); *Frable v. Synchrony Bank*, 2016 WL 6123248, *4 (D.Minn. Oct. 17, 2016) ("the Court finds that the relevant factors weigh in favor of staying this case until the D.C. Circuit Court of Appeals issues a decision in ACA International"); *Jones v. Credit Acceptance Corp.*, 2016 WL 7320919, *3 (E.D. Mich. Oct. 31, 2016) ("[i]n light of the uncertainty surrounding the proper interpretation of the TCPA and the lack of demonstrated prejudice to [plaintiff], the interest of judicial economy warrants a stay"); *Rajput v. Synchrony Bank*, 2016 WL 6433150 at *8 (M.D.Pa. Oct. 31, 2016) ("factors weigh in favor of granting [d]efendant's motion to stay"); *Coatney v. Synchrony Bank*, 2016 WL 4506315, *2 (M.D. Fla. Aug. 2, 2016) ("[a] stay will conserve judicial resources, will help clarify the law, and will enable this Court to render a sound decision"); *Rose v. Wells Fargo Advisors, LLC*, 2016 WL 3369283, *2 (N.D. Ga.

June 14, 2016) (factors weigh in favor of stay); *Errington v. Time Warner Cable, Inc.*, 2016 WL 2930696, *4 (C.D. Cal. May 18, 2016) (same); *Williams v. TGI Friday's Inc.*, 2016 WL 1453032, *3 (E.D. Mo. April 12, 2016) ("[t]he Court holds that a stay is warranted in this case [because] … there is significant uncertainty regarding the TCPA's scope and application … [and plaintiff] will not be prejudiced by a short stay"); *Acton v. Intellectual Capital Mgmt., Inc.*, 2015 WL 9462110 at *3 (E.D.N.Y. Dec. 28, 2015) ("the resolution of the D.C. Circuit Court of Appeals will more precisely define terms set forth in the TCPA [;] … the factors weigh in favor of a stay"); *Fontes v. Time Warner Cable Inc.*, 2015 WL 9272790, *5 (C.D. Cal. Dec. 17, 2015) ("a stay is appropriate in these circumstances").

## **CONCLUSION**

Absent concrete harm to each member of a proposed settlement class, Rule 23 will impermissibly extend the judicial power of the United States into administering a private handout program. Neither Article III, nor the law of this Circuit, permits this. For this reason, and those set forth above, Experian respectfully objects.


Dated: May 24, 2017                    JONES DAY


                                       By: */s/ John A. Vogt*
                                          John A. Vogt

                                       Attorneys for Third-Party Defendant
                                       EXPERIAN MARKETING SOLUTIONS, INC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 24, 2017, a true and correct copy of the foregoing was

served by U.S. Mail on all counsel or parties of record on the Service List below

*/s/Yuri Nomiyama*
Yuri Nomiyama

## SERVICE LIST

Keith J. Keogh
Michael Hilicki
Keogh Law, Ltd.
55 W. Monroe St., Suite 3390
Chicago, IL 60603
Telephone: (312) 726-1092
Facsimile: (312) 726-1093
*Attorneys for Plaintiffs*

Scott D. Owens
Scott D. Owens, P.A.
3800 S. Ocean Drive, Suite 235
Hollywood, FL 33019
Telephone: (954) 589-0588
Facsimile: (954) 589-0588
*Attorney for Plaintiffs*

Beth Terrell
Terrell Marshall Daudt & Willie PLLC
936 N. 34th Street, Suite 300
Seattle, WA 98103
Telephone: (206) 816-6603
Facsimile: (206) 350-3528
*Attorneys for Plaintiffs*

Craig J. Mariam, Admitted Pro Hac Vice
Email: cmariam@gordonrees.com
Kristie Morgan Simmerman, Admitted Pro Hac Vice
Email: ksimmerman@gordonrees.com
GORDON & REES LLP
633 West Fifth Street, Suite 5200
Los Angeles, California 90071
Telephone: (213) 576-5000
Facsimile: (877) 306-0043
*Attorneys for Defendant American Eagle Outfitters, Inc.*

Richard T. Victoria, Admitted Pro Hac Vice
Email: rvictoria@gordonrees.com
GORDON & REES LLP
707 Grant St, Suite 3800
Pittsburgh, PA 15219
Phone: (412) 577-7400
Facsimile: (412) 347-5461
*Attorneys for Defendant American Eagle Outfitters, Inc.*

Eric Robert Thompson
GORDON & REES LLP
Email: ethompson@gordonrees.com
200 South Biscayne Boulevard, Suite 4300
Miami, Florida 33131
Telephone: (305) 428-5300
Facsimile: (877) 634-7245
*Attorneys for Defendant American Eagle Outfitters, Inc.*

Jeffrey N. Rosenthal
Email: Rosenthal-J@BlankRome.com
BLANK ROME LLP
One Logan Square 130 North 18th Street
Philadelphia, PA 19103-6998
Telephone: (215) 569-5553
Facsimile: (215) 832-5553
*Attorneys for eBay Enterprise, Inc.*

Joshua Briones, Admitted Pro Hac Vice
Email: jbriones@blankrome.com
Ana Tagvoryan, Admitted Pro Hac Vice
Email: atagvoryan@blankrome.com
Sridavi Ganesan, Admitted Pro Hac Vice
Email: sganesan@blankrome.com
BLANK ROME LLP
2029 Century Park East, 6th Floor
Los Angeles, California 90067
Telephone: (424) 239-3400
Facsimile: (424) 239-3434
*Attorneys for eBay Enterprise, Inc.*

Brian C. Frontino
Email: bfrontino@stroock.com
STROOCK & STROOCK & LAVAN LLP
200 South Biscayne Blvd., 31st Floor
Miami, Florida 33131
Telephone: (305) 358-9900
Facsimile: (305) 789-9302
*Attorneys for eBay Enterprise, Inc.*

Lisa M. Simonetti, Admitted *Pro Hac Vice*
Email: lsimonetti@stroock.com
STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067
Telephone: (310) 556-5800
Facsimile: (310) 556-5959
*Attorneys for eBay Enterprise, Inc.*

Joseph Eric Strauss
Email: jstrauss@stroock.com
STROOCK & STROOCK & LAVAN LLP
1800 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400
Facsimile: (212) 806-1297
jstrauss@stroock.com
*Attorneys for eBay Enterprise, Inc.*