UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTINA MELITO, CHRISTOPHER LEGG, ALISON PIERCE, and WALTER WOOD, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>     v.<br><br>AMERICAN EAGLE OUTFITTERS, INC., a Delaware corporation, AEO MANAGEMENT CO., a Delaware corporation, and EXPERIAN MARKETING SOLUTIONS, INC.,<br><br>                Defendants. | NO. 1:14-cv-02440-VEC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    AUTHORITY AND ARGUMENT ......................................................................... 2

       A.     The settlement is procedurally fair and should be approved ................................. 3

       B.     The settlement is substantially fair and meets the *Grinnell* standards for
            class action settlement approval............................................................................ 6

            1.     Litigation through trial would be complex, costly, and long.................... 7

            2.     The reaction of the Class has been positive .............................................. 8

            3.     Discovery has advanced far enough to allow the parties to responsibly
                resolve the case ........................................................................................ 9

            4.     Plaintiffs would face real risks if the case proceeded ............................ 10

            5.     Establishing a class and maintaining it through trial would not be
                simple ...................................................................................................... 11

            6.     Defendants' ability to withstand a greater judgment is not assured ....... 12

            7.     The settlement fund is substantial in light of the possible recovery
                 and the attendant risks of litigation........................................................ 12

       C.     Class members received the best notice practicable ........................................... 15

       D.     The Settlement Class should be finally certified…………………………..17

III.    CONCLUSION................................................................................................... 17

# TABLE OF AUTHORITIES

**Page No.**

## FEDERAL CASES

*Adams v. AllianceOne Receivables Mgmt., Inc.*,
    No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) ..................... 13

*Agne v. Papa John's Int'l, Inc.*,
    No. 2:10-cv-01139, Dkt. No. 384 (W.D. Wash. Oct. 8, 2013) ........................................ 1

*Agne v. Papa John's Int'l, Inc.*,
    286 F.R.D. 559 (W.D. Wash. 2012) ............................................................................. 12

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
    603 F.2d 263 (2d Cir. 1979)...................................................................................... 8, 11

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).................................................................................... 3, 6, 7

*Cubbage v. Talbots, Inc.*,
    No. 09-cv-00911-BHS, Dkt. No. 114 (W.D. Wash. Nov. 5, 2012).............................. 13

*Cunningham v. Kondaur Capital*,
    No. 3:14-1574, 2014 WL 8335868 (M.D. Tenn. Nov. 19, 2014).................................. 10

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001)............................................................................................ 9

*Desai v. ADT Sec. Servs., Inc.*,
    No. 1:11-cv-01925 (Dkt. No. 229) (N.D. Ill. Feb. 14, 2013).......................................... 13

*Estrada v. iYogi, Inc.,*
    No. 2:13–01989 WBS CKD, 2015 WL 5895942 (E.D. Cal. Oct. 6, 2015)................... 13

*Flores v. Anjost*,
    No. 11 CIV. 1531 AT, 2014 WL 321831 (S.D.N.Y. Jan. 29, 2014) ............................. 10

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y.2005)................................................................................. 12

*Franklin v. Wells Fargo Bank, N.A.*,
    No. 14cv2349-MMA (BGS), 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) ................... 13

*Garret v. Sharps Compliance, Inc.*,
No. 1:10-cv-04030 (Dkt. No. 65) (N.D. Ill. Feb. 23, 2012) ........................................... 14

*Gehrich v. Chase Bank USA, N.A.*,
No. 12 C 5510, 2016 WL 806549 (N.D. Ill. Mar. 2, 2016) ........................................... 14

*Gilliam v. Addicts Rehab Crt. Fund*,
No. 05 Civ. 3452 (RLE), 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ........................ 13

*Grant v. Capital Mgmt. Servs.*,
No. 10-cv-2471, 2014 U.S. Dist. LEXIS 29836 at *10 (S.D. Cal. Mar. 5, 2014) .......... 14

*Green v. Service Master*,
2009 WL 1810769 (N.D. Ill. June 22, 2009) ................................................................. 11

*Hageman v. AT &T Mobility LLC*,
No. CV 13-50-BLG-RWA, 2015 WL 9855925 (D. Mont. Feb. 11, 2015) ..................... 6

*Hashw v. Dep't Stores Nat'l Bank.*,
182 F. Supp. 3d 935 (D. Minn. 2016) ............................................................................. 5

*Hicks v. Morgan Stanley & Co.*,
No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........................ 8

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000) ........................................................................ 7, 12

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ............................................................................................ 9

*In re Enhanced Recovery Co.*,
No. 13-md-2398-RBD-GJK, Dkt. No. 123 (M.D. Fla. July 29, 2014) ......................... 14

*In re Enhanced Recovery Co.*,
No. 13-md-2398-RBD-GJK, Dkt. No. 124 (M.D. Fla. July 29, 2014) ......................... 14

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................... 3

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ..................................................................................... 2

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009) ........................................................................... 12

*In re Ira Haupt & Co.*,
304 F. Supp. 917 (S.D.N.Y. 1969)...............................................................10

*In re Paine Webber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y.1997) ...............................................................12

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008)...............................................................10

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004)...............................................................9

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ...............................................................14

*Jackson v. Caribbean Cruise Line, Inc.*,
88 F. Supp. 3d 129 (E.D.N.Y. 2015) ...............................................................10

*Karic v. Major Auto. Companies, Inc.*,
No. 09 CV 5708 (CLP), 2016 WL 1745037 (E.D.N.Y. Apr. 27, 2016)...............13

*Manouchehri v. Styles for Less, Inc.*,
No. 14-cv-2521 NLS, 2016 WL3387473 (S.D. Cal. June 20, 2016)...............13

*Maley v. Del Global Tech. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)...............................................................7

*Marisol A. v. Giuliani*,
185 F.R.D. 152 (S.D.N.Y. 1999) ...............................................................9

*Newman v. Stein*,
464 F.2d 689, 693 (2d Cir.)...............................................................12

*North Suburban Chiropractic Clinic Ltd. V. Rx Security, Inc.*,
No. 1:13-cv-06897, Dkt. No. 41-1 (N.D. Ill. Jan. 15, 2015)...............................1

*Owens v. Freshdirect LLC*,
No. 14 Civ. 1909 (VEC), Dkt. No. 179 (S.D.N.Y. Oct. 30, 2015) ...............9

*Saragusa v. Countrywide*,
No. CV 14-2717, 2016 WL 1059004 (E.D. La. Mar. 17, 2016)...............10

*Spillman v. RPM Pizza, LLC*,
No. 10-cv-0349, Dkt. No. 241 (M.D. La. May 23, 2013)...............................1

*Steinfeld v. Discover Fin. Servs.*,
   No. C 12-01118, Dkt. No. 96 (N.D. Cal. Mar. 10, 2014) ............................... 13

*Strougo v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003) .............................................................. 8

*Thompson v. Metro. Life Ins. Co.*,
   216 F.R.D. 55 (S.D.N.Y. 2003) ........................................................................ 9

*Tiro v. Pub. House Investments, LLC*,
   No. 11 CIV. 7679 CM, 2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013) ........................ 7

*Velez v. Novartis Pharmaceuticals Corp.*,
   No. 04 Civ. 09194 (CM), 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ............................ 3

*Versteeg v. Bennett, Deloney & Noyes, P.C.*,
   271 F.R.D. 668 (D. Wyo. 2011) ...................................................................... 11

*Vigus v. Southern Ill. Riverboat/Casino Cruises, Inc.*,
   274 F.R.D. 229 (S.D. Ill. 2011) .................................................................... 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) .................................................................. 2, 3, 10

*West Virginia v. Chas. Pfizer & Co.*,
   314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) .............................................. 8, 11

*Williams v. Quinn*,
   748. F. Supp. 2d 892 (N.D. Ill. 2010) ............................................................ 6

*Wood Dale Chiropractic, Ltd. V. DrFirst.com, Inc.*,
   No. 1:12-cv-00780, Dkt. No. 69 (N.D. Ill. Oct. 30, 2013) ............................... 1

*Wright v. Stern*,
   553 F. Supp. 2d 337 (S.D.N.Y. 2008) .............................................................. 8

## OTHER AUTHORITIES

*Manual for Complex Litigation* (Fourth) § 21.61 ......................................... 3

William B. Rubenstein, *Newberg on Class Actions* § 13:45 (5th ed. 2016) ................ 3

# I.  INTRODUCTION

Plaintiffs Christina Melito, Christopher Legg, Alison Pierce, and Walter Wood ("Plaintiffs") and Class Counsel achieved substantial relief for Settlement Class Members in the form of a settlement that requires Defendants American Eagle Outfitters, Inc. and AEO Management Co. ("AEO"), to pay $14,500,000 into a non-reversionary settlement fund.

The settlement is the product of disputed litigation before several district courts as well as the bankruptcy court in Seattle, extensive discovery, a thorough evaluation of Plaintiffs' claims and the risks of continued litigation, and contested settlement negotiations. Notice of the settlement has been sent and the claims, exclusion, and objection deadlines have passed. In total, 38,141 valid Settlement Class Members submitted claims.[1] Each of these 38,141 Settlement Class Members will receive approximately $232 if the Court grants the relief requested.[2] This amount is squarely within the upper range that Class Counsel estimated and that the Class Members were informed they would receive. Dkt. No. 252 at 18 ("Plaintiffs estimate that each claimant will receive between $142 and $285.")[3]

---

[1] Of these 38,141 claims, 705 were filed after the May 24, 2017 deadline. Declaration of Jay Geraci ("Geraci Decl.") ¶ 24. However, Class Counsel respectfully requests that they be allowed. *See* Supplemental Declaration of Keith J. Keogh ("Supp. Keogh Decl.") at ¶ 8.

[2] If the Court grants the requested attorneys' fees, costs, and incentive awards, the administrator's estimate is accurate, and the Court allows late-filed claims by valid Settlement Class members, Settlement Class members will each receive approximately $232 = ($14,500,000 fund - $4,832,850 fees – $665,580.46 administration - $110,732.71 costs - $40,000 incentive awards) ÷ 38,141.

[3] Plaintiffs' estimate was based on a 5 to 10% claim rate with 5% being standard in consumer class actions such as the TCPA. In fact, many approved TCPA class settlements had much lower claim rates, which further illustrates the claim rate here was above average. *See Wood Dale Chiropractic, Ltd. V. DrFirst.com, Inc.*, No. 1:12-cv-00780, Dkt. No. 69 (N.D. Ill. Oct. 30, 2013) (1.97 % of the class made claims); *North Suburban Chiropractic Clinic Ltd. V. Rx Security, Inc.*, No. 1:13-cv-06897, Dkt. No. 41-1 (N.D. Ill. Jan. 15, 2015) (.5% of the class made claims); *Agne v. Papa John's International Inc.*, No. 2:10-cv-01139, Dkt. No. 384 (W.D. Wash. Oct. 8, 2013) (1.6% of the class made claims); *Spillman v. RPM Pizza, LLC*, No. 10-cv-0349, Dkt. No. 241 (M.D. La. May 23, 2013) (less than 1% of the class made claims).

By contrast, just nine Class Members asked to be excluded, and Class Counsel received four objections, only one of which was filed by a valid Settlement Class member.[4] The overwhelmingly positive reaction of the Class is evidence that the settlement is fair, reasonable, and adequate.

For the reasons set forth in this memorandum and in the papers previously submitted in support of approval, including but not limited to Plaintiffs' Unopposed Amended Motion for Preliminary Approval of Class Settlement, Conditional Certification of Class and Entry of Scheduling Order (Dkt. No. 152) and the Memorandum in Support of Service Awards, Attorneys' Fees and, and Costs (Dkt. No. 268), Plaintiffs respectfully request that the Court grant final approval of the settlement by: (1) finally certifying the Settlement Class; (2) approving the proposed Settlement Agreement as fair, adequate, and reasonable for the certified Settlement Class; (3) determining that adequate notice was provided to the Settlement Class; (4) approving payment to the claims administrator estimated to be $665,580.46; (5) approving Class Counsel's requested attorneys' fees of $4,832,850 and reimbursement of $110,732.71 in out-of-pocket litigation costs; (6) approving an award of $10,000 to each Plaintiff for their service as the Class Representatives; and (7) overruling the invalid and unmeritorious objections.

## II.  AUTHORITY AND ARGUMENT

A court may approve a class action settlement if it is fair, adequate, and reasonable, and not a product of collusion. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir.

_____

[4] On June 13, 2017, serial objectors Patrick Sweeney and Kerry Ann Sweeney advised Class Counsel they would withdraw objections submitted on behalf of a minor child who is not on the Settlement Class list. Supp. Keogh Decl., Exhs. 1 and 2. The objections of non-class members Brooke Bowes and Experian are addressed in Plaintiffs' Response to Objections, which has been filed contemporaneously. Only one objection, submitted by class member Kara Bowes, was submitted by a valid member of the class. Even then, as Plaintiffs explain in their Response to Objections, Ms. Bowes' objection lacks merit; it should not be allowed to deprive Settlement Class Members of the benefits they are entitled to receive under the settlement.

2005). Approval of a class action settlement is within the Court's discretion, which "should be exercised in light of the general judicial policy favoring settlement." *In re Giant Interactive Grp., Inc. Sec. Litig.,* 279 F.R.D. 151, 159 (S.D.N.Y. 2011) (citation omitted). "The Court must eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974). A settlement is fair, adequate, and reasonable, and merits final approval, when "the interests of the class as a whole are better served by the settlement than by further litigation." *Manual for Complex Litigation* (Fourth) ("MCL 4th") § 21.61, at 480 (2010).

"Federal courts within this Circuit make the fairness determination based upon 'two types of evidence:' (1) substantive and (2) procedural." *Velez v. Novartis Pharmaceuticals Corp.*, No. 04 Civ. 09194 (CM), 2010 WL 4877852, at *11 (S.D.N.Y. Nov. 30, 2010) (citing *Wal-Mart Stores, Inc.*, 396 F.3d at 116). Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Id*; s*ee also In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement"). Because the settlement is both procedurally and substantively fair, it should be approved.

### A.    The settlement is procedurally fair and should be approved

A proposed class settlement is presumptively fair when sufficient discovery has been provided and "the settlement is the product of arms-length negotiation, untainted by collusion." William B. Rubenstein, *Newberg on Class Actions* § 13:45 (5th ed. 2016). The settlement here is procedurally fair because it was reached after Class Counsel conducted a thorough investigation of the claims and defenses, evaluated the strengths and weaknesses of those claims and defenses,

and engaged in arm's length negotiations with AEO, including a mediation with an experienced mediator.

The settlement follows a thorough investigation by the parties prior to mediation and settlement. The parties have actively litigated this action for over two years, during which Plaintiffs propounded written discovery requests targeting AEO's telemarketing policies and practices, correspondence relating to the relationship between AEO and its vendors, and the calling data necessary to identify the class and establish the scope of the alleged violations. Dkt. No. 253 at ¶ 27. AEO produced nearly twenty thousand pages of documents, including email correspondence that sheds light on the degree of control that AEO had over its telemarketing agents. *Id.* Prior to the transfer of the *Legg* Action to this court, Legg compelled production of class data from third party eBay. Dkt No. 254 (Keogh Decl.) at ¶ 2. As part of the process, the *Legg* court ordered an independent expert to assist with data queries. *See* No. 14-cv-61058-BLOOM/VALLE (S.D. Fl. Nov. 21, 2014), Dkt. No. 69. *Legg* also moved to compel class data from AEO. *Id.* Dkt. No. 33-1.

AEO contended that the text data was in the hands of a third party texting platform provider, Archer International ("Archer"), which AEO's marketing vendor Experian hired to send texts on AEO's behalf. Dkt. No. 253 at ¶ 28. Plaintiffs immediately pursued the data, but Archer declared bankruptcy shortly after being served with Plaintiffs' subpoena, forcing Plaintiffs to hire two sets of bankruptcy counsel to navigate the subpoena process. *Id.* Plaintiffs negotiated with Archer's bankruptcy counsel for production of the data and obtained an order requiring Archer to preserve the data and other assets pending the sale of its assets to Waterfall International, Inc. ("Waterfall"). *Id.* After Archer produced calling records that identify the dates and phone numbers to which Archer sent texts on AEO's behalf, Plaintiffs retained an expert

witness who analyzed the call records to identify class members and the number of allegedly unlawful calls. *Id.* Moreover, Plaintiffs pursued third party discovery from Waterfall to assess whether AEO's alleged violations continued after the sale of Archer's assets to Waterfall. *Id.* at ¶ 31.

Plaintiffs also pursued third party discovery from Experian prior to adding Experian as a defendant. Dkt. No. 253 at ¶ 29. Experian resisted Plaintiffs' subpoena, and the parties engaged in substantial meet and confer efforts before Experian agreed to produce over 160,000 pages of documents in a format that was difficult to search. *Id.* These documents were instrumental in determining the glitches and errors in AEO's, Experian's and/or Archer's systems that made it possible for the allegedly unlawful texts to be sent. *Id.* AEO's and Experian's documents were also instrumental to Plaintiffs in deposing AEO's Rule 30(b)(6) designees, Erica Dudash, Clinton Field, and Rafiq Ghaswala, and Experian's Rule 30(b)(6) designee, Michael Puffer. Dkt. No. 253 (Terrell Decl.) ¶ 30. In addition, AEO took the depositions of Plaintiffs, and Plaintiffs responded to written discovery. *Id.*

As the Court recognized in its preliminary approval order, the settlement "has been negotiated in good faith at arm's length." Dkt. No. 259 (Preliminary Approval Order) at 2. The parties are represented by highly competent counsel who have years of experience litigating and settling complex class actions, including actions involving alleged violations of the TCPA. *See* Dkt. No. 253 (Terrell Decl.) at ¶¶ 16-20; 254 (Keogh Decl.) at ¶¶ 11-12, 18-26; 255 (Owens Decl.) at ¶¶ 15–23; 256 (Fitapelli Decl.) at ¶ 5. To reach this settlement, the parties first mediated with the Honorable Morton Denlow of Judicial Arbitration and Mediation Services, Inc. on June 28, 2016. Dkt. No. 253 at ¶ 34; *see Hashw v. Dep't Stores Nat'l Bank.*, 182 F. Supp. 3d 935, 941 (D. Minn. 2016) (granting final approval where parties appeared before Hon. Denlow as

mediator); *Williams v. Quinn*, 748. F. Supp. 2d 892, 903 (N.D. Ill. 2010) ("Magistrate Judge Denlow mediated settlement discussions between the parties. His efforts were valuable in achieving the settlement."); *Hageman v. AT &T Mobility LLC*, No. CV 13-50-BLG-RWA, 2015 WL 9855925, at *1 (D. Mont. Feb. 11, 2015) (approving TCPA settlement Judge Denlow mediated). During that full-day mediation session, the parties made substantial progress but were unable to resolve the case. *Id*.

The parties subsequently engaged in months of follow-up meetings and negotiations, and worked with their respective experts, to reach agreement regarding the scope of the class and settlement amount. Dkt. No. 254 (Keogh Decl.) at ¶ 5. These actions culminated in a Settlement Agreement that provides substantial benefits to the Settlement Class, including a non-reversionary payment by AEO of $14,500,000 into a Settlement Fund that Plaintiffs propose be used to pay: (1) Settlement Class Member claims; (2) settlement administration expenses; (3) a court-approved incentive award to each of the four Plaintiffs; and (4) court-approved attorneys' fees and costs. Dkt. No. 253-1 (Settlement Agreement).

At all times, the parties' settlement discussions were arms-length and adversarial in nature. In light of Class Counsel's extensive discovery efforts and their work negotiating fair relief for the Settlement Class, the settlement is entitled to a presumption of procedural fairness.

**B.** **The settlement is substantially fair and meets the *Grinnell* standards for class action settlement approval**

The settlement is substantively fair because its terms are fair, adequate, and reasonable pursuant to the analytical framework set forth by the Second Circuit in *Grinnell*. 495 F.2d at 448, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). The *Grinnell* factors in determining whether a settlement is substantially fair are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the [d]efendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id*. at 463. "The evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice," rather than applying the factors in a systematic manner. *Id*. at 468. Here, the *Grinnell* factors weigh in favor of final approval.

1.   Litigation through trial would be complex, costly, and long

"To assess the substantive fairness of a settlement, courts weigh the benefits of a potential settlement against the time and expense of continued litigation." *Tiro v. Pub. House Investments, LLC,* No. 11 CIV. 7679 CM, 2013 WL 4830949, at *6 (S.D.N.Y. Sept. 10, 2013) (citing *Maley v. Del Global Tech. Corp.,* 186 F. Supp. 2d 358, 361-62 (S.D.N.Y. 2002). "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). This case is no exception.

Here, continued litigation of this matter would cause additional expense and delay. Although the parties had conducted significant discovery up to this point, substantial work remained to prepare this case for trial. For example, Plaintiffs obtained calling data and performed expert work, but their experts had not been deposed. Moreover, substantial briefing regarding motions for class certification, summary judgment, and possibly a decertification motion remained. Further, in the event the Class recovered a larger judgment after a trial, the additional delay through trial, post-trial motions, and the appellate process could delay the Class

recovery for years, further reducing its value. *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action."); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 257 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation…the passage of time would introduce yet more risks…and would, in light of the time value of money, make future recoveries less valuable than this current recovery"). Along these lines, it is likely that AEO would appeal any judgment creating additional risk and delay. Thus, there was substantial risk that any victory at trial would be hollow, leaving class members with nothing. *See West Virginia v. Chas. Pfizer & Co.,* 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), *aff'd,* 440 F.2d 1079 (2d Cir. 1971); *see also Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).

In contrast, the settlement makes substantial monetary relief available to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of final approval.

## 2.     The reaction of the Class has been positive

"The fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate." *Wright v. Stern*, 553 F. Supp. 2d 337, 344–45 (S.D.N.Y. 2008). Here, Class Members have shown an enthusiastic response to the settlement. The Class Notice sent to Class Members explained the allocation formula, an estimate of each Class Members' award, and informed Class Members of their right to object or to exclude themselves from the settlement. *See* Geraci Decl., Exhs. C and D. Out of

618,301 Class Members, 9 Class Members excluded themselves from the Settlement, and only one valid Class Member objected to the Settlement. *See* Plaintiffs' Response to Objections to Class Action Settlement at II(E); *see also* Geraci Decl., ¶¶ 25, 28.

Such a favorable reaction supports final approval. *See Owens v. Freshdirect LLC*, No. 14 Civ. 1909 (VEC), Dkt. No. 179 (S.D.N.Y. Oct. 30, 2015) (Caproni, J.) (granting final approval where 10 class members excluded themselves from settlement); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d Cir. 2001) (affirming district court's conclusion that 18 objections out of 27,833 class members was a "small number"); *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 62 (S.D.N.Y. 2003) (approving settlement where only 19 out of forty thousand claimants lodged objections); *Marisol A. v. Giuliani*, 185 F.R.D. 152, 163 (S.D.N.Y. 1999) (holding that three objections in a class of over 100,000 was evidence of the Settlement Agreements' fairness, reasonableness, and adequacy).

3.   <u>Discovery has advanced far enough to allow the parties to responsibly resolve the case</u>

The third *Grinnell* factor questions "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)). The extensive discovery completed by the parties here easily meets this standard. The parties litigated this case, thoroughly and effectively, for over two years. Plaintiffs' counsel thoroughly analyzed the factual and legal issues involved in this case. Dkt. No. 253 (Terrell Decl.) at ¶¶ 27-32; 254 (Keogh Decl.) ¶ 6. Plaintiffs' counsel propounded written discovery, sent subpoenas, and reviewed hundreds of thousands of pages of documents. *Id.* When it became clear during mediation that the parties needed additional information regarding the call data to thoroughly assess their respective positions, they worked together to determine the scope of the class. The

parties reached a settlement only after seeking and obtaining additional call data and the class is limited to only the class members identified. *Id.* This factor favors settlement approval.

4. <u>Plaintiffs would face real risks if the case proceeded</u>

Courts "assess the risks of litigation against the certainty of recovery offered by the Settlement" when evaluating the risks of establishing liability. *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579 (S.D.N.Y. 2008). Courts recognize that "[l]itigation inherently involves risks" and that regardless of the plaintiff's perceived strength of a case, liability is "no sure thing." *Wal-Mart Stores*, 396 F.3d at 118. "Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits." *Flores v. Anjost*, No. 11 CIV. 1531 AT, 2014 WL 321831, at *5 (S.D.N.Y. Jan. 29, 2014) (quoting *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969)).

Here, Plaintiffs risked losing on the merits. AEO steadfastly denies liability for texts made by a third party text platform, and asserted that it should not be vicariously liable under agency theories. *See* Dkt No. 162 (Order granting Experian's motion to dismiss Plaintiffs' allegations regarding direct and vicarious liability); *see Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 139 (E.D.N.Y. 2015) (granting motion to dismiss on issue of vicarious liability); *see Saragusa v. Countrywide*, No. CV 14-2717, 2016 WL 1059004, at *4 (E.D. La. Mar. 17, 2016) (dismissing complaint because plaintiff could not allege an ATDS was used); *see also Cunningham v. Kondaur Capital*, No. 3:14-1574, 2014 WL 8335868, at *8 (M.D. Tenn. Nov. 19, 2014), *report and recommendation approved*, No. 3:14-CV-01574, 2015 WL 1412737 (M.D. Tenn. Mar. 26, 2015) (same). Moreover, if AEO were able to convince this Court, or a jury, that Plaintiffs' allegations were overstated or unfounded, recoverable damages would be reduced or eliminated altogether.

Even if Plaintiffs had prevailed at trial, they could have had difficulty collecting any judgment since AEO faced exposure of between $300 and $900 million, particularly if AEO were to declare bankruptcy. Thus, there was substantial risk that any victory at trial would be hollow, leaving class members with nothing. *See West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), aff'd, 440 F.2d 1079 (2d Cir. 1971); *see also Berkey Photo, Inc. supra.* (reversing $87 million judgment after trial).

By agreeing to the proposed settlement, Plaintiffs alleviated these concerns. This factor supports final approval.

  5. <u>Establishing a class and maintaining it through trial would not be simple</u>

The risk of obtaining class certification and maintaining it through trial also supports final approval. Had a settlement not been reached, AEO would likely contend that some class members provided consent, and that individualized issues of consent preclude certification. Courts are divided as to whether consent issues predominate over common questions in TCPA cases, depending on the circumstances of the case. *Compare, e.g., Vigus v. Southern Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011) (refusing to certify TCPA class where the "proposed class includes a substantial number of people who voluntarily gave their telephone numbers to the [defendant]"), *and Versteeg v. Bennett, Deloney & Noyes, P.C.,* 271 F.R.D. 668, 674 (D. Wyo. 2011) (declining to certify TCPA class in light of individualized inquiry "into whether each individual gave 'express consent' by providing their wireless number"), *with Green v. Service Master*, 2009 WL 1810769, at *2 (N.D. Ill. June 22, 2009) (in a fax blast case, "the question of consent may rightly be understood as a common question and the possibility that some class members may have consented is not sufficient to defeat class

certification."), *and Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 567 (W.D. Wash. 2012) ("Defendants' speculation that customers may have given their express consent to receive text message advertising is not sufficient to defeat class certification.").

Even if Plaintiffs succeeded in certifying a class, AEO would likely seek permission to file an interlocutory appeal under Fed. R. Civ. P. 23(f). Settlement eliminates this risk, expense, and delay, and as such, supports final approval.

6. <u>Defendants' ability to withstand a greater judgment is not assured</u>

The Settlement Agreement provides substantial recovery for the Class Members. Nevertheless, even if AEO could afford to pay more, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y.2005) (quoting *Holocaust Litig.*, 80 F. Supp. 2d at 178 n. 9). Under these circumstances, this factor is neutral and does not preclude the Court from approving the final settlement.

7. <u>The settlement fund is substantial in light of the possible recovery and the attendant risks of litigation</u>

The determination of whether a settlement amount is reasonable does not involve the use of a "mathematical equation yielding a particularized sum." *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 483–84 (S.D.N.Y. 2009) (citation omitted). "[T]he dollar amount of the settlement by itself is not decisive in the fairness determination…." *In re Paine Webber Ltd. P'ships Litig.*, 171 F.R.D. 104, 131 (S.D.N.Y.1997). Instead, "there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.), *cert. denied*, 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972). "Where the settlement provides 'a meaningful benefit' to the class,

settlements have been found reasonable." *Karic v. Major Auto. Companies, Inc.*, No. 09 CV 5708 (CLP), 2016 WL 1745037, at *7 (E.D.N.Y. Apr. 27, 2016) (citation omitted). Moreover, when settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing speculative payment of a hypothetically larger amount years down the road," settlement is reasonable. *Gilliam v. Addicts Rehab Crt. Fund*, No. 05 Civ. 3452 (RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (internal quotation marks and citation omitted).

The $14,500,000 settlement amount provides much more than "a fraction of the potential recovery" to Class Members. Class Members will each receive an average net settlement payment (net of attorneys' fees, costs, service awards, and claims administration fees) of approximately $232. This amount is well in line with—and indeed exceeds—many other court-approved TCPA settlements. *See Manouchehri v. Styles for Less, Inc.*, No. 14-cv-2521 NLS, 2016 WL3387473, at *2, 5 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive $10 cash or $15 voucher); *Franklin v. Wells Fargo Bank, N.A.,* No. 14cv2349-MMA (BGS), 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) (approving settlement where class members received $71.16); *Estrada v. iYogi, Inc.*, No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (preliminarily approving TCPA settlement where class members estimated to receive $40); *Cubbage v. Talbots, Inc.*, No. 09-cv-00911-BHS, Dkt. No. 114 (W.D. Wash. Nov. 5, 2012) (finally approving TCPA settlement where class members would receive $40 cash or $80 certificate); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, Dkt. No. 96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98 each); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40 each); *Desai v. ADT Sec. Servs., Inc.*, No. 1:11-cv-01925 (Dkt. No. 229) (N.D. Ill. Feb. 14, 2013) (estimating claimants would receive

between $50 and $100); *Garret v. Sharps Compliance, Inc.*, No. 1:10-cv-04030 (Dkt. No. 65) (N.D. Ill. Feb. 23, 2012) (claimants received between $27.42 and $28.51). *See also In re Enhanced Recovery Co.*, No. 13-md-2398-RBD-GJK (M.D. Fla. July 29, 2014), Dkt. No. 123 at 1 (only injunctive relief for class) and Dkt. No. 124 (settlement granted final approval); *Grant v. Capital Mgmt. Servs.*, No. 10-cv-2471, 2014 U.S. Dist. LEXIS 29836 at *10 (S.D. Cal. Mar. 5, 2014) (injunctive relief only – no monetary relief to the class).

As one court noted in approving an unrelated TCPA class settlement: "[t]he essential point here is that the court should not reject a settlement solely because it does not provide a complete victory to plaintiffs, for the essence of settlement is compromise." *Gehrich v. Chase Bank USA, N.A.*, No. 12 C 5510, 2016 WL 806549, at *7 (N.D. Ill. Mar. 2, 2016) (approving $34 million TCPA settlement for class of more than 32 million individuals with a per-claimant recovery of $52.50) (citing *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996)). Here, as in *Gehrich,* "[i]ndividual class members receive less than the maximum value of their TCPA claims, but they receive a payout without having suffered anything beyond a few unwanted calls or texts, they receive it (reasonably) quickly, and they receive it without the time, expense, and uncertainty of litigation. [AEO], for its part, buys peace and mitigates risk." *Id.*

What the Class releases through the settlement is related to what the Class gains. In this case, the release for the class members is appropriately tailored to the claims at issue in this case and only releases the claims "in connection with text message marketing programs." Dkt. No. 253-1 (Settlement Agreement) § 17.2. Along these lines, the Plaintiffs submit a revised draft Final Approval Order that clarifies any possible confusion that the release is not so limited. *See* Supp. Keogh Decl., Exh. 5. Paragraph ¶ 17 provides: "For the avoidance of doubt, to the extent that the release provided in Section 17 of the Settlement Agreement and above applies to third

parties other than "AEO" (as defined in the Settlement Agreement), any such release of third parties is limited to only messages for AEO related messages and does not release third parties for non-AEO related messages." *Id*.

Thus, the settlement, which provides substantial monetary benefit with an appropriately tailored release, is more than reasonable and supports final approval.

## C.    Class members received the best notice practicable

This Court has already determined that the notice program in this case meets the requirements of due process and applicable law, provides the best notice practicable under the circumstances, and constitutes due and sufficient notice to all individuals entitled thereto. Dkt. No. 259 (Preliminary Approval Order) at 5. This notice program has been implemented by independent claims administrator, Kurtzman Carson Consultants LLC ("KCC"). *See* Geraci Decl. ¶ 1.

On March 24, 2017, KCC sent a Double Postcard Summary Notice with Detachable Claim Form ("Postcard Notice") to 198,310 mailing addresses. Geraci Decl. ¶ 10. The Postcard Notice summarized the settlement, informed Settlement Class Members of key deadlines, including the deadline to submit claims, exclusion requests and/or objections, and referred Settlement Class Members to the Settlement Website. *Id.*, Exh. C. KCC performed address updating using the United States Postal Service National Change of Address database before mailing. *Id.* at ¶ 9.

After mailing the Postcard Notice, 2,070 notices were returned with forwarding addresses, and 29,868 notices returned as undeliverable. *Id.* ¶¶ 11-12. KCC sent Postcard Notice to the 2,070 forwarding addresses, and attempted to locate a valid mailing address for those returned as undeliverable by searching public databases. *Id.* KCC found 18,391 new addresses

and immediately re-mailed notices to all Settlement Class Members for whom KCC obtained an updated address. *Id*. ¶ 12.

On March 24, 2017, KCC also sent Email Notice ("Email Notice") to 415,174 email addresses. Geraci Decl. ¶ 13. Like the Postcard Notice, the Email Notice summarized the settlement, informed Settlement Class Members of key deadlines, including the deadline to submit claims, exclusion requests and/or objections, and referred Settlement Class Members to the Settlement Website. *Id.*, Exh. D. After sending the Email Notice, 63,149 emails returned as undeliverable. *Id.* at ¶ 13. KCC conducted reverse directory searches for names and addresses associated with the undeliverable emails and mailed the Postcard Notice to 55,457 names and addresses found. *Id*. at ¶ 19.

Of the notices mailed and emailed to the Class List of 618,301, KCC estimates that 57,140 (less than 10%) did not reach their targets. Geraci Decl. ¶ 31.

KCC also established a toll-free number where Class Members were able to learn more about the Settlement, and a Settlement Website where Class Members were able to file a claim and obtain additional information and documents about the Settlement such as answers to Frequently Asked Questions, the Class Notice, the Claim Form, the Settlement Agreement, Preliminary Approval Order, and other important documents. Geraci Decl. ¶¶ 21-22. As of June 14, 2017, the toll-free number has received 2,681 calls, and the website has received 142,513 visitors. *Id*.

The postmark deadline for submitting a claim, and for requesting exclusion or objecting to the settlement was May 24, 2017. In total, KCC received 38,141 claims by valid class members. Geraci Decl. ¶ 24. In contrast, KCC did not receive any objections directly, and of the objections filed with the Court, just one was submitted by a valid Settlement Class Member. *Id*.

at ¶ 26; *see also* Plaintiffs' Response to Objections to Class Action Settlement at II (E). Only nine Settlement Class Members requested to opt out. Geraci Decl. ¶ 25.

The notice program has been successful. KCC estimates Notices reached 90.76%[5] of Class Members and 6.17% submitted potentially valid claims.[6] Geraci Decl. ¶¶ 5, 24, 31. In sum, the notice program implemented by KCC has provided due and adequate notice of these proceedings and satisfies the requirements of due process.

**D.    The Settlement Class should be finally certified**

This Court conditionally certified the Settlement Class for settlement purposes only. Dkt. No. 259. For all the reasons set forth in Plaintiffs' preliminary approval briefing and the Preliminary Approval Order, the Court should finally certify the Settlement Class.

## III.  CONCLUSION

The settlement is fair, adequate, and reasonable in all respects. Therefore, Plaintiffs respectfully request that the Court overrule the sole objection lodged by a verifiable class member and grant final approval to the settlement.

RESPECTFULLY SUBMITTED AND DATED this 21st day of July, 2017.

TERRELL MARSHALL LAW GROUP PLLC

By:  /s/ Adrienne D. McEntee, *Admitted Pro Hac Vice*
     Beth E. Terrell, *Admitted Pro Hac Vice*
     Email:  bterrell@terrellmarshall.com
     Mary B. Reiten, *Admitted Pro Hac Vice*

---

[5] This direct notice program yielded an exceptionally high percentage, especially when the Federal Judicial Center considers 70%, which may include publication, to be reasonable. *See* Federal Judicial Center, Judges' Class Notice and Claims Process Checklist and Plain Language Guide, at p. 3 (2010) (considering notice efforts reaching 70% of class to be reasonable).
[6] Class Counsel reached this percentage by assuming the Court would allow 705 of the 38,141 claims by valid class members which were filed after the May 24, 2017 deadline, and dividing the number of claims by valid class members by the Class List of 618,301.

Email: mreiten@terrellmarshall.com
Adrienne D. McEntee, *Admitted Pro Hac Vice*
Email: amcentee@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-54540

Joseph A. Fitapelli
Email: jfitapelli@fslawfirm.com
Brian S. Schaffer
Email: bschaffer@fslawfirm.com
Frank J. Mazzaferro
Email: fmazzaferro@fslawfirm.com
FITAPELLI & SCHAFFER, LLP
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375
Facsimile: (212) 481-1333

Scott D. Owens, *Admitted Pro Hac Vice*
Email: scott@scottdowens.com
Patrick C. Crotty
Email: pccrotty@gmail.com
SCOTT D. OWENS, P.A.
3800 S. Ocean Drive, Suite 235
Hollywood, Florida 33019
Telephone: (954) 589-0588
Facsimile: (954) 337-0666

Keith J. Keogh, *Admitted Pro Hac Vice*
Email: keith@keoghlaw.com
Michael S. Hilicki, *Admitted Pro Hac Vice*
Email: michael@keoghlaw.com
Michael Karnuth, *Admitted Pro Hac Vice*
Email:
KEOGH LAW, LTD.
55 West Monroe Street, Suite 3390
Chicago, Illinois 60603
Telephone: (312) 726-1092
Facsimile: (312) 726-1093

*Attorneys for Plaintiffs and the Putative Classes*

<u>CERTIFICATE OF SERVICE</u>

I, Adrienne D. McEntee, hereby certify that on July 21, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Craig J. Mariam, *Admitted Pro Hac Vice*
Email:  cmariam@gordonrees.com
Kristie Morgan Simmerman, *Admitted Pro Hac Vice*
Email: ksimmerman@gordonrees.com
GORDON & REES LLP
633 West Fifth Street, Suite 5200
Los Angeles, California 90071
Telephone: (213) 576-5000
Facsimile:  (877) 306-0043

Richard T. Victoria, *Admitted Pro Hac Vice*
Email: rvictoria@gordonrees.com
GORDON & REES LLP
707 Grant St, Suite 3800
Pittsburgh, PA 15219
Phone: (412) 577-7400
Facsimile: (412) 347-5461

Eric Robert Thompson
GORDON & REES LLP
Email: ethompson@gordonrees.com
200 South Biscayne Boulevard, Suite 4300
Miami, Florida  33131
Telephone:  (305) 428-5300
Facsimile:  (877) 634-7245

*Attorneys for Defendants American Eagle Outfitters, Inc., and AEO Management Co.*

Christopher Martin Lomax
Email: clomax@jonesday.com
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, Florida  33131
Telephone:  (305) 714-9719
Facsimile:  (305) 714-9799

John Alexander Vogt, *Admitted Pro Hac Vice*
Email: javogt@jonesday.com
Richard J. Grabowski, *Admitted Pro Hac Vice*
Email: rgrabowski@jonesday.com
Paul Bartholomew Green
Email: bartgreen@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, California  92612
Telephone:  (949) 851-3939
Facsimile:  (949) 553-7539

*Attorneys for Defendant Experian Marketing Solutions, Inc.*

Eric Alan Isaacson
Email: ericalanisaacson@icloud.com
LAW OFFICE OF ERIC ALAN ISAACSON
La Jolla, California 92037
Telephone: (858) 263-9581

C. Benjamin Nutley
Email: nutley@zenlaw.com
1055 East Colorado Blvd., 5th Floor
Pasadena, California 91106
Telephone: (626) 204-4060

*Attorneys for Class-Members/Objectors Kara M. Bowes and Brooke Bowes*

DATED this 21st day of July, 2017.

TERRELL MARSHALL LAW GROUP PLLC


By: /s/ Adrienne D. McEntee, *Admitted Pro Hac Vice*
    Adrienne D. McEntee, *Admitted Pro Hac Vice*
    Email:  amcentee@terrellmarshall.com
    936 North 34th Street, Suite 300
    Seattle, Washington  98103-8869
    Telephone:  (206) 816-6603
    Facsimile:  (206) 319-5450

*Attorneys for Plaintiffs and the Putative Classes*