UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTINA MELITO, CHRISTOPHER LEGG, ALISON PIERCE, and WALTER WOOD, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>AMERICAN EAGLE OUTFITTERS, INC., a Delaware corporation, AEO MANAGEMENT CO., a Delaware corporation, and EXPERIAN MARKETING SOLUTIONS, INC.,<br><br>        Defendants. | NO. 1:14-cv-02440-VEC |

**PLAINTIFFS' RESPONSE TO OBJECTIONS TO CLASS ACTION SETTLEMENT**

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ..................................................................................................1

    A.      The Class has Responded Positively to the Settlement .......................................2

II.     THE OBJECTIONS TO THE SETTLEMENT LACK MERIT......................................3

    A.      The Objection to the Amount of the Monetary
        Award Should Be Overruled..........................................................................3

    B.      The Objection to the Notice Should Be Overruled............................................10

    C.      The Objection to the Requested Incentive Awards Should Be Overruled..........11

    D.      Objections to the Attorneys' Fees Should be Overruled ....................................13

    E.      Objections from Non-Class Members Should Be Overruled For
        Lack of Standing.........................................................................................15

    F.      Plaintiffs Have Article III Standing .................................................................19

III.    CONCLUSION....................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Page**

*2 v. Universal Acceptance Corp.*,
    No. CV 15-127 (RHK/FLN), 2016 WL 4132244 (D. Minn. Aug. 3, 2016)..................21

*A.D. v. Credit One Bank, N.A.*,
    2016 WL 4417077 (N.D. Ill. Aug. 19, 2016), ........................................................20, 21

*Adams v. AllianceOne Receivables Mgmt., Inc.*,
    No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012) ............................................9

*Agne v. Papa John's Int'l, Inc.*,
    286 F.R.D. 559 (W.D. Wash. 2012) ...............................................................................7

*Anwar v. Fairfield Greenwich Ltd.*,
    133 F. Supp. 3d 560 (S.D.N.Y. 2015)...........................................................................17

*Aranda v. Caribbean Cruise Line, Inc.*,
    No. 12 C 4069, 2016 WL 4439935 (N.D. Ill. Aug. 23, 2016).......................................21

*Atl. Richfield Co. v. Interstate Oil Transp. Co.*,
    784 F.2d 106 (2d Cir. 1986).........................................................................................18

*Baird v. Boies, Schiller & Flexner LLP*,
    219 F. Supp. 2d 510 (S.D.N.Y. 2002)...........................................................................14

*Bell v. Survey Sampling Int'l, LLC*,
    No. 3:15-CV-1666 (MPS), 2017 WL 1013294 (D. Conn. Mar. 15, 2017) ...................20

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
    603 F.2d 263 (2d Cir. 1979)...........................................................................................8

*Bhatia v. Piedrahita*,
    756 F.3d 211 (2d Cir. 2014)...................................................................................16, 17

*Booth v. Appstack, Inc.*,
    No. C13-1533JLR, 2016 WL 3030256 (W.D. Wash. May 25, 2016)...........................21

*Brecher v. Republic of Argentina*,
    806 F.3d 22 (2d Cir. 2015)...........................................................................................19

*Campbell-Ewald Co. v. Gomez*,
    136 S. Ct. 663 (2016) .............................................................................................15, 21

*Caudill v. Wells Fargo Home Mtg., Inc.*,
   Civ. No. 5:16–066, 2016 WL 3820195 (E.D. Ky. July 11, 2016) ..................................21

*Cent. R.R. & Banking Co. v. Pettus* .......................................................................................12
   113 U.S. 116 (1885)

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
   504 F.3d 229, 244 (2d Cir. 2007) ...............................................................................15

*Chambers v. Whirlpool Corp.*,
   No. 8:11-cv-01733 (C.D. Cal May 27, 2016) .................................................................4

*Chieftain Royalty Co. v. SM Energy Co.*,
   No. 11-cv-00177, 2015 U.S. Dist. LEXIS 159218 (W.D. Okla. Nov. 25, 2015) .............3

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)..........................................................................................2

*Cour v. Life360, Inc.*,
   Civ. No. 16–805, 2016 WL 4039279 (N.D. Cal. July 28, 2016) ..................................21

*Cubbage v. Talbots, Inc.*,
   No. 09-cv-00911-BHS, Dkt. No. 114 (W.D. Wash. Nov. 5, 2012) ................................9

*Cunningham v. Kondaur Capital*,
   No. 3:14-1574, 2014 WL 8335868 (M.D. Tenn. Nov. 19, 2014)...................................7

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)............................................................................................2

*Desai v. ADT Sec. Servs., Inc.*,
   Case No. 1:11-cv-01925, Dkt. No. 229 (N.D. Ill. Feb. 14, 2013) ..................................9

*Estrada v. iYogi, Inc.*,
   No. 2:13–01989 WBS CKD, 2015 WL 5895942 (E.D. Cal. Oct. 6, 2015).....................9

*Franklin v. Wells Fargo Bank, N.A.*,
   Case No. 14cv2349-MMA (BGS), 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) ............9

*Garret, et al. v. Sharps Compliance, Inc.*,
   Case No. 1:10-cv-04030, Dkt. No. 65, (N.D. Ill. Feb. 23, 2012) ...................................9

*Gehrich v. Chase Bank USA, N.A.*,
   12 C 5510, 2016 WL 806549 (N.D. Ill. Mar. 2, 2016) ..............................................9, 10

*Gevaerts v. TD Bank, N.A.*,
    2015 WL 6751061 (S.D. Fla. Nov. 5, 2015)....................................................13

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) ...................................................................2, 14

*Golden v. Shulman*,
    No. CV-85-3624, 1988 WL 144718 (E.D.N.Y. Sept. 30, 1988) ...................................13

*Gould v. Alleco*,
    883 F.2d 281 (4th Cir. 1989) .................................................................17

*Grant v. Capital Mgmt. Servs.*,
    No. 10-cv-2471, 2014 U.S. Dist. LEXIS 29836 (S.D. Cal. Mar. 5, 2014) .......................9

*Green v. Service Master*,
    2009 WL 1810769 (N.D. Ill. June 22, 2009) ...................................................7

*Hall v. Children's Place Retail Stores, Inc.*,
    669 F. Supp. 2d 399 (S.D.N.Y. 2009)...........................................................6

*Hewlett v. Consol. World Travel, Inc.*,
    No. CV 2:16-713 WBS AC, 2016 WL 4466536 (E.D. Cal. Aug. 23, 2016).................21

*In re Bioscrip, Inc. Sec. Litig.*,
    1:13-cv-06922, Dkt. No. 113 (S.D.N.Y. May 23, 2016) .......................................3

*In re Crazy Ed die Secs. Litig.*,
    824 F.Supp. 320 (E.D.N.Y. 1993) ...............................................................6

*In re Drexel Burnham Lambert Grp., Inc.*,
    130 B.R. 910 (S.D.N.Y. 1991)...................................................................15

*In re Elec. Books Antitrust Litig.*,
    639 F. App'x 724 (2d Cir. 2016) ...............................................................4

*In re Enhanced Recovery Co.*,
    No. 13-md-2398-RBD-GJK, Dkt. No. 123-24 (M.D. Fla. July 29, 2014).......................9

*In re Initial Pub. Offering Sec. Litig.*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009)........................................................6, 14

*In re Initial Pub. Offering Sec. Litig.*,
    728 F. Supp. 2d 289 (S.D.N.Y. 2010)...........................................................4

*In re Paine Webber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y.1997) ..............................................................6, 8

*In re Platinum & Palladium Commodities Litig.*,
  No. 10CV3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014).......................................17

*In re Prudential Inc. Secs. Ltd. Partnerships Litig.*,
  MDL No. 1005, M–21–67,
  1995 U.S. Dist. LEXIS 22103 (S.D.N.Y. Nov. 20, 1995).................................................6

*In re Worldcom, Inc. ERISA Litig.*,
  No. 02 Civ. 4816, 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) ...................................12

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ........................................................................................10

*Jackson v. Caribbean Cruise Line, Inc.*,
  88 F. Supp. 3d 129 (E.D.N.Y. 2015) ..............................................................................7

*Juarez v. Citibank, N.A.*,
  No. 16-CV-01984-WHO, 2016 WL 4547914 (N.D. Cal. Sept. 1, 2016) ......................21

*Krakauer v. Dish Network L.L.C.*,
  No. 1:14-CV-333, 2016 WL 4272367 (M.D.N.C. Aug. 5, 2016)...................................21

*Leyse v. Lifetime Entm't Servs., LLC*,
  No. 16-1133-CV, 2017 WL 659894 (2d Cir. Feb. 15, 2017) .........................................20

*Manouchehri v. Styles for Less, Inc.*, Case
  No. 14cv2521 NLS, 2016 WL3387473 (S.D. Cal. June 20, 2016) .................................9

*Marisol A. v. Giuliani*,
  185 F.R.D. 152 (S.D.N.Y. 1999) .....................................................................................2

*Mass. v. EPA*,
  549 U.S. 497 (2007)..................................................................................................19, 20

*McDaniel v. Cty. of Schenectady*,
  595 F.3d 411 (2d Cir. 2010)..........................................................................................13

*Mey v. Got Warranty, Inc.*,
  No. 5:15-CV-101, 2016 WL 3645195 (N.D.W. Va. June 30, 2016).............................21

*Mims v. Arrow Fin. Servs., LLC*,
  565 U.S. 368, 132 S. Ct. 740 (2012)........................................................................15, 20

*M.V.M., Inc. v. St. Paul Fire & Marine Ins. Co.*,
  20 F.R.D. 296 (S.D.N.Y. 1957) ....................................................................................18

*Muransky v. Godiva,*
    No. 15-60716, Dkt. No. 85 (S.D. Fla. Sept. 16, 2016) ..................................................3, 5

*O'Keefe v. Mercedes-Benz USA, LLC,*
    214 F.R.D. 266 (E.D. Pa. 2003) ....................................................................................4

*Ortiz v. Chop't Creative Salad Co. LLC,*
    89 F. Supp. 3d 573 (S.D.N.Y. 2015) ............................................................................12

*Padro v. Astrue,*
    No. 11-CV-1788 CBA RLM, 2013 WL 5719076 (E.D.N.Y. Oct. 18, 2013)................17

*Plummer v. Chem. Bank,*
    91 F.R.D. 434 (S.D.N.Y. 1981) ..................................................................................12

*Rogers v. Capital One Bank (USA), N.A.,*
    190 F. Supp. 3d 1144 (N.D. Ga. 2016) ........................................................................21

*Saragusa v. Countrywide,*
    No. CV 14-2717, 2016 WL 1059004 (E.D. La. Mar. 17, 2016)......................................7

*Schwyhart v. AmSher Collection Servs.,*
    2017 WL 1034201 (N.D. Ala. Mar. 16, 2017) ............................................................13

*Silberblatt v. Morgan Stanley,*
    524 F. Supp. 2d 425 (S.D.N.Y. 2007).........................................................................12

*Spokeo, Inc. v. Robins,*
    136 S.Ct. 1540 (2016)...................................................................................................19

*State Mut. Life Assur. Co. of Am. v. Arthur Andersen & Co.,*
    581 F.2d 1045 (2d Cir. 1978)......................................................................................18

*Steinfeld v. Discover Fin. Servs.,*
    No. C 12-01118 (N.D. Cal. Mar. 10, 2014) ..................................................................9

*Stinson v. City of New York,*
    No. 10 CIV. 4228 (RWS), 2017 WL 2544831 (S.D.N.Y. June 12, 2017) ...................15

*Susinno v. Work Out World Inc.,*
    No. 16-3277, 2017 U.S. App. LEXIS 12253 (3d Cir. 2017) .........................................21

*Thompson v. Metro. Life Ins. Co.,*
    216 F.R.D. 55 (S.D.N.Y. 2003) ....................................................................................2

*Trustees v. Greenough,*
    105 U.S. 527 (1881) ..............................................................................12

*U.S. Football League v. Nat'l Football League,*
    887 F.2d 408 (2d Cir. 1989) ..................................................................14

*Van Patten v. Vertical Fitness Grp., LLC,*
    847 F.3d 1037 (9th Cir. 2017) ...............................................................21

*Versteeg v. Bennett, Deloney & Noyes, P.C.,*
    271 F.R.D. 668 (D. Wyo. 2011) ..............................................................7

*Vigus v. Southern Ill. Riverboat/Casino Cruises, Inc.,*
    274 F.R.D. 229 (S.D. Ill. 2011) ...............................................................7

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
    396 F.3d 96 (2d Cir. 2005) ...........................................................10, 11

*West Virginia v. Chas. Pfizer & Co.,*
    314 F. Supp. 710 (S.D.N.Y. 1970) ..........................................................8

*Zani v. Rite Aid Headquarters Corp.,*
    No. 14-CV-9701 (AJN), 2017 WL 1383969 (S.D.N.Y. Mar. 30, 2017) ......................20

## FEDERAL RULES

Rule 14(a)(2)(C) ..............................................................................................17

Rule 23 ..................................................................................................11, 12, 15

## FEDERAL STATUTES

47 U.S.C. § 227 ..............................................................................................11

## OTHER AUTHORITIES

William B. Rubenstein, *Newberg on Class Actions* § 13:21 (5th ed. 2016) ................................4

William B. Rubenstein, *Newberg on Class Actions* § 13:22 (5th ed. 2016) .............................17

7B Charles Alan Wright & Arthur R. Miller,
    *Federal Practice and Procedure* § 1797.4 (3d ed. 2005). ................................4

*Rules & Regulations Implementing the Telephone Consumer Protection Act*
    30 F.C.C.R. 7961, 7979 (2015) ...............................................................19

# I.  INTRODUCTION

Plaintiffs and Class Counsel have achieved substantial relief for Settlement Class Members in the form of a settlement that requires Defendants American Eagle Outfitters, Inc. and AEO Management Co. (together "AEO") to pay $14,500,000 into a settlement fund where not a penny will revert back to Defendant. The settlement is the product of disputed litigation in several courts before being consolidated into this case as well as bankruptcy court relating to one of the vendors retained to send the text messages at issue, hotly-contested settlement negotiations, and a thorough evaluation of Plaintiffs' claims and the risks of continued litigation. Notice of the settlement has been sent and the claims, exclusion, and objection deadlines have passed. In total, 38,141 Settlement Class Members timely submitted claims for a cash payment. By contrast, only 9 exclusion requests were submitted, and only one Settlement Class Member objected to the settlement. Although Class Counsel received three other objections, all were submitted by persons who are not members of the Settlement Class, and one of these objections has since been withdrawn.[1] The positive reaction of the Class is evidence that the settlement is fair, reasonable, and adequate.

Class Counsel appreciate the important role that objectors can play in the class settlement approval process. That said, the only objection lodged here by a Settlement Class Member was filed by an attorney known to be a "professional" objector, or otherwise known to file on behalf of "professional" objectors. He should not be allowed to deprive Settlement Class Members the benefits they are entitled to receive under the settlement, especially since he ignores Second

---

[1] On June 13, 2017, serial objectors Patrick Sweeney and Kerry Ann Sweeney served on Class Counsel their Withdrawal of Objections submitted on behalf of a minor child who is not on the Settlement Class list. Supplemental Declaration of Keith Keogh ("Supp. Keogh Decl."), Exh. 1. The objections of non-class members Brooke Bowes and Experian are addressed *infra*.

Circuit precedent. For these reasons and those that follow, Plaintiffs respectfully request that the objections be overruled and the settlement approved as fair, reasonable, and adequate.

A.    **THE CLASS HAS RESPONDED POSITIVELY TO THE SETTLEMENT**

The class members' reaction to a proposed settlement is a factor in determining whether the settlement is substantially fair. *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Courts often infer that a settlement is fair when few class members object to it. *See, e.g., D'Amato v. Deutsche Bank,* 236 F.3d 78, 87 (2d Cir. 2001) (affirming district court's conclusion that 18 objections out of 27,833 class members was a "small number"); *Thompson v. Metro. Life Ins. Co*., 216 F.R.D. 55, 62 (S.D.N.Y. 2003) (approving settlement where only 19 out of forty thousand claimants lodged objections); *Marisol A. v. Giuliani*, 185 F.R.D. 152, 163 (S.D.N.Y. 1999) (holding that three objections in a class of over 100,000 was evidence of the Settlement Agreements' fairness, reasonableness, and adequacy).

At the time the parties entered into the Settlement Agreement, AEO estimated the Settlement Class consisted of approximately 618,289 individuals. The final Class List was very close to this number; AEO provided records to claims administrator, KCC Class Action Services, LLC ("KCC"), containing 618,301 unique phone numbers. Declaration of Jay Geraci Regarding Notice Administration and Proof of CAFA Compliance ("Geraci Decl.")  ¶ 5. KCC mailed a Double Postcard Summary Notice with Detachable Claim Form to Settlement Class members for whom AEO provided names and mailing addresses, or for whom KCC subsequently obtained names and mailing addresses. Geraci Decl. ¶ 30. KCC also sent email notices to those Settlement Class members for whom AEO provided email addresses. *Id*. ¶ 29. In total, approximately

561,161 of the 618,301 Settlement Class members, or 90.76% of Settlement Class members,

received direct notice.[2] *Id.* ¶ 31.

In addition, at Class Counsel's insistence, the parties agreed that a supplemental

"reminder" notice should be sent to Settlement Class Members who originally received email

notice. Geraci Decl. ¶ 20. KCC sent a reminder notice to 355,913 email addresses. *Id.*

The claims period has now closed. Valid Settlement Class Members have submitted a

total of 38,141 claims.[3] Geraci Decl. ¶ 24. Only one member of the Settlement Class objected to

the settlement (Dkt. No. 271, Objection of Kara Bowes) and only 9 requested to opt out. *Id.* ¶ 25.

The notice program's total cost is estimated to be $665,580.46. *Id.* ¶ 27.[4]

## II.  THE OBJECTIONS TO THE SETTLEMENT LACK MERIT

### A.    The Objection to the Amount of the Monetary Award Should Be Overruled

As an initial matter, Ms. Bowes and her attorney are professional objectors[5] who "'file

stock objections to class action settlements—objections that are '[m]ost often ...

---

[2] Sweeney objected that the notice was flawed because she did not receive notice. Yet the reason she did not receive notice is she is not a class member. Geraci Decl. ¶ 28.

[3] Of the 38,141 claims submitted by valid Class Members, 705 were filed after the May 24, 2017 deadline. Geraci Decl. ¶ 24. However, with the Court's permission, Class Counsel requests they be allowed. Supp. Keogh Decl. ¶ 8. In addition, 62,665 persons who are not Class Members filed claims. Geraci Decl. ¶ 23. Although they are not eligible to participate in this settlement, the sheer volume of claims by non-class members illustrates the settlement's importance.

[4] This estimate is slightly higher than the one provided at the preliminary approval stage, due in part to the number of third party data sources KCC needed to consult to obtain names and addresses of Settlement Class Members and to process and respond to over 60,000 non-class member claims. Supp. Keogh Decl. ¶ 10.

[5] The court in *Muransky v. Godiva* found Ms. Bowe's attorney, Mr. Isaacson, to be a professional objector when he raised substantially similar objections to that class settlement. No. 15-60716, Dkt. No. 85 at 5 (S.D. Fla. Sept. 16, 2016) ("In addition, the Plaintiff aptly characterizes Mr. Price, Mr. McDonald, Mr. Isaacson and Mr. Davis as 'professional objectors' who threaten to delay resolution of class action cases unless they receive extra compensation."), *report and recommendation adopted by* No. 15-60716 (S.D. Fla. Sept. 28, 2016). One court took the unusual step of "direct[ing] that all papers submitted by counsel shall be signed by both [local counsel] as well as Messrs. Davis and Nutley" in response to contentions that "Messrs. Davis and Nutley are part of a cartel of professional objectors who file vexatious and frivolous objections to stall class settlements in exchange for payoffs." *Chieftain Royalty Co. v. SM Energy Co.*, No. 11-cv-00177, 2015 U.S. Dist. LEXIS 159218, at *2 (W.D. Okla. Nov. 25, 2015). Mr. Isaacson is also objector's counsel in the following recent cases: Objection of Class Member

nonmeritorious'—and then are 'rewarded with a fee by class counsel to settle their objections.'"

*In re Elec. Books Antitrust Litig.*, 639 F. App'x 724, 728 (2d Cir. 2016) (summary order)

(quoting William B. Rubenstein, *Newberg on Class Actions* § 13:21 (5th ed. 2016)). Professional

objectors primarily seek to obstruct or delay settlement proceedings so as to extract attorneys'

fees in exchange for the withdrawal of the objection. 7B Charles Alan Wright &Arthur R. Miller,

*Federal Practice and Procedure* § 1797.4 (3d ed. 2005). Such behavior has led numerous courts

to conclude that "professional objectors undermine the administration of justice by disrupting

settlement in the hopes of extorting a greater share of the settlement for themselves and their

clients." *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010); *see*

*also O'Keefe v. Mercedes-Benz USA, LLC,* 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003) ("Federal

courts are increasingly weary of professional objectors: some of the objections were obviously

canned objections filed by professional objectors who seek out class actions to simply extract a

fee by lodging generic, unhelpful protests."). In addition to undermining the administration of

class action settlements, these baseless objections waste judicial time and energy that should be

spent on more productive matters.

The monetary relief in this settlement is a true common fund, comprised of $14,500,000

that will be distributed to pay (1) Settlement Class Member claims; (2) settlement administration

expenses of approximately $665,580.46; (3) incentive awards to the four named Plaintiffs in the

amount of $10,000 each, if court-approved; (4) attorneys' fees in the amount of $4,832,850,

which amounts to 33.33% of the settlement fund, if court-approved; and (5) costs in the amount

---

Isaacson/Weaver Family Trust to Proposed Attorneys' Fee Award, *In re Bioscrip, Inc. Sec. Litig.*, 1:13-cv-06922, Dkt. No. 113 (S.D.N.Y. May 23, 2016) (filed by Isaacson); Brief of Petitioner-Appellant, Objection to Proposed Settlement, *Chambers v. Whirlpool Corp.*, No. 8:11-cv-01733, Dkt. 227 (C.D. Cal May 27, 2016) (filed by Isaacson, Davis, and Nutley). In *Whirlpool Corp.*, Messrs. Isaacson, Nutley, and Davis filed an objection on Ms. Bowes' behalf. Ms. Bowes is the business partner of one of her attorneys, Mr. Davis. Supp. Keogh Decl., Exh. 3 (Kara Bowes Transcript) at 10:7 to 13:5.

of $110,732.71, if court-approved. Assuming the Court approves Class Counsel's requested fee, costs, and the incentive awards, and that administration costs do not exceed $665,580.46, $8,850,836.83 would remain to distribute among valid claimants. Each valid Settlement Class Member who filed a claim would receive approximately $232.[6] This amount is squarely within the upper range that Class Counsel estimated and that the Class Members were informed they would receive. Dkt. No. 252 at 18 ("Plaintiffs estimate that each claimant will receive between $142 and $285.").[7]

Without addressing all of the substantial risks involved in the litigation and potential years of delay, objector Kara Bowes complains that more money should have been obtained. *See* Dkt. No. 271. In her objection, Ms. Bowes wrongly assumed that Class Counsel's estimate was unreliable because the unrelated case of *Muransky v. Godiva* (in which Mr. Isaacson's objections were overruled) had an exceptional claim rate that had the effect of lowering the amount per class member. Yet Ms. Bowes also argued that even if the range was accurate, it was only around one percent of "Kara Bowes's $25,000 baseline of easily demonstrated TCPA claims." *Id*. at 13. Of course, it begs the question that if Ms. Bowes' TCPA claim, which is not fee shifting, is so easily demonstrated, why did she not opt out and pursue her claim individually?  Of course, if she did, she would have to pay her attorneys who have never litigated a TCPA claim, and pay substantial litigation costs, including an ATDS expert, where the result would be that she would either lose money or have very little to show for her effort. Instead, she submitted a claim form

---

[6] Assuming the Court allows late claims by valid Class Members, Class Counsel reached this estimate as follows: $8,850,836.83 ÷ 38,141 = $232.06.

[7] Plaintiff's estimate was based on a 5 to 10% claim rate with 5% being standard in consumer class actions such as the TCPA. In fact, many approved TCPA class settlements had much lower claim rates. *See* Memorandum in Support of Final Approval of Class Settlement.

and will receive a payment without having to incur any costs or burden in litigating her own claim.

Regardless, the determination of whether a settlement amount is reasonable does not involve the use of a "mathematical equation yielding a particularized sum." *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 483–84 (S.D.N.Y. 2009) (citation omitted). "[T]he dollar amount of the settlement by itself is not decisive in the fairness determination…." *In re Paine Webber Ltd. P'ships Litig.*, 171 F.R.D. 104, 131 (S.D.N.Y.1997). Courts often approve class settlements where the benefits represent less than the potential recovery. *See, e.g., In re Initial Public Offering Secs. Litig.*, 671 F. Supp. 2at 483–85 (approving settlement which provided only "miniscule" percentage of defendants' maximum possible liability, observing that "the Second Circuit has held that even a fraction of the potential recovery does not render a proposed settlement inadequate"); *Hall v. Children's Place Retail Stores, Inc.*, 669 F. Supp. 2d 399, 402 n. 30 (S.D.N.Y. 2009) (approving a settlement that amounted to 5–12 percent of provable damages); *In re Prudential Inc. Secs. Ltd. Partnerships Litig.*, MDL No. 1005, M–21–67, 1995 U.S. Dist. LEXIS 22103 (S.D.N.Y. Nov. 20, 1995) (approving settlement of between 1.6 percent and 5 percent of claimed damages); *In re Crazy Ed die Secs. Litig.*, 824 F.Supp. 320, 324 (E.D.N.Y. 1993) (approving settlement that awarded class members between six cents and ten cents for every $1.00 lost).

Although the TCPA allows for statutory damages of $500 to $1,500 per call, attempting to obtain anything approaching that amount for all Settlement Class Members through litigation would entail significant risk and delay.

First, Plaintiffs risked losing on the merits. AEO steadfastly denies liability for texts made by a third party text platform, and asserted that it should not be vicariously liable under

agency theories. *See* Dkt No. 162 (Order granting Experian's motion to dismiss Plaintiffs' allegations regarding direct and vicarious liability); *see Jackson v. Caribbean Cruise Line, Inc*., 88 F. Supp. 3d 129, 139 (E.D.N.Y. 2015) (granting motion to dismiss on issue of vicarious liability); *see Saragusa v. Countrywide*, No. CV 14-2717, 2016 WL 1059004, at *4 (E.D. La. Mar. 17, 2016) (dismissing complaint because plaintiff could not allege an ATDS was used.); *see also Cunningham v. Kondaur Capital*, No. 3:14-1574, 2014 WL 8335868, at *8 (M.D. Tenn. Nov. 19, 2014), r*eport and recommendation approved*, No. 3:14-CV-01574, 2015 WL 1412737 (M.D. Tenn. Mar. 26, 2015) (same). Moreover, If AEO were able to convince this Court, or a jury, that Plaintiffs' allegations were overstated or unfounded, recoverable damages would be reduced or eliminated altogether.

Second, Plaintiffs faced challenges at class certification. Courts are divided as to whether consent issues predominate over common questions in TCPA cases, depending on the circumstances of the case. *Compare, e.g., Vigus v. Southern Ill. Riverboat/Casino Cruises, Inc.,* 274 F.R.D. 229, 235 (S.D. Ill. 2011) (refusing to certify TCPA class where the "proposed class includes a substantial number of people who voluntarily gave their telephone numbers to the [defendant]"), *and Versteeg v. Bennett, Deloney & Noyes, P.C.,* 271 F.R.D. 668, 674 (D. Wyo. 2011) (declining to certify TCPA class in light of individualized inquiry "into whether each individual gave 'express consent' by providing their wireless number"), *with Green v. Service Master,* 2009 WL 1810769, at *2 (N.D. Ill. June 22, 2009) (in a fax blast case, "the question of consent may rightly be understood as a common question and the possibility that some class members may have consented is not sufficient to defeat class certification."), *and Agne v. Papa John's Int'l, Inc.,* 286 F.R.D. 559, 567 (W.D. Wash. 2012) ("Defendants' speculation that

customers may have given their express consent to receive text message advertising is not sufficient to defeat class certification.").

Third, and perhaps most importantly, even if Plaintiffs had prevailed at trial, they could have had difficulty collecting any judgment since, as Kara Bowes acknowledges, AEO faced exposure of between $300 and $900 million, assuming that each class member only received a single text (618,301 class members x $500 = $309,150,500; 618,301 class members x $1,500 = $927,451,500). Despite this very real concern, Kara Bowes argues that AEO should have paid a larger judgment, even though "the fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate." *In re Painewebber*, 171 F.R.D. at 129. She further makes the absurd suggestion that in the event that AEO declared bankruptcy, Settlement Class members, many of whom have no business experience, let alone interest in running a company like AEO, could simply become AEO's owners. *See* Dkt. No. 271 (Bowes' Objections) at 10.

Finally, even if Plaintiffs certified the class and won on the merits, one or more appeals would be guaranteed. Thus, any recovery would be jeopardized and delayed for years. *See West Virginia v. Chas. Pfizer & Co.,* 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), *aff'd,* 440 F.2d 1079 (2d Cir. 1971); *see also Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).

But the core of Ms. Bowes' objection seems to be her mistaken belief that she would receive less than $30 for her claim as noted above. Dkt. No. 271 at 13. In reality, Settlement Class members will receive approximately $232, an amount that is well in line with—and indeed exceeds—many other court-approved TCPA settlements and is the upper range of what Class

Members were informed they would receive. *See Manouchehri v. Styles for Less, Inc.,* Case No. 14cv2521 NLS, 2016 WL3387473, at *2, 5 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive $10 cash or $15 voucher); *Franklin v. Wells Fargo Bank, N.A*., Case No. 14cv2349-MMA (BGS), 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) (approving settlement where class members received $71.16); *Estrada v. iYogi, Inc.,* No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (preliminarily approving TCPA settlement where class members estimated to receive $40); *Cubbage v. Talbots, Inc.,* No. 09-cv-00911-BHS, Dkt. No. 114 (W.D. Wash. Nov. 5, 2012) (finally approving TCPA settlement where class members would receive $40 cash or $80 certificate); *Steinfeld v. Discover Fin. Servs.,* No. C 12-01118, Dkt. No. 96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98 each); *Adams v. AllianceOne Receivables Mgmt., Inc.,* No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40 each); *Desai v. ADT Sec. Servs., Inc.,* Case No. 1:11-cv-01925 (Dkt. No. 229) (N.D. Ill. Feb. 14, 2013) (estimating claimants would receive between $50 and $100); *Garret, et al. v. Sharps Compliance, Inc.,* Case No. 1:10-cv-04030 (Dkt. No. 65) (N.D. Ill. Feb. 23, 2012) (claimants received between $27.42 and $28.51); *see also In re Enhanced Recovery Co.*, 13-md-2398-RBD-GJK, Dkt. No. 123 (M.D. Fla. July 29, 2014) (only injunctive relief for class) and Dkt. No. 124 (settlement granted final approval); *Grant v. Capital Mgmt. Servs.*, No. 10-cv-2471, 2014 U.S. Dist. LEXIS 29836 at *10 (S.D. Cal. Mar. 5, 2014) (injunctive relief only – no monetary relief to the class).

As one court recently noted "[t]he essential point here is that the court should not reject a settlement solely because it does not provide a complete victory to plaintiffs, for the essence of settlement is compromise." *Gehrich v. Chase Bank USA, N.A.,* 12 C 5510, 2016 WL 806549, at *7 (N.D. Ill. Mar. 2, 2016) (approving $34 million TCPA settlement for class of more than 32

million individuals with a per-claimant recovery of $52.50) (*citing Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996)). Here, as in *Gehrich,* "[i]ndividual class members receive less than the maximum value of their TCPA claims, but they receive a payout without having suffered anything beyond a few unwanted calls or texts, they receive it (reasonably) quickly, and they receive it without the time, expense, and uncertainty of litigation. [AEO], for its part, buys peace and mitigates risk." *Id.*

**B.    The Objection to the Notice Should Be Overruled**

The adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 113–14 (2d Cir. 2005). Here, the notice program meets, if not exceeds, the reasonableness standard. The claims administrator provided direct notice to 561,161 Settlement Class members, meaning that approximately 90.76% of Settlement Class members received direct notice. Geraci Decl. ¶ 31. This is a terrific percentage[8]. The notice provided Settlement Class members with the following information: (1) the name of the case and a general description of the claim; (2) a description of the Settlement Class; (3) the total amount of the Settlement Fund; (4) the estimated amount of individual Settlement Class Member payments; (5) the requested attorneys' fees; (6) Settlement Class Members' rights to submit a claim, to opt out of the settlement, or to do nothing, and the consequences of exercising such rights; (7) the deadlines for taking such actions; (8) the final approval hearing date; and (9) where to get more

---

[8] This is an exceptionally high percentage of direct notice especially when the Federal Judicial Center considers 70%, which may include publication reasonable. See Federal Judicial Center, Judges' Class Notice and Claims Process Checklist and Plain Language Guide, at p. 3 (2010) (considering notice efforts reaching 70% of class to be reasonable).

information, including the URL for the settlement website and the number for the toll-free settlement hotline. Geraci Decl., Exhs. C and D.

Nonetheless, Kara Bowes asserts that notice was inadequate because it did not inform Settlement Class members of the amount of statutory damages available under the TCPA. Dkt. No. 271 at 20. Clearly, Ms. Bowes had no trouble calculating her purported statutory damages, but if she did, the class notice provided a toll free number for her to call both the class administrator and class counsel with any questions. *See* Geraci Decl., Exh. C ("QUESTIONS? VISIT www.AEOTCPASettlement.com OR CALL 1-888-284-3391 or Class Counsel at 1-866-726-1092").[9] Although Ms. Bowes never bothered calling, many other class members have contacted Class Counsel with questions. *See* Supp. Keogh Decl., Exh. 3 (Kara Bowes Transcript) at 39:21 to 40:11.

Moreover, "[t]here are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements." *Wal-Mart,* 396 F.3d at 113-14. Contrary to Kara Bowes' contention that notice must provide Settlement Class members with information regarding "what they are giving up," courts only require that notice of a settlement "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart,* 396 F.3d at 113-14. Here, the notice program complies with the court-approved plan, exceeds Rule 23 and Due Process, and fully apprised the class of all material terms and their rights. As such, Kara Bowes' objection is meritless.

---

[9] The settlement website also provided a copy of the complaint that provided: "As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiffs and members of the Spam Text Classes presumptively are entitled to an award of $500 in damages for each and every Spam Text in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B)." *See* https://www.aeotcpasettlement.com/Documents/Complaint.pdf  ¶87 (last visited July 18, 2017).

**C.    The Objection to the Requested Incentive Awards Should be Overruled**

Kara Bowes relies on two Supreme Court cases from the 1800's to argue against

incentive awards for the named Plaintiffs. But neither *Trustees v. Greenough,* 105 U.S. 527

(1881) nor *Cent. R.R. & Banking Co. v. Pettus,* 113 U.S. 116 (1885), holds that class

representatives are prohibited from receiving incentive awards as both pre-date Rule 23 by

decades. *Greenough* was an action to preserve a trust, and *Cen. R.R. & Banking* was a common

law bankruptcy proceeding. Greenough was concerned about the plaintiff recovering his

"personal expenses," but there is no such issue here. Moreover, the cases Kara Bowes relies upon

from the Second Circuit are readily distinguishable. *See Plummer v. Chem. Bank*, 91 F.R.D. 434,

441 (S.D.N.Y. 1981), *aff'd and remanded*, 668 F.2d 654 (2d Cir. 1982) (concluding that

incentive awards that comprised 13% of the fund was unfair); *Ortiz v. Chop't Creative Salad Co.

LLC*, 89 F. Supp. 3d 573, 582 (S.D.N.Y. 2015) (finding named plaintiffs failed to show they

contributed significantly to the prosecution of a case that spanned four months in which, *e.g.*,

they had never been deposed); *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435

(S.D.N.Y. 2007) (noting "other respected judges have viewed a willingness to come forward to

faithfully pursue a worthy claim with diligence and success as grounds for some level of

award").[10]

Each of the four Plaintiffs performed important services to the Settlement Class,

including responding to written discovery, sitting for depositions, and participating throughout

this litigation, the very bases courts in the Second Circuit have cited when approving incentive

awards. *See also In re Worldcom, Inc. ERISA Litig.*, No. 02 Civ. 4816, 2004 WL 2338151, at *11

(S.D.N.Y. Oct. 18, 2004) ("The named plaintiffs have performed an important service to the

---

[10] The remaining cases Ms. Bowes relies upon are out of the Sixth Circuit and are not binding on this Court.

class and the burden of this commitment deserves to be recognized..."); *Golden v. Shulman*, No. CV-85-3624, 1988 WL 144718, at *8 (E.D.N.Y. Sept. 30, 1988) ("In addition to the appointment as representative of a class, Golden... has been required to respond personally to the discovery requests of defendants, including document production... Through his shouldering of these responsibilities, Golden has benefitted all of the members of the class named [sic] plaintiffs may be rewarded for taking on extra responsibilities of this sort.").

The $10,000 award each, a small fraction of the settlement that will not materially reduce recovery for the class, is well within the range of reasonableness. *See Schwyhart v. AmSher Collection Servs.*, 2017 WL 1034201, *3 (N.D. Ala. Mar. 16, 2017) ($10,000 award from $970,000 settlement); *Gevaerts v. TD Bank, N.A.*, 2015 WL 6751061, *9 (S.D. Fla. Nov. 5, 2015) ($20,000 collective award), citing *Spicer v. Chi. Bd. of Options Exchange, Inc.*, 844 F.Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving incentive awards ranging from $5,000 to $100,000, and approving $10,000 for each plaintiff). For these reasons, Kara Bowes' objection should be overruled.

**D.  Objections to the Attorneys' Fees Should be Overruled**

Kara Bowes readily acknowledges that the trend in the Second Circuit is to apply the percentage of the fund method when awarding attorneys' fees, Dkt. No. 271 at 27, yet asks the Court to apply the lodestar method here despite the fact that TCPA is not a fee shifting statute. While "neither the lodestar nor the percentage-of-fund approach to awarding attorneys' fees in common fund cases is without problems," (*McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010)), the concerns Ms. Bowes cites do not apply here. Plaintiffs did not settle too early or too cheaply. On the contrary, Plaintiffs and AEO litigated this case in an adversarial manner for more than two years, in multiple jurisdictions, engaged in substantial motions practice, and discovery, including experts, and ultimately agreed on a non-reversionary settlement for the

Settlement Class that exceeds many other TCPA settlements as a result of formal mediation and subsequent negotiations. Dkt. No. 253 ¶¶ 27-35.

Ms. Bowes argues not only that the lodestar method should apply, but that the Court should adjust the lodestar amount downward, relying on distinguishable cases in which plaintiffs and class members received only nominal amounts and most were not even class actions. *See U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 413 (2d Cir. 1989) (reducing lodestar by twenty percent following a trial in which the jury awarded nominal damages of $1); *Baird v. Boies, Schiller & Flexner LLP*, 219 F. Supp. 2d 510, 523 (S.D.N.Y. 2002) (reducing statutory award of fees in civil rights case where plaintiffs who had "little hope of success on the merits" accepted Rule 68 offers of judgment four months into litigation); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515 (S.D.N.Y. 2009) (reducing the lodestar award where class relief involved "only one cent on each dollar lost"). Far from a fraction of their damages, here Plaintiffs secured a settlement that will provide each valid claimant with approximately $232 without shouldering any burden except to return a simple claim form.

Nonetheless, Ms. Bowes objects that the *Goldberger* factors do not support Plaintiffs' request for fees, arguing that the case is not complex and the risks of litigation are not high. Ms. Bowes' assertion is without merit. As set forth in detail in Plaintiffs' motion and memorandum for attorney fees, the requested fees and costs satisfy the *Goldberger* factors. *See* Dkt. 268. Class Counsel spent considerable time and effort reviewing hundreds of thousand pages of documents, and took numerous depositions in order to determine and understand the complicated data and computer issues in AEO's, Experian's and/or Archer's systems that made it possible for the allegedly unlawful texts to be sent, endeavors that required Plaintiffs to hire multiple database experts and bankruptcy counsel. Dkt. No. 253 ¶¶ 27-33. In essence, Ms. Bowes and her counsel

assume that TCPA actions are simple even though neither has ever litigated a TCPA claim. In

reality, TCPA claims deal with both complex factual and legal issues requiring database experts

and experts to opine on whether a system is an ATDS. If the litigation had not settled, Class

Counsel would have faced obstacles as AEO continued to mount a vigorous defense, including a

trial that would require substantial fact and expert testimony, and possible appeals relating to

AEO's liability for glitches and errors that AEO alleges are Experian's responsibility (a

contention Experian denies). Further, the fact that the Supreme Court has heard two TCPA cases

in the last five years supports the argument that these cases are complex and involve many

unsettled and novel legal issues. *See Mims v. Arrow Fin. Servs.*, LLC, 565 U.S. 368, 370, 132 S.

Ct. 740, 744 (2012) and *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 665 (2016).

**E.    Objections from Non-Class Members Should Be Overruled For Lack of Standing**

Rule 23 provides that "[a]ny class member may object" to the proposed settlement before

this Court. *See* Fed. R. Civ. P. 23(e)(5). This Court's Preliminary Approval Order limited

objections to "Persons in the Settlement Class." Dkt. No 259 at ¶13. Generally, objectors who

are non-class members lack standing to object to the settlement. *Stinson v. City of New York*, No.

10 CIV. 4228 (RWS), 2017 WL 2544831, at *6 (S.D.N.Y. June 12, 2017) (citing *In re Drexel*

*Burnham Lambert Grp., Inc.*, 130 B.R. 910, 923 & n.8 (S.D.N.Y. 1991)); *Cent. States Se. & Sw.*

*Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,* 504 F.3d 229, 244 (2d

Cir. 2007) ("Nonparties to a settlement generally do not have standing to object to a settlement

of a class action.") (citation omitted).

Neither Brooke Bowes nor Experian, both of whom lodged objections to the settlement,

are class members. Although Brooke Bowes received texts from AEO, she is not on the list of

the 618,301 Settlement Class members bound by the settlement. Geraci Decl. ¶ 28. Class

Counsel advised her attorneys that she was not on the list during a June 7th call with the Court,

and in their later June 9th letter. *See* Dkt. No. 278. Nonetheless, Brooke Bowes had not been

informed of this fact by the time of her June 14th deposition. *See* Supp. Keogh Decl., Exh. 4

(Brooke Bowes Transcript) at 18:23 to 19:19. Nor did Ms. Bowes understand that because she is

not a Settlement Class member, she is free to pursue her claims, if any. *Id*. at 19:20 to 20:14.

Experian does not claim to be a member of the Settlement Class, but instead argues that it

has the right to object as a third party defendant even though it agreed to a stay pending final

approval of this Settlement. On November 18, 2017, AEO filed a letter requesting the third party

action be stayed pending the approval process to allow it and Experian to continue to work out

resolution. Dkt. No. 242. Experian filed a letter agreeing that discovery "should remain stayed

through final approval of the proposed class settlement. Although unclear at this point, a number

of issues potentially could arise that may affect the vitality of a proposed class settlement of this

case under Rule 23, which should be sorted out before discovery in the third-party action is

reopened." Dkt. No. 243.

Experian's attempt to use its objection as leverage should be rejected, especially since

having received notice of both the motion for preliminary approval and the draft Preliminary

Approval Order that limited objections to "Persons in the Settlement Class" (Dkt. No. 259 at ¶

13), it failed to object to either.

Even if it had objected, Experian still would lack standing. While there is an exception to

the general rule that non-parties lack standing to object for non-settling parties who can

demonstrate they will sustain some formal legal prejudice as a result of the settlement, *Bhatia v.

Piedrahita*, 756 F.3d 211, 218 (2d Cir. 2014), Experian cannot make that demonstration here.

Formal legal prejudice exists in rare circumstances such as when a "settlement agreement

formally strips a non-settling party of a legal claim or cause of action, such as a cross-claim for

contribution or indemnification, invalidates a non-settling party's contract rights, or the right to present relevant evidence at a trial." *Bhatia*, 756 F.3d at 218-19 (rejecting non-settling defendant's claim that settlement agreement stripped it of a defense).

Here, Experian fails to argue that the settlement agreement invalidates its contract rights (if any), or the right to present relevant evidence at a later trial with AEO. Nor could it. The proposed settlement agreement explicitly states that "[n]o agreements, documents or statements made by or entered into by any Party in connection with the Settlement may be used by Plaintiffs, any person in the proposed Settlement Class, AEO or any other person to establish liability, any defense and/or any of the elements of class certification, whether in the Action or in any other proceeding." Dkt. No. 246-1 at 65; *see also Anwar v. Fairfield Greenwich Ltd.*, 133 F. Supp. 3d 560, 563 (S.D.N.Y. 2015) (holding non-settling defendant lacked standing to object to settlement, where the language "in no way prevents the Trustee from asserting the claims or defenses available to it."); *In re Platinum & Palladium Commodities Litig.*, No. 10CV3617, 2014 WL 3500655, at *6 (S.D.N.Y. July 15, 2014) (holding defendant "has not shown formal legal prejudice here and does not have standing to object.").

Experian is free to make any arguments it desires in subsequent litigation with AEO, pursuant to any applicable indemnification clause. The issues of whether Experian is liable or whether an ATDS was used are in no way impacted by this Settlement. In contrast, allowing Experian to inject their unmeritorious self-serving concerns here would frustrate the settlement process. *See* William B. Rubenstein, *Newberg on Class Actions* § 13:22 (5th ed. 2016); *see also Padro v. Astrue,* No. 11-CV-1788 CBA RLM, 2013 WL 5719076, at *8 (E.D.N.Y. Oct. 18, 2013) (citing *Gould v. Alleco*, 883 F.2d 281, 284 (4th Cir. 1989) (a rule that "routinely allow[ed]

non-class members to inject their concerns via objection at the settlement stage" would result in "eleventh hour expansion of class actions.")).

Experian fails to mention *Bhatia*, rather it argues that it has "the legal right" to challenge the settlement agreement under Rule 14(a)(2)(C) because it is defending itself against derivative claims as a third-party defendant. *See* Dkt. No. 237 at 11. However, neither *Bhatia*, nor the authority Experian relies upon, provide any support for this position.[11] For example, *Atl. Richfield Co. v. Interstate Oil Transp. Co.*, 784 F.2d 106, 112 (2d Cir. 1986), a case Experian cites for the proposition that it has the right to make its objections under Rule 14, does not once mention that rule. Far from holding that a non-settling defendant has the right to object to a class action settlement, *Richfield* addresses the issue of sufficient notice in the context of litigation between an indemnitee and indemnitor, which has no bearing on this Settlement. Similarly, Experian argues that *State Mut. Life Assur. Co. of Am. v. Arthur Andersen & Co.*, 581 F.2d 1045 (2d Cir. 1978) grants all third-party defendants have standing to object to proposed class action settlements, but the case says nothing of the sort. At best, it can be read to mean that a third-party defendant's derivative liability means it has a right to participate in a *trial* of plaintiffs' claims against a third-party plaintiff when the issues to be tried are identical to all parties. *Id.* at 1050. That is a far cry from blocking a class settlement that does not prejudice any of its claims or defenses.

---

[11] Moreover, interpreting Rule 14(a)(2)(C) to mean Experian has standing to object to the proposed class action settlement is especially inappropriate where, as here, Experian never filed an answer to AEO's third-party complaint, let alone included its "defenses" in this answer. *See M.V.M., Inc. v. St. Paul Fire & Marine Ins. Co.*, 20 F.R.D. 296, 297 (S.D.N.Y. 1957) ("[T]he third party defendant may assert a defense which may bar the plaintiff's recovery from the defendant. To 'assert' it, however, the third party defendant must answer the plaintiff's complaint.").

Because both Brooke Bowes and Experian lack standing to object to the proposed

settlement, the Court should reject their arguments altogether.[12]

## F.    Plaintiffs Have Article III Standing

This Court already ruled that Experian's motion to dismiss on the issue of standing is

moot, in light of the Settlement Agreement reached between Plaintiffs and AEO. Dkt. No. 239 at

2. Despite the Court's order, Experian reiterates its argument under the cloak of an "objection" to

the Settlement Agreement. As explained below, and as supported by the overwhelming weight of

authority, Plaintiffs have Article III standing to both pursue and settle their TCPA claims.

*Spokeo, Inc. v. Robins,* 136 S.Ct. 1540 (2016) ("*Spokeo*") did not change the Article III

standing requirements, but simply reiterated that a plaintiff bringing a claim based on a statutory

violation must allege a concrete and particularized injury. *Id.* at 1549. In doing so, the Supreme

Court confirmed that a "concrete" injury can be "tangible" or "intangible." *Id.* at 1549–50. "In

determining whether an intangible harm constitutes injury in fact, both history and the judgment

of Congress play important roles." *Id.* at 1549. Indeed, Congress has the power "to identify

intangible harms that meet minimum Article III requirements." *Id.* at 1549; *see also Mass. v.*

*EPA*, 549 U.S. 497, 516 (2007). If Congress identifies the injury it seeks to vindicate and relates

---

[12] Even if the Court were to consider Brooke Bowes' objections, they are identical to those made by Kara Bowes, which have been addressed here. The issues Experian raised regarding Article III standing are addressed *supra*. Experian's remaining arguments, all of which attack the definition of the Settlement Class, are meritless. All 618,301 Settlement Class members received texts, so there is no valid concern that the Settlement Class includes individuals who lack Article III standing. Likewise, Experian's argument that the Settlement Class is unascertainable is baseless. Unlike *Brecher v. Republic of Argentina,* 806 F.3d 22, 24 (2d Cir. 2015), in which it was impossible to determine who fell in or out of the class, the parties with the assistance of database experts, determined there were exactly 618,301 Settlement Class members. Plaintiffs cannot fathom how the Settlement Class could be *any more* ascertainable than the one here, defined by a set number of members. Nor is there any evidence to support Experian's speculative argument that some Settlement Class members may have received texts manually (rather than via ATDS). To the contrary, all data produced in this case proves that the texts at issue were sent *en masse*. Finally, to the extent that Experian argues the issue of consent complicates who should be part of the class, Experian's argument does nothing more than highlight one of the risks that makes this settlement appropriate.

the injury to the class of persons entitled to bring the suit, the plaintiff will be able to establish standing so long as she is part of that class of people. *Mass.*, 549 U.S. at 516.

Nuisance and invasion of privacy are the precise harms that Congress sought to prevent in enacting the TCPA. When Congress established the TCPA in 1991, it did so to protect consumers from the "nuisance, invasion of privacy, cost, and inconvenience that autodialed and prerecorded calls generate." *Rules & Regulations Implementing the Telephone Consumer Protection Act*, 30 F.C.C.R. 7961, 7979 (2015); *see also Mims*, 565 at 372 (stating Congress enacted the TCPA to protect consumers from the "proliferation of intrusive [telemarketing] calls to their homes."). The session law for the TCPA itself stated: "Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Bell v. Survey Sampling Int'l, LLC*, No. 3:15-CV-1666 (MPS), 2017 WL 1013294, at *3 (D. Conn. Mar. 15, 2017). Thus, by "directly forbid[ding] activities that by their nature infringe the privacy-related interests that Congress sought to protect by enacting the TCPA," *A.D. v. Credit One Bank, N.A.*, 2016 WL 4417077, at *6 (N.D. Ill. Aug. 19, 2016), the law "establishes a substantive right to be free from unwanted phone calls and texts." *Bell*, 2017 WL 1013294 at *4.

Courts in the Second Circuit and around the country have agreed, holding that these types of invasive calls—here, in the form of  unauthorized text messages—constitute a concrete injury-in-fact for purposes of Article III standing. *See Leyse v. Lifetime Entm't Servs., LLC*, No. 16-1133-CV, 2017 WL 659894, at *1 (2d Cir. Feb. 15, 2017) (holding receipt of two brief calls as voicemail messages was sufficient to confer standing); *see also Zani v. Rite Aid Headquarters*

*Corp.*, No. 14-CV-9701 (AJN), 2017 WL 1383969, at *7 (S.D.N.Y. Mar. 30, 2017) (finding

standing where one consumer received automated call to his cell phone); *Bell*, 2017 WL

1013294 at *3-4 (same); *Susinno v. Work Out World Inc.*, No. 16-3277, 2017 U.S. App. LEXIS

12253, at *11 (3d Cir. 2017) (finding Article III standing for single call TCPA claim); *Van*

*Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (holding that because

"[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and

disturb the solitude of their recipients," a "plaintiff alleging a violation under the TCPA 'need

not allege any *additional* harm beyond the one Congress has identified' " to establish Article III

standing) (emphasis in original); *Campbell-Ewald Co.,* 136 S. Ct. 663 at 679 (Roberts, J.,

dissenting) (Regarding TCPA claim "All agree that at the time Gomez filed suit, he had a

personal stake in the litigation. In his complaint, Gomez alleged that he suffered an injury in fact

when he received unauthorized text messages from Campbell.").[13]

---

[13] *See also Juarez v. Citibank, N.A.*, No. 16-CV-01984-WHO, 2016 WL 4547914, at *3 (N.D. Cal. Sept. 1, 2016) ("Even a single phone call can cause lost time and energy dealing with the unwanted phone calls."); *Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2016 WL 4439935, at *6 (N.D. Ill. Aug. 23, 2016) ("Congress enacted the TCPA to protect consumers from the annoyance, irritation, and unwanted nuisance of telemarketing phone calls, granting protection to consumers' identifiable concrete interests in preserving their rights to privacy and seclusion."); *Hewlett v. Consol. World Travel, Inc.*, No. CV 2:16-713 WBS AC, 2016 WL 4466536, at *2 (E.D. Cal. Aug. 23, 2016) ("Courts have consistently held that allegations of nuisance and invasion of privacy in TCPA actions are sufficient to state a concrete injury under Article III."); *A.D. v. Credit One Bank, N.A.*, No. 14 C 10106, 2016 WL 4417077, at *7 (N.D. Ill. Aug. 19, 2016) (Article III standing exists because "a consumer suffers a concrete though intangible injury when she is subjected to an autodialed non-emergency phone call without having given prior express consent."); *Krakauer v. Dish Network L.L.C.*, No. 1:14-CV-333, 2016 WL 4272367, at *2 (M.D.N.C. Aug. 5, 2016) ("While class members did not necessarily pick up or hear ringing every call at issue in this case, each call created, at a minimum, a risk of an invasion of a class member's privacy" for purposes of Article III standing); *2 v. Universal Acceptance Corp.,* No. CV 15-127 (RHK/FLN), 2016 WL 4132244, at *2 (D. Minn. Aug. 3, 2016) (finding Article III standing); *Cour v. Life360, Inc*., Case No. 16–805, 2016 WL 4039279, at *2 (N.D. Cal. July 28, 2016) (receipt of single unauthorized text message sufficient to create standing); *Caudill v. Wells Fargo Home Mtg., Inc*., Civ. No. 5:16–066, 2016 WL 3820195, at *2 (E.D. Ky. July 11, 2016) (noting that calls caused harms "such as the invasion of privacy [that] have traditionally been regarded as providing a basis for a lawsuit in the United States"); *Mey v. Got Warranty, Inc.*, No. 5:15-CV-101, 2016 WL 3645195, at *4 (N.D.W. Va. June 30, 2016) ("Even if invasion of privacy were not a harm recognized as redressable through a common law tort claim, it would meet the requirement of concreteness as interpreted by *Spokeo* because Congress so clearly identified it as a legally cognizable harm."); *Rogers v. Capital One Bank (USA), N.A.*, 190 F. Supp. 3d 1144, 1147 (N.D. Ga. 2016) (rejecting argument plaintiffs lacked standing under TCPA where they alleged "the Defendant made unwanted phone calls to their cell numbers"); *Booth v. Appstack, Inc.,* No. C13-1533JLR, 2016 WL 3030256, at *5 (W.D.

Likewise, here, Plaintiffs' and Settlement Class members' receipt of AEO's unlawful texts confers Article III standing.

### III.  CONCLUSION

None of the objections to the settlement warrant rejecting this class action settlement. Plaintiffs and Class Counsel respectfully submit that the settlement is an excellent outcome for a class that faced numerous risks had the case proceeded to class certification and trial. The settlement is well within the parameters for settlement approval in the Second Circuit and should be approved.

RESPECTFULLY SUBMITTED AND DATED this 21st day of July, 2017.

TERRELL MARSHALL LAW GROUP PLLC

By:  /s/ Adrienne D. McEntee, *Admitted Pro Hac Vice*
  Beth E. Terrell, *Admitted Pro Hac Vice*
  Email:  bterrell@terrellmarshall.com
  Mary B. Reiten, *Admitted Pro Hac Vice*
  Email:  mreiten@terrellmarshall.com
  Adrienne D. McEntee, *Admitted Pro Hac Vice*
  Email:  amcentee@terrellmarshall.com
  936 North 34th Street, Suite 300
  Seattle, Washington  98103-8869
  Telephone:  (206) 816-6603
  Facsimile:  (206) 319-54540

  Joseph A. Fitapelli
  Email: jfitapelli@fslawfirm.com
  Brian S. Schaffer
  Email:  bschaffer@fslawfirm.com
  Frank J. Mazzaferro
  Email:  fmazzaferro@fslawfirm.com
  FITAPELLI & SCHAFFER, LLP
  475 Park Avenue South, 12th Floor
  New York, New York 10016
  Telephone:  (212) 300-0375
  Facsimile:  (212) 481-1333

---

Wash. May 25, 2016) ("Here, the court is satisfied that Plaintiffs' allegations demonstrate "concrete injury" as elucidated in *Spokeo*.").

Scott D. Owens, *Admitted Pro Hac Vice*
Email:  scott@scottdowens.com
Patrick C. Crotty
Email:  pccrotty@gmail.com
SCOTT D. OWENS, P.A.
3800 S. Ocean Drive, Suite 235
Hollywood, Florida 33019
Telephone:  (954) 589-0588
Facsimile:  (954) 337-0666

Keith J. Keogh, *Admitted Pro Hac Vice*
Email:  keith@keoghlaw.com
Michael S. Hilicki, *Admitted Pro Hac Vice*
Email:  michael@keoghlaw.com
Michael Karnuth, *Admitted Pro Hac Vice*
Email:
KEOGH LAW, LTD.
55 West Monroe Street, Suite 3390
Chicago, Illinois 60603
Telephone:  (312) 726-1092
Facsimile:  (312) 726-1093

*Attorneys for Plaintiffs and the Putative Classes*

<u>CERTIFICATE OF SERVICE</u>

I, Adrienne D. McEntee, hereby certify that on July 21, 2017, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

such filing to the following:

>  Craig J. Mariam, *Admitted Pro Hac Vice*
>  Email:  cmariam@gordonrees.com
>  Kristie Morgan Simmerman, *Admitted Pro Hac Vice*
>  Email: ksimmerman@gordonrees.com
>  GORDON & REES LLP
>  633 West Fifth Street, Suite 5200
>  Los Angeles, California 90071
>  Telephone: (213) 576-5000
>  Facsimile:  (877) 306-0043
>
>  Richard T. Victoria, *Admitted Pro Hac Vice*
>  Email: rvictoria@gordonrees.com
>  GORDON & REES LLP
>  707 Grant St, Suite 3800
>  Pittsburgh, PA 15219
>  Phone: (412) 577-7400
>  Facsimile: (412) 347-5461
>
>  Eric Robert Thompson
>  GORDON & REES LLP
>  Email: ethompson@gordonrees.com
>  200 South Biscayne Boulevard, Suite 4300
>  Miami, Florida  33131
>  Telephone:  (305) 428-5300
>  Facsimile:  (877) 634-7245
>
>  *Attorneys for Defendants American Eagle Outfitters, Inc., and AEO Management Co.*
>
>  Christopher Martin Lomax
>  Email: clomax@jonesday.com
>  JONES DAY
>  600 Brickell Avenue, Suite 3300
>  Miami, Florida  33131
>  Telephone:  (305) 714-9719
>  Facsimile:  (305) 714-9799

John Alexander Vogt, *Admitted Pro Hac Vice*
Email: javogt@jonesday.com
Richard J. Grabowski, *Admitted Pro Hac Vice*
Email: rgrabowski@jonesday.com
Paul Bartholomew Green
Email: bartgreen@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, California  92612
Telephone:  (949) 851-3939
Facsimile:  (949) 553-7539

*Attorneys for Defendant Experian Marketing Solutions, Inc.*

Eric Alan Isaacson
Email: ericalanisaacson@icloud.com
LAW OFFICE OF ERIC ALAN ISAACSON
La Jolla, California 92037
Telephone: (858) 263-9581

C. Benjamin Nutley
Email: nutley@zenlaw.com
1055 East Colorado Blvd., 5th Floor
Pasadena, California 91106
Telephone: (626) 204-4060

*Attorneys for Class-Members/Objectors Kara M. Bowes and Brooke Bowes*

DATED this 21st day of July, 2017.

TERRELL MARSHALL LAW GROUP PLLC


By:  /s/ Adrienne D. McEntee, *Admitted Pro Hac Vice*
     Adrienne D. McEntee, *Admitted Pro Hac Vice*
     Email:  amcentee@terrellmarshall.com
     936 North 34th Street, Suite 300
     Seattle, Washington  98103-8869
     Telephone:  (206) 816-6603
     Facsimile:  (206) 319-5450

*Attorneys for Plaintiffs and the Putative Classes*