UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/8/2017
```

----------------------------------------------------------------X

CHRISTINA MELITO, CHRISTOPHER LEGG,  :
ALISON PIERCE and WALTER WOOD,       :
individually and on behalf of all others similarly  :
situated,                            :        14-CV-2440 (VEC)
                                     :
                  Plaintiff,         :        OPINION & ORDER
                                     :
         -against-                   :
                                     :
AMERICAN EAGLE OUTFITTERS, INC., and AEO :
MANAGEMENT CO.,                      :
                                     :
                  Defendants.        :
---------------------------------------------------------------- X
AMERICAN EAGLE OUTFITTERS, INC., and AEO :
MANAGEMENT CO.,                      :
                                     :
                  Third-Party Plaintiffs,  :
                                     :
         -against-                   :
                                     :
EXPERIAN MARKETING SOLUTIONS, INC.,  :
                                     :
                  Third-Party Defendant.:
----------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

        In October 2016, Plaintiffs and Defendants American Eagle Outfitters, Inc., and AEO

Management Co. (collectively, "AEO") reached a conditional settlement of this action.  Notice

of Conditional Settlement of Putative Claims, Dkt. 238.[1]  On January 24, 2017, this Court

conditionally certified a settlement class ("Settlement Class"), preliminarily approved the class

---

[1]        The third-party action between AEO and Experian Marketing Solutions, Inc. ("Experian") has not been settled.

1

action settlement ("Class Settlement"), approved the notice plan, and scheduled a final approval

hearing ("Final Approval Hearing") for August 22, 2017.  Preliminary Approval Order.[2]

The proposed monetary relief is a $14,500,000 common fund that will pay: (1)

Settlement Class Member claims; (2) settlement administration expenses of approximately

$665,580.46; (3) incentive awards to the four class representatives in the amount of $10,000

each; (4) attorneys' fees in the amount of $4,832,850 (33% of the settlement fund); and (5) costs

in the amount of $110,732.71.  Mem. 2.  Under this proposal, each valid settlement class member

who filed a claim would receive approximately $232.[3]

The Settlement Class is defined as follows:

> The 618,301 persons (identified in the disc attached to this Final
> Approval Order And Judgment as Exhibit B) who, on or after April
> 8, 2010 and through and including the date of entry of the
> Preliminary Approval Order, received a text message from AEO or
> any entity acting on its behalf, to his or her unique cellular

---

[2]     The Court uses the following abbreviations herein: Order (1) Conditionally Certifying a Settlement Class,
(2) Preliminarily Approving Class Action Settlement, (3) Approving Notice Plan and (4) Setting Final Approval
Hearing ("Preliminary Approval Order"), Dkt. 259; Memorandum of Points and Authorities in Support of Plaintiffs'
Motion for Final Approval of Class Action Settlement ("Mem."), Dkt. 293; Plaintiffs' Unopposed Amended Motion
for Preliminary Approval of Class Settlement, Conditional Certification of Class and Entry of Scheduling Order
("Prelim. Mem."), Dkt. 252; Declaration of Jay Geraci Regarding Notice Administration and Proof of CAFA
Compliance ("Geraci Decl."), Dkt. 294; Supplemental Declaration of Keith J. Keogh in Support of Plaintiffs'
Motion for Final Approval of Class Action Settlement ("Supp. Keogh Decl."), Dkt. 295; Experian Marketing
Solutions, Inc.'s Objections to the Proposed Class Action Settlement ("Exp. Obj."), Dkt. 273; Consolidated Third
Amended Class Action Complaint for Damages and Injunctive Relief ("Compl."), Dkt. 119; Declaration of Joseph
A. Fitapelli in Support of Service Awards, Attorneys' Fees, and Costs ("Fitapelli Decl."), Dkt. 163; Declaration of
Keith J. Keogh ("Keogh Decl."), Dkt. 264; Declaration of Beth E. Terrell in Support of Plaintiffs' Motion for
Service Awards, Attorneys' Fees, and Costs ("Terrell Decl."), Dkt. 266; Declaration of Bradley K. King ("King
Decl."), Dkt. 269; Declaration of Scott D. Owens ("Owens Decl."), Dkt. 316; Experian Marketing Solutions, Inc.'s
Reply Memorandum in Support of its Objections to the Proposed Class Action Settlement ("Exp. Reply"), Dkt. 299;
Amended Declaration of Beth E. Terrell in Support of Plaintiffs' Motion for Preliminary Approval of Class Action
Settlement ("Terrell Prelim. Decl."), Dkt. 253; Objection of Class Members Kara Bowes and Brooke Bowes to
Proposed Class-Action Settlement, Incentive Awards, and Attorneys' Fees ("Bowes Obj."), Dkt. 271; Memorandum
of Law in Support of Service Awards, Attorneys' Fees, and Costs ("Fees Mot."), Dkt. 268; Order Granting Final
Approval of Class Action Settlement, Dismissing Class Plaintiffs' Claims and Entering Final Judgment ("Final
Approval Order").

[3]     This amount is towards the high end of the range that Class Counsel estimated the Class Members would
receive.  *See* Prelim. Mem. 18 ("Plaintiffs estimate that each claimant will receive between $142 and $285.").  The
eventual award will be somewhat higher due to the Court-ordered reductions in the request for attorneys' fees,
expenses and incentive awards.

telephone number, and who did not provide AEO with appropriate consent under the TCPA.  Excluded from the Settlement Class are the Judge to whom the Action is assigned and any member of the Court's staff and immediate family, and all persons who are validly excluded from the Settlement Class.

Final Approval Order ¶ 2.

The parties engaged a third-party vendor to act as the Settlement Administrator in this case.  Geraci Decl. ¶ 1.  The Settlement Administrator compiled a list of Settlement Class members ("Class List") after reviewing records provided by AEO and directory searches conducted by third-party vendors.  Geraci Decl. ¶¶ 5-9.  The Settlement Administrator mailed a postcard summary notice and emailed notice to those class members for whom the Settlement Administrator had obtained a mailing or email address.  Geraci Decl. ¶¶ 10-18.[4]  The Settlement Administrator also provided additional information on a website regarding the Class Settlement.  Geraci Decl. ¶¶ 21-22.[5]

Ultimately, over one hundred thousand claim forms were submitted.  The Settlement Administrator identified 38,141 claim forms as valid claims by class members with phone numbers on the Class List.  Geraci Decl. ¶¶ 23-24.  Although 705 claims were filed after the deadline for receipt of claims, Geraci Decl. ¶ 24, Class Counsel requests that these late-filed claims also be allowed, Supp. Keogh Decl. ¶ 8.  The Court grants that request.

Nine Class Members asked to be excluded from the Settlement Class.  Geraci Decl. ¶ 25.  Class Counsel received timely objections from: Kara and Brooke Bowes (Dkt. 271), Patrick Sweeney and Kerry Ann Sweeney (Dkt. 275), and Third-Party Defendant Experian (Dkt. 273).

---

[4]     For some addresses, the Settlement Administrator received returned notices with undeliverable addresses. The Settlement Administrator performed additional searches for the addresses and re-sent the notices if it located updated addresses.  Geraci Decl. ¶¶ 12, 14.

[5]     The Court refers to the postcard notice, email notice, and the website notice, collectively, as the "Class Notice."

On August 18, 2017—approximately three months after the deadline to submit objections, Preliminary Approval Order ¶ 26—the Court received via email an objection from Kristian Mierzwicki (Dkt. 306), who purports to be a class member. The Sweeney objections were ultimately withdrawn, Supp. Keogh Decl., Ex. 1, and the Experian, Bowes, and Mierzwicki objections are overruled for the reasons discussed *infra*.

I.   **Experian's Objections**

Experian's primary objection to the Class Settlement is that Plaintiffs lack Article III standing, and therefore, the Court lacks subject matter jurisdiction over the Class Settlement and this case. Although the Court finds, *infra*, that Experian, as a non-party to the Class Settlement, lacks standing to object to the Class Settlement, the Court will consider Experian's objection because the Court must always satisfy itself of its subject matter jurisdiction.  The Court concludes that Plaintiffs have Article III standing and that the Court has subject matter jurisdiction to enter the Class Settlement.

A.   *Article III Standing*

To establish Article III standing, the "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  The plaintiff must show that the injury is both "particularized" and "concrete." *Id*.

A "particularized" injury is one that "affect[s] the plaintiff in a personal and individual way." *Id.*
A "concrete" injury is one that "actually exist[s]," i.e., it is "'real,' and not 'abstract.'" *Id.*

An injury need not be tangible for it to be concrete. *Id.* at 1549. *Spokeo* set forth two
"general principles" to determine whether an intangible harm is a concrete injury. *Id.* at 1550.
First, "it is instructive to consider whether an alleged intangible harm has a close relationship to
a harm that has traditionally been regarded as providing a basis for a lawsuit in English or
American courts." *Id.* Second, Congress's "judgment is also instructive and important" because
"Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries
that were previously inadequate in law.'" *Id.* (quoting *Lujan*, 504 U.S. at 578).

In *Spokeo*, the plaintiff alleged that the defendant Spokeo, a people search engine,
published incorrect information about the plaintiff. *Id.* at 1546. The plaintiff brought suit under
the Fair Credit Reporting Act of 1970 ("FCRA"), which "requires consumer reporting agencies
to 'follow reasonable procedures to assure maximum possible accuracy' of consumer reports,"
*id.* at 1545 (quoting 15 U.S.C. § 1681e(b)), and authorizes private suits for willful failure to
comply with any requirement of the FCRA. *Id.* The Ninth Circuit found that the plaintiff had
standing based on the alleged violation of the plaintiff's statutory rights under the FCRA. *Id.* at
1546. The Supreme Court vacated the Ninth Circuit's decision because the Ninth Circuit had
considered whether the plaintiff's injury was particularized but not whether it was concrete. *Id.*
at 1548, 1550.[6]

The Supreme Court was careful to note that, in some circumstances, the violation of a
procedural right granted by a statute, by itself, may be sufficient to constitute an injury in fact.

---

[6]     The Ninth Circuit's analysis was that the plaintiff alleged "that Spokeo violated *his* statutory rights, not just
the statutory rights of other people," and the plaintiff's "personal interests in the handling of his credit information
are *individualized rather than collective*." *Id.* at 1548. The Supreme Court concluded that these two observations
"concern particularization, not concreteness." *Id.*

*Id*. at 1549 ("a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified").  But in all circumstances, and even in the context of a statutory violation, "Article III standing requires a concrete injury."  *Id*.  Where the plaintiff alleges only "a bare procedural violation" of the statute that is "divorced from any harm," the plaintiff has not alleged a concrete injury sufficient to establish standing.  *Id*.  This is because "[a] violation of one of the FCRA's procedural requirements may result in no harm"; for example, "[i]t is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm."  *Id*. at 1550 (footnote omitted).

In *Strubel v. Comenity Bank*, 842 F.3d 181 (2d Cir. 2016), the Second Circuit held that *Spokeo* did not "categorically . . . preclude[] violations of statutorily mandated procedures from qualifying as concrete injuries supporting standing" and that "some violations of statutorily mandated procedures may entail the concrete injury necessary for standing."  842 F.3d at 189. The Second Circuit elaborated, "[W]here Congress confers a procedural right in order to protect a concrete interest, a violation of the procedure may demonstrate a sufficient 'risk of real harm' to the underlying interest to establish concrete injury without 'need [to] allege any *additional* harm beyond the one Congress has identified.'"  *Id*. (quoting *Spokeo*, 136 S. Ct. at 1549).  In considering whether a bare procedural violation is sufficient to constitute a concrete injury, the "central inquiry" is whether the "alleged bare procedural violation [of a statute] . . . presents a material risk of harm to the underlying concrete interest Congress sought to protect in passing" the statute.  *Crupar-Weinmann v. Paris Baguette Am., Inc.*, 861 F.3d 76, 81 (2d Cir. 2017).  It follows that if a bare procedural violation can cause concrete injury, then a violation of substantive rights created by Congress must surely cause a concrete injury.

### B. "Concrete" Injuries Under the TCPA

In the context of the TCPA, the Second Circuit has held, post-*Spokeo*, that the plaintiff's receipt of "a prerecorded voicemail message, to which [the plaintiff] later listened, on an answering device in the place where [the plaintiff] resided and to which he had legitimate access" was a concrete injury sufficient for Article III standing. *Leyse v. Lifetime Entertainment Services, LLC*, 679 F. App'x 44, 46 (2017). The Second Circuit explicitly did not decide whether "the alleged violation of [the TCPA] would, by itself, be sufficient to establish injury in fact." *Id*.[7] But because "the TCPA protects consumers from certain telephonic contacts," the plaintiff's "receipt of such an alleged contact in the way described demonstrates more than a bare violation and satisfies the concrete-injury requirement for standing." *Id*.

Several district courts have considered cases similar to this one and have found, post-*Spokeo*, that the plaintiff has standing. In *Zani v. Rite Aid Headquarters Corp.*, 14-cv-9701, -- F. Supp. 3d ---, 2017 WL 1383969, (S.D.N.Y. Mar. 30, 2017), Judge Nathan concluded that the plaintiff's receipt of one, prerecorded phone call was sufficient to establish Article III standing. 2017 WL 1383969, at *7 (following *Leyse*). A Connecticut district court similarly concluded that "[a]nswering a single robocall," even though the plaintiff did not incur any financial charge for that call, was "the type of concrete injury-in-fact" sufficient to establish Article III standing. *Bell v. Survey Sampling Int'l, LLC*, No. 3:15-CV-1666 (MPS), 2017 WL 1013294, at *3 (D. Conn. Mar. 15, 2017) (collecting cases). In *Mejia v. Time Warner Cable, Inc.*, 15-CV-6445 (JPO), 15-CV-6518 (JPO), 2017 WL 3278926 (S.D.N.Y. Aug. 1, 2017), Judge Oetken concluded that the plaintiffs' testimony that Time Warner's calls disrupted their privacy established

---

[7]      Although *Leyse* did not explicitly address or cite *Spokeo*, *Leyse* was decided after *Spokeo*, and *Leyse*'s caveat that it was not deciding whether the bare statutory violation would establish injury in fact clearly invokes *Spokeo*'s instruction that a statutory violation must result in a concrete injury to establish Article III standing.

concrete injury because the plaintiffs alleged "precisely the sort of injury that the TCPA was designed to target."  2017 WL 3278926, at *7.[8]

Similar decisions have been reached by courts of appeals post-*Spokeo*.  In *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037 (9th Cir. 2017), the Ninth Circuit held that the plaintiff's receipt of unwanted text messages from a gym was sufficient to establish standing because "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients."  847 F.3d at 1043.  *Van Patten* concluded that the unwanted text messages established a concrete injury because it was the very harm prohibited by the TCPA: "Unlike in *Spokeo*, where a violation of a procedural requirement minimizing reporting inaccuracy may not cause actual harm or present any material risk of harm, the telemarketing text messages at issue here, absent consent, present the precise harm and infringe the same privacy interests Congress sought to protect in enacting the TCPA."  *Id*. Therefore, "[a] plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'"  *Id*. (quoting *Spokeo*, 136 S. Ct. at 1549); *see also Susinno v. Work Out World, Inc.*, 862 F.3d 346, 351-52 (3rd Cir. 2017) (receipt of a single prerecorded telephone call was "the very harm that Congress sought to prevent" in the TCPA and was thereby "a concrete, albeit intangible, harm").

### C.  Experian Contends That Plaintiffs Have Not Alleged A Concrete Injury.

Experian does not dispute that a violation of the TCPA could, hypothetically, give rise to a concrete injury sufficient to establish standing.  Experian argues that Plaintiffs, by alleging only a violation of the TCPA, have not satisfied their burden of showing Article III standing.

---

[8]       The case for standing was stronger in *Mejia* because, here, Plaintiffs do not allege that AEO's text messages disrupted their privacy; rather, Plaintiffs allege only that they received text messages in violation of the TCPA.  Nevertheless, Judge Oetken's reasoning—that Plaintiffs established standing because they alleged the type of injury targeted by Congress—applies to this case for the reasons discussed *infra*.

For the following reasons, the Court disagrees and concludes that Plaintiffs have shown that they suffered concrete injury by alleging that they received unauthorized text messages in violation of the TCPA.

The plaintiff bears the burden of establishing that he has Article III standing.  *Spokeo*, 136 S. Ct. at 1547; *see also Warth v. Seldin*, 422 U.S. 490, 518 (1975).  "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Spokeo*, 136 S. Ct. at 1547 (internal quotation marks and citation omitted).  Because jurisdiction must be affirmatively demonstrated, inferences are not drawn in favor of the plaintiff, *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), and conclusory allegations "are insufficient to meet the plaintiff's burden of alleging an injury in fact that is concrete and particularized," *Brown v. F.B.I.*, 793 F. Supp. 2d 368, 374 (D.D.C. 2011) (citation omitted).

Here, Plaintiffs allege that they received unwanted and unauthorized text messages from AEO on their cell phones, Compl. ¶¶ 45, 49-50, 54-57, 60-62, 67-69, 73, 81-82, and that these text messages were sent in violation of the TCPA, Compl. ¶¶ 96, 100-101, 105-106, 110-11. Plaintiffs do not, as Experian points out, allege that the text messages infringed their privacy or constituted a trespass of their cell phones, or otherwise allege any facts relative to injury other than the ones set forth above.

Experian argues that alleging only that Defendants violated the TCPA does not satisfy Plaintiff's burden to establish injury in fact and that Plaintiffs must allege further facts that "create a link between th[e] statutory violation and a 'concrete harm.'"  Exp. Obj. 5.  A Louisiana district court agrees.  In *Sartin v. EKF Diagnostics, Inc.*, No. 16-1816, 2016 WL 3598297 (E.D. La. July 5, 2016), the court held that the plaintiff lacked standing because he failed to allege facts "demonstrating how th[e] statutory violation [of the TCPA] caused him

concrete harm."  2016 WL 3598297, at *3.  The complaint's "only reference to any kind of injury" was a single sentence stating that the TCPA violation caused the plaintiff to suffer actual and statutory damages.  *Id.*  This allegation, in that court's view, did not establish a concrete injury; the complaint did "not explain what factual harm . . . lawmakers 'contemplated' when enacting the TCPA."  *Id.*[9]

This Court respectfully disagrees with *Sartin*.  *Spokeo* made clear that alleging only a statutory violation, without "alleg[ing] any *additional* harm *beyond* the one Congress has identified," *Spokeo*, 136 S. Ct. at 1549 (second emphasis added), could be sufficient to establish a concrete injury.  Plaintiffs' receipt of unwanted and unauthorized telephone contact by an automated system is precisely the harm that Congress was trying to avoid when it enacted the TCPA.  As such, Plaintiffs' concrete injury is the invasion of the right created by the statute; their receipt of the telephone contact "presents a material risk of harm to the underlying concrete interest Congress sought to protect in passing" the TCPA.  *Crupar-Weinmann*, 861 F.3d at 81. Plaintiffs need not allege any more than that.  *Van Patten*, 847 F.3d at 1043; *Susinno*, 826 F.3d at 351-52.  As explained in *A.D. v. Credit One Bank, N.A.*, No. 14 C 10106, 2016 WL 4417077 (N.D. Ill. Aug. 19, 2016), in enacting the TCPA, Congress determined that "unsolicited

---

[9]     Judge Failla followed *Sartin* in *Fullwood v. Wolfgang's Steakhouse, Inc.*, 13 Civ. 7174 (KPF), 2017 WL 377931 (S.D.N.Y. Jan. 26, 2017), which alleged claims under the Fair and Accurate Credit Transactions Act of 2003 ("FACTA").  Judge Failla concluded that the complaint—which, relative to injury, alleged only that the plaintiff received a receipt that had her credit card's expiration date on it, in violation of FACTA—did not "clearly allege facts demonstrating a concrete and particularized injury to support standing."  *Id.* at *6 (citing *Sartin*).

        *Fullwood* is distinguishable because the claim in *Fullwood* is more akin to the hypothetical violation of FCRA discussed in *Spokeo*.  Including an erroneous zip code in a credit report, *Spokeo*, 136 S. Ct. at 1550, may violate the procedural requirements of FCRA, but it does not constitute concrete harm.  Similarly, including a credit card expiration date on a credit card receipt may violate FACTA rules, but it does not, standing alone, constitute concrete injury.  The Second Circuit has concluded similarly.  *Crupar-Weinmann*, 861 F.3d at 78 ("Guided by unambiguous statutory language that a receipt with a credit card expiration date does not raise a material risk of identity theft, and finding that the bare procedural violation alleged by the plaintiff does not present a material risk of harm, we conclude that allegations in her amended complaint [that customer receipts displayed the credit card's expiration date] do not satisfy the injury-in-fact requirement necessary to establish Article III standing to bring suit.").

telephone contact constitutes an intangible, concrete harm."  2016 WL 4417077, at *7.  That

court concluded, "It would be redundant to require a plaintiff to allege that her privacy and

solitude were breached by a defendant's violation of [the TCPA], because Congress has provided

legislatively that a violation of [the TCPA] is an invasion of the call recipient's privacy."  *Id.*; *see*

*also Aranda v. Caribbean Cruise Line, Inc.*, 202 F. Supp. 3d 850, 857-58 (N.D. Ill. 2016)

(same).  Because Plaintiffs' receipt of unwanted and unauthorized text messages is the violation

of a substantive right created by Congress, the allegation of the statutory violation sufficiently

demonstrates Plaintiffs' concrete injury.

Experian argues that by alleging only the statutory violation, without any attendant harm,

Plaintiffs have alleged only a "bare procedural violation" insufficient to establish concrete injury

under *Spokeo*.  Experian's theory is that because the TCPA prohibits the use of an "Automatic

Telephone Dialing System" ("ATDS") to make unconsented calls or text messages,[10] the TCPA

"imposes only a *procedural limit* on how one may place or send such calls or texts."  Exp. Obj.

5.  According to Experian, using an ATDS (in violation of the TCPA) is like disseminating an

incorrect zip code (in violation of the FCRA); if *Spokeo* concluded that the latter was a bare

procedural violation that does not establish concrete injury, then using an ATDS to send texts

without the consent of the recipient is also a bare procedural violation that does not establish

concrete injury.

The Court disagrees.  *Spokeo* explained that Congress's judgment plays an "important

role[]" in determining whether an intangible injury is one that is concrete.  *Spokeo*, 136 S. Ct. at

1549.  In enacting the TCPA, Congress made findings that "[u]nrestricted telemarketing . . . can

---

[10]     The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).

be an intrusive invasion of privacy" and that "[b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion."  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, §§ 5, 12, 105 Stat. 2394 (1991).  "Congress enacted the TCPA to protect consumers from '[u]nrestricted telemarketing,' which it determined could be "an intrusive invasion of privacy.'"  *Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51, 55 (2d Cir. 2017), *as amended* (Aug. 21, 2017) (quoting *Mims v. Arrow Financial Services, LLC*, 565 U.S. 368, 372 (2012)).  In short, the unconsented telephone contact was the substantive harm that Congress identified and sought to prevent by enacting the TCPA.

The fact that this case involves text messages, rather than phone calls, does not make the substantive harm any less concrete.  The Supreme Court has concluded that a "text message to a cellular phone . . . qualifies as a 'call'" under the TCPA, *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667, *as revised* (Feb. 9, 2016), and this Court finds no basis to conclude that the harm created by using an ATDS to place a text message is different from the harm created by using an ATDS to place a telephone call.  Both invade the substantive right created by Congress not to be subjected to robocalls.  Unconsented texts, made via an ATDS, are also unwanted intrusions of privacy that are prohibited under the TCPA.  Although there may be a difference in the degree of annoyance caused by an unauthorized text relative to an unauthorized telephone call, there is no difference in kind.

Experian's argument elides *Spokeo*'s "bare procedural violation" with the substantive harm caused by using a system prohibited by the statute.  In *Spokeo*, the plaintiff alleged that the reporting agency violated the FCRA's requirement to "follow reasonable procedures" to ensure

12

the accuracy of consumer reports.  *Spokeo*, 136 S. Ct. at 1545-46.  According to the Supreme

Court, a violation of certain of those procedural requirements (such as disseminating an incorrect

zip code) might result in no harm to the plaintiff and would be, therefore, a "bare procedural

violation" of the FCRA insufficient to establish concrete injury.  *Id*. at 1550.  Here, the

defendant's use of an ATDS to place unauthorized texts causes a concrete harm to the plaintiff,

made legally cognizable by Congress in the TCPA.  An ATDS may, as a matter of fact, be a

procedural mechanism for placing calls or texts, but using an ATDS to place unauthorized calls

is not a procedural violation of the TCPA; to the contrary, using an ATDS to place unauthorized

texts is the substantive conduct prohibited by Congress.  For that reason, using an ATDS is

different from disseminating an incorrect zip code.  Though the latter may violate the letter of the

FCRA, standing alone, it causes no injury; on the other hand, the former causes exactly the harm

to the Plaintiffs that Congress legislated to prevent.

       In any event, *Leyse* controls the outcome in this case.  The Second Circuit in *Leyse*

concluded that the plaintiff's receipt of an unconsented to voicemail message was sufficient to

establish a concrete injury.  If an unauthorized voicemail is concrete injury, then this Court fails

to see how unauthorized text messages are not also concrete injury.[11]  Therefore, this Court

concludes—as *Leyse*, *Zani*, and *Bell* did in similar circumstances—that Plaintiffs have

adequately alleged injury in fact sufficient to establish Article III standing.

---

[11]     Although *Leyse* was decided at the summary judgment and class certification stage, the Court notes that the allegations in the complaint in *Leyse* are comparable to those alleged here.  The *Leyse* plaintiff alleged only that the defendant "placed, to Leyse's residential telephone line, a telephone call using an artificial or prerecorded voice that advertised" defendant's services, and that the defendant placed those calls without the plaintiff's consent.  Class-Action Complaint ¶¶ 7, 9, ECF 1, *Leyse v. Lifetime Entm't Servs., LLC*, 1:13-cv-05794-AKH (S.D.N.Y. filed Aug. 16, 2013).  Put differently, the plaintiff alleged only the statutory violation, without pleading allegations of further harm.

II.     **The Court Certifies the Class Action**

In certifying a class action for settlement, the Court must ensure that the requirements of

Rule 23(a) and (b) of the Federal Rules of Civil Procedure have been met.  *Denney v. Deutsche*

*Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006).  "These requirements should not be watered down

by virtue of the fact that the settlement is fair or equitable."  *Id.*  Only Experian objects to class

certification; the Court overrules Experian's objections for the reasons discussed *infra*.[12]

   *A.  Rule 23(a) is Satisfied.*

Rule 23(a) sets forth prerequisites to maintaining a suit as a class action.  Pursuant to

Rule 23(a), a class action may be certified only if: "(1) the class is so numerous that joinder of all

members is impracticable; (2) there are questions of law or fact common to the class; (3) the

claims or defenses of the representative parties are typical of the claims or defenses of the class;

and (4) the representative parties will fairly and adequately protect the interests of the class."

Fed. R. Civ. P. 23(a).

The Court finds that the Settlement Class satisfies the requirements of Rule 23(a).

Because there are 618,301 individual members in the settlement class, the numerosity

requirement is satisfied.  *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.

1995) (numerosity requirement satisfied with class of at least 40 members).

Rule 23(a)(2) requires commonality.  The class members must have a "common

contention" that is "of such a nature that it is capable of classwide resolution—which means that

determination of its truth or falsity will resolve an issue that is central to the validity of each one

of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  "[E]ven

a single common question will do."  *Id.* at 359.  This case raises numerous questions of law and

---

[12]     Although Kara Bowes, Brooke Bowes, and Kristian Mierzwicki object to the fairness of the Class
Settlement, discussed *infra*, they do not make any arguments relative to class certification pursuant to Rule 23.

fact common to the class, including the issue of whether AEO is vicariously liable for text messages that were sent on its behalf and whether the system by which the texts were sent is an ATDS; accordingly, the commonality requirement is satisfied.

The Court also finds that the typicality requirement is satisfied because the claims and defenses of the class representatives are typical of those of the Settlement Class; all claims arise from the same events (their receipt of AEO text messages on their cell phones) and are based on the same legal theory (liability under the TCPA). *See In re Smith Barney Transfer Agent Litig.*, 290 F.R.D. 42, 45 (S.D.N.Y. 2013) ("To establish typicality under Rule 23(a)(3), the party seeking certification must show that each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."). Where, as here, "same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented," the typicality requirement is satisfied. *Id*.

Lastly, to find adequacy, the Court must consider "(i) whether the class representatives' claims conflict with those of the class and (ii) whether class counsel is qualified, experienced, and generally able to conduct the litigation." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004). Both of those considerations are met here. The class representatives' interests are aligned with the interests of the Settlement Class: all seek recovery under the TCPA for receipt of unwanted text messages from AEO. In addition, Class Counsel are attorneys experienced in class action (including TCPA) litigation. *See* Terrell Decl. ¶¶ 17-25; Keogh Decl. ¶¶ 11-12, 18-29; Fitapelli Decl. ¶ 5; Owens Decl. ¶¶ 1, 20-23.

For the foregoing reasons, the Court concludes that the Settlement Class meets the requirements of Rule 23(a).

### B. *The Settlement Class Satisfies Rule 23(b)(3).*

In addition to satisfying Rule 23(a), a class action must fall within one of the types of class actions identified in Rule 23(b). Plaintiffs contend that certification of this Settlement Class is appropriate under Rule 23(b)(3), which requires that "the court find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Rule 23(b)(3)'s predominance requirement "is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016) (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010)). The central issues in this case are whether the text messages were sent using an ATDS and, if so, whether AEO is liable for those text messages; as such, common questions predominate over individual questions.[13]

In considering whether Rule 23(b)(3)'s superiority requirement has been met, courts may consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun

---

[13] "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized class-wide proof.'" *In re Petrobras Sec.*, 862 F.3d 250, 270 (2d Cir. 2017) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)).

If Class Counsel had not settled this case, then at the class certification stage, individualized issues of whether a putative class member had consented to or revoked his or her consent to text messages may have precluded a finding of predominance. But here, because the definition of the Settlement Class is limited to those individuals "who did not provide AEO with appropriate consent under the TCPA," no such individualized issues of consent exist.

> by or against class members; (C) the desirability or undesirability
> of concentrating the litigation of the claims in the particular forum;
> and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  In general, "Rule 23(b)(3) class actions can be superior precisely because they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery."  *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013).  Where "substituting a single class action for numerous trials in a matter involving substantial common legal issues and factual issues susceptible to generalized proof will achieve significant economies of time, effort and expense, and promote uniformity of decision," the class action is a superior method of adjudicating disputes.  *Id.* (citing Fed. R. Civ. P. 23 advisory committee's notes).  The statutory damages available under the TCPA (up to $500 per violation or up to $1,500 if the violation is willful, *see* 47 U.S.C. § 227(b)(3)) are small in comparison to the time, effort and expense of litigation.  In addition, the resolution of all TCPA claims held by the Settlement Class in a single class action proceeding promotes judicial efficiency and the uniformity of decision.  Therefore, the Court finds that a class action is a superior method for the fair and efficient adjudication of this case.

### C. *Experian's Objections to Class Certification Are Unavailing*.

In addition to its objection that Plaintiffs lack standing, Experian also asserts various objections, most of which fall away based on the Court's ruling that Plaintiffs do have standing. *See* Final Approval Hearing Transcript ("Tr.") 16:15-19.[14]

Experian propounds two objections that are not mooted by the Court's rejection of its standing objection: the Settlement Class is unascertainable, Exp. Obj. 13; and the class definition

---

[14]     For example, Experian argues that the class definition "impermissibly sweeps in individuals" without standing, Exp. Obj. 9, and that any attempt to narrow the class definition to those who have standing would destroy predominance, Exp. Obj. 13.  Because the Court has concluded that Plaintiffs have standing, these objections are dismissed as moot.

improperly includes members who did not receive a text message via an ATDS, Exp. Obj. 17.
The Court is not convinced that Experian has standing to raise these objections, but even if it
does, its objections are without merit.

### 1. Experian's Standing to Object

"[A] non-settling defendant generally lacks standing to object to a court order approving
a partial settlement because a non-settling defendant is ordinarily not affected by such a
settlement." *Bhatia v. Piedrahita*, 756 F.3d 211, 218 (2d Cir. 2014).  The exception to that
general rule is that a non-settling defendant does have standing to object if it can demonstrate
that it will sustain "some formal legal prejudice as a result of the settlement."  *Id.*  The requisite
"level of formal legal prejudice" necessary for a non-settling defendant to have standing to object
"exists only in those rare circumstances when, for example, the settlement agreement *formally*
strips a non-settling party of a legal claim or a cause of action, such as a cross-claim for
contribution or indemnification, invalidates a non-settling party's contract rights, or the right to
present relevant evidence at a trial."  *Id.*  In general, "a settlement which does not prevent the
later assertion of a non-settling party's claims (although it may spawn additional litigation to
vindicate such claims), does not cause the non-settling party 'formal' legal prejudice."  *Id.* at
219.

Experian argues that *Bhatia* is inapplicable because that case concerned non-settling co-
defendants, rather than a non-settling third-party defendant like Experian.  As a third-party
defendant, Experian argues that it "fac[es] wholly derivative claims of the settling defendant /
third party plaintiff," Exp. Reply 3, and may "participate fully in the case" by asserting any of
the defenses and procedural rights available to the settling defendant, AEO, Exp. Reply 2
(quotation marks omitted).

Experian, however, does not cite any persuasive (let alone precedential) cases suggesting

that the *Bhatia* rule does not apply to third-party defendants.  In none of the cases cited by

Experian, including the cases from this Circuit, did the court address whether a third-party

defendant had standing to object to the settlement.  *See, e.g.*, *Villanueva v. Wells Fargo Bank,*

*N.A.*, 13-CV-5429, 2016 WL 7899255 (S.D.N.Y. Nov. 22, 2016); *see also Atlantic Ritchfield Co.*

*v. Interstate Oil Transport Co.*, 784 F.2d 106 (2d Cir. 1986); *State Mut. Life Assurance Co. of*

*Am. v. Arthur Anderson & Co.*, 581 F.2d 1045 (2d Cir. 1978).

Experian further argues that even if *Bhatia* were applicable, Experian sustained formal

legal prejudice because Experian's objection that Plaintiffs lack standing is "a complete defense

to [AEO's] third party action."  Exp. Reply 8.  Put differently, if the Court concludes that

Plaintiffs have standing and approves the Class Settlement, Experian's previously-filed motion to

dismiss the third-party action, in which Experian argued that Plaintiffs lack standing, will be

denied.  Although true,[15] Experian was allowed to press its objection that Plaintiffs lack standing.

Having denied that objection, the Court sees no legal prejudice to Experian from this settlement.

Because the Class Settlement will not deprive Experian of any legal claim or defense, it

lacks standing to object to that settlement.  But even if Experian had standing, its objections

would fail.

### 2.  Even if Experian Had Standing, Its Objections Would Fail.

Experian objects to the definition of the Settlement Class, arguing that the Settlement

Class is unascertainable and it improperly includes individuals who did not receive a text

message via an ATDS, which is necessary to TCPA liability in this case.  Experian withdrew its

---

[15]       Although the Court dismissed Experian's Rule 12(b)(1) motion for lack of standing as moot upon learning
of the settlement in the original action, Experian renewed its motion in the course of objecting to this settlement.
Exp. Reply 4.  Experian's Rule 12(b)(1) motion is DENIED for the reasons discussed *supra*.

ATDS objection without prejudice,[16] Tr. 17:25-19:8, and the Court overrules the

unascertainability objection as meritless.

"The ascertainability doctrine that governs in this Circuit requires only that a class be

defined using objective criteria that establish a membership with definite boundaries." *In re*

*Petrobras Sec.*, 862 F.3d at 264.[17]  Experian's objection to ascertainability is meritless because

the settling parties have identified the 618,301 individual members comprising the Settlement

Class, and that Class List has been filed with the Court and placed under seal.  *See* Dkt. 315.  The

Settlement Class is clearly ascertainable.

In short, all of Experian's objections to this Class Settlement are either overruled or

dismissed.  For the reasons discussed *supra*, the Court concludes that the requirements of Rule

23(a) and Rule 23(b)(3) are satisfied and certifies the Settlement Class.

## III.    The Class Settlement Is Fair, Adequate, and Reasonable.

"Rule 23(e) of the Federal Rules of Civil Procedure provides that the settlement of a class

action must be approved by the district court."  *In re Sony Corp. SXRD*, 448 F. App'x 85, 86 (2d

Cir. 2011).  In general, the approval of a class settlement is within the district court's discretion,

"which should be exercised in light of the general judicial policy favoring settlement."  *In re*

---

[16]      In its objection, Experian argued that the third-party platform that was used to send the text messages at issue may not be an ATDS; accordingly, Experian requested that the Court stay its approval *vel non* of the settlement until the D.C. Circuit decides *ACA International v. FCC*, No. 15-01211 (D.C. Cir. filed July 10, 2015), which Experian contends will address what constitutes an ATDS under the TCPA. Exp. Obj. 17.  At the Final Approval Hearing, Experian agreed to withdraw this objection so long as its withdrawal did not constitute a waiver of the objection.  Tr. 19:2-9.  For the purposes of approving this Class Settlement, the Court does not make a finding relative to whether the third-party platform used in this case constitutes an ATDS; Experian is permitted to raise this objection as a defense in the third-party action with AEO.

[17]      Although courts previously required consideration of whether it was "administratively feasible for the court to determine whether a particular individual is a member," *Brecher v. Republic of Argentina*, 806 F.3d 22, 24-25 (2d Cir. 2015) (citation omitted), the Second Circuit later clarified that "a freestanding administrative feasibility requirement is neither compelled by precedent nor consistent with Rule 23" and declined to adopt such a requirement.  *In re Petrobras Secs.*, 862 F.3d at 264.

*Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 159–60 (S.D.N.Y. 2011) (internal

quotation marks and citation omitted).

The district court may approve the class-action settlement only if it determines that the

settlement is "fair, adequate, and reasonable, and not a product of collusion." *Wal-Mart Stores,*

*Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116–17 (2d Cir. 2005) (citation omitted).  The court

determines that the settlement is fair "by looking at both the settlement's terms and the

negotiating process leading to settlement." *Id*. at 116.  In doing so, the court "review[s] the

settlement for both procedural and substantive fairness." *In re Giant*, 279 F.R.D. at 159–60

(citing *Wal–Mart,* 396 F.3d at 116).

### A. The Settlement is Procedurally Fair.

To find a settlement procedurally fair, the Court "must pay close attention to the

negotiating process, to ensure that the settlement resulted from arm's-length negotiations and

that plaintiffs' counsel . . . possessed the [necessary] experience and ability, and have engaged in

the discovery, necessary to effective representation of the class's interests." *McReynolds v.*

*Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009) (citation omitted).  A class settlement is

presumptively fair, adequate, and reasonable if it is the result of "arm's-length negotiations

between experienced, capable counsel after meaningful discovery." *Wal-Mart*, 396 F.3d at 117

(citation omitted).

The Court finds that the parties conducted meaningful discovery prior to their settlement.

Over the course of the two-year litigation of this case, the parties conducted, among other things,

depositions of the class representatives and Defendants' Rule 30(b)(6) witnesses, reviewed

nearly twenty thousand pages of documents produced by AEO, and pursued and reviewed

extensive third-party discovery (including from Archer, a now-bankrupt third-party texting

platform that sent texts on behalf of AEO).  *See* Mem. 4-5; *see also* Tr. 36:7-37:5.  The Court

also finds that the settlement is the product of arm's-length negotiations between competent

counsel with experience in litigating and settling class actions, including ones involving TCPA

claims.  *See* Terrell Decl. ¶¶ 17-25; Keogh Decl. ¶¶ 11-12, 18-29; Fitapelli Decl. ¶ 5; Owens

Decl. ¶¶ 1, 20-23.  The parties also mediated with the Honorable Morton Denlow of Judicial

Arbitration and Mediation Services, Inc. prior to reaching their settlement.  Terrell Prelim. Decl.

¶ 34.  Under such circumstances, the Court finds that the settlement is procedurally fair.

### B. The Settlement is Substantively Fair.

To determine whether the class settlement is substantively fair, the Court examines the

"fairness, adequacy, and reasonableness of a class settlement according to the '*Grinnell*

factors.'"  *Wal-Mart*, 396 F.3d at 117.  The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement; (3) the stage of the
> proceedings and the amount of discovery completed; (4) the risks
> of establishing liability; (5) the risks of establishing damages; (6)
> the risks of maintaining the class action through the trial; (7) the
> ability of the defendants to withstand a greater judgment; (8) the
> range of reasonableness of the settlement fund in light of the best
> possible recovery; (9) the range of reasonableness of the settlement
> fund to a possible recovery in light of all the attendant risks of
> litigation.

*Id*.  (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)).

### 1.  Complexity, Expense, and Likely Duration of Litigation

The Court finds that the first *Grinnell* factor weighs in favor of final approval of the class

settlement.  The parties had completed most of their fact discovery, but they needed to conduct

expert discovery and brief their motions for class certification and summary judgment.  Mem. 7-

8; *see also* Tr. 37:3-13.  Continued litigation would have resulted in substantial time and expense

to the parties.  Many of the legal and factual issues presented in this class action are complex.

For example, the Court would have had to resolve whether AEO was vicariously liable for texts made from a third-party text platform and whether the text platform was an ATDS.  In addition, the Court would have had to decide whether the consent *vel non* of individual class members to the text messages precluded class certification.

### 2.   Reaction of the Class to the Settlement

The record reflects that the Settlement Class has reacted positively to the settlement.  Of the 618,301 Class Members, only nine Class Members have excluded themselves from the settlement, and only six objections were filed.  Although the claim rate is fairly low (roughly six percent), the relatively few number of exclusions and objections nevertheless weighs in favor of the settlement's substantive fairness.  *See, e.g.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001) (affirming the district court's determination that seventy-two exclusions and eighteen written objections out of 27,883 notices was a "small number of objections [that] weighed in favor of the settlement").  Accordingly, the second *Grinnell* factor also weighs in favor of approval of the Class Settlement.

### 3.   Stage of the Proceedings and the Amount of Discovery Completed

The third *Grinnell* factor examines the stage of the litigation and whether "sufficient discovery has been completed to understand Plaintiffs' claims and negotiate settlement terms." *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04 CIV 8141 DAB, 2010 WL 5060697, at *3 (S.D.N.Y. Dec. 2, 2010), *aff'd*, 452 F. App'x 75 (2d Cir. 2012).  In reviewing this factor, courts "focus[ ] on whether the plaintiffs obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy of any settlement proposal."  *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405 (CM), 2015 WL 10847814, at *7 (S.D.N.Y. Sept. 9, 2015) (quoting *In re*

*Advanced Battery Techs., Inc. Sec. Litig.*, No. 11 Civ. 2279 (CM), 2014 WL 1243799, at *6 (S.D.N.Y. Mar. 24, 2014)).

As discussed *supra*, the parties had the benefit of substantial discovery to make an informed assessment of Plaintiffs' claims and AEO's defenses. The parties also conducted additional discovery to identify the size of the Settlement Class, which they reviewed prior to deciding to settle. The Court finds that this factor also weighs in favor of its approval of the class settlement.

       4.   <u>Risks of Class Prevailing (Establishing Liability, Establishing Damages, and Maintaining the Class Action Through the Trial)</u>

The fourth (risk of establishing liability), fifth (risk of establishing damages), and sixth (risk of maintaining the class action through the trial) factors also support the Court's approval of the settlement. "In assessing factors 4, 5 and 6, which are often considered together, the Court is not required to decide the merits of the case, resolve unsettled legal questions, or to foresee with absolute certainty the outcome of the case. Rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Id.* at *8 (internal marks and citations omitted).

Plaintiffs risked losing on the merits of this case based on AEO's defense that AEO was not vicariously liable for texts made from a third-party text platform and Experian's argument that the system that was used to send the texts was not an ATDS. In addition, class certification may have posed challenges for Plaintiffs because of individualized issues of consent.[18] By reaching a settlement, these risks were alleviated. Therefore, the Court finds that the fourth, fifth, and sixth *Grinnell* factors also weigh in favor of the settlement.

---

[18]    *See* note 13, *supra*, for a discussion of the potential problems in establishing predominance at the class certification stage.

5.   Ability of AEO to Withstand a Greater Judgment

The record does not reflect, and Plaintiffs do not cite any facts, suggesting that AEO could not withstand a larger judgment.  But "this factor, standing alone, does not suggest that the settlement is unfair," especially if the other factors weigh in favor of settlement.  *D'Amato,* 236 F.3d at 86.  Without any evidence as to whether AEO could withstand a larger judgment, the Court finds that this factor neither weighs in favor of nor against approval of the settlement.

6.   Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation

The final two *Grinnell* factors—"the range of reasonableness of the settlement fund in light of the best possible recovery" and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation"—also weigh in favor of approval of the settlement.  "The determination of whether a settlement amount is reasonable does not involve the use of a mathematical equation yielding a particularized sum."  *Fleisher*, 2015 WL 10847814, at *10 (citation omitted).  Rather, the "range of reasonableness" reflects "a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Wal-Mart*, 396 F.3d at 119.

The Court concludes that the settlement amount falls well within the range of reasonableness.  The $14,500,000 settlement amount results in a payout of over $232 to each claiming Class Member, which is a generous recovery for a minor annoyance and exceeds many other court-approved TCPA class settlements.  *See, e.g.*, *Gehrich v. Chase Bank USA, N.A.*, No. 12 C 5510, 2016 WL 806549, at *7 (N.D. Ill. Mar. 2, 2016) ($52.50 payout for each claimant). This settlement amount is reasonable in light of the risks involved in litigation discussed *supra*.

25

Although Plaintiffs, had they prevailed at trial, may have collected significantly more in statutory damages, "that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell,* 495 F.2d at 455, 455 n.2.  Here, although the Class Members "receive less than the maximum value of their TCPA claims, [] they receive a payout without having suffered anything beyond a few unwanted calls or texts, they receive it (reasonably) quickly, and they receive it without the time, expense, and uncertainty of litigation." *See Gehrich*, 2016 WL 806549, at *7.  Therefore, the Court finds that the eighth and ninth *Grinnell* factors also support final approval of the settlement.

### C. <u>The Objections to Class Settlement Are Overruled</u>

There were four timely objections to the Class Settlement, Dkts. 271, 275, and one that was untimely, Dkt. 306.  Two of the timely objections were withdrawn.  Supp. Keogh Decl., Ex. 1.  The Court dismisses two other objections for lack of standing and overrules one as meritless.

#### 1. <u>Ms. Brooke Bowes and Mr. Mierzwicki Lack Standing to Object.</u>

Brooke Bowes and Mr. Mierzwicki objected to the fairness of the Class Settlement, but neither is a member of the Settlement Class.  *See* Dkt. 315 (enclosing CD-Rom with the Class List).[19]  Because they are not parties to the settlement, their rights and claims, if any, against AEO are not impacted by this Class Settlement.  Therefore, Ms. Brooke Bowes and Mr. Mierzwicki's objections are dismissed for lack of standing.  *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,* 504 F.3d 229, 244 (2d Cir.

---

[19]    Class Counsel and AEO proffered during the Final Approval Hearing that Ms. Brooke Bowes and Mr. Mierzwicki were not on the Class List because they have no evidence that either received unauthorized texts.  Tr. 32:7-34:4.  The Court makes no finding relative to whether Ms. Brooke Bowes and Mr. Mierzwicki should have been members of the Settlement Class.  Although it may have not been perfect, the process Class Counsel and the Plan Administrator used to identify the individuals in the Class was fair and reasonable.  The protection for anyone who should have been in the Class but was not included on the Class List is iron-clad: they are not in the Class and therefore any claims they have against AEO are not being released.  They are free to bring their own lawsuit.

2007) ("Nonparties to a settlement generally do not have standing to object to a settlement of a class action.").

2.   <u>Ms. Kara Bowes's Objections are Overruled.</u>

Ms. Kara Bowes filed a timely objection to the adequacy of the settlement amount and the adequacy of the Class Notice.  Her objections are meritless.

Ms. Bowes objects to the adequacy of the settlement amount because it "recovers only really the tiniest fraction of one percent of the class members' individual statutory damages." Bowes Obj. 5.  Here, each claiming Class Member will receive over $232, which is nearly 50% of the available statutory damages for a non-willful violation of TCPA and about 15% of the statutory damages for a willful violation.  Even if every individual on the Class List had submitted a valid claim, resulting in a smaller percentage of potential recovery, that fact does not make the settlement amount unreasonable.  *See Grinnell,* 495 F.2d at 455, 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").  In addition, Ms. Bowes' *ipse dixit* assertion that a larger settlement amount is warranted because TCPA cases "are relatively simple," ignores the very real litigation risks that Plaintiffs faced.  Ms. Bowes suggests that AEO can withstand a larger settlement amount, but that factor is not dispositive.  Ms. Bowes also makes the laughable argument that even if AEO were to file for bankruptcy as a result of a larger judgment being obtained against it, the Class Members "could expect to do quite well in the bankruptcy reorganization" and potentially emerge as AEO's new owners.  Bowes Obj. 9-10. This argument is entirely meritless.  The Court concludes, for the reasons discussed *supra*, that the settlement is substantively fair.

Ms. Bowes also argues that the Class Notice was inadequate because it did not apprise her of the "the potential value of the claims being released by the settlement," and there was, therefore, "no way to judge the amount offered against the potential recovery."  Bowes Obj. 12. "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness."  *Wal-Mart*, 396 F.3d at 113.  "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings."  *Id*. at 114 (internal quotation marks omitted).

The Court finds that the Class Notice was reasonable and adequate.  The Class Notice fairly apprised the Settlement Class of the claims that were the subject of the settlement, the terms of the settlement (including the size of the settlement, anticipated per-class member recovery, and requested attorneys' fees and service awards), and the options open to the class members in connection with the settlement.  Geraci Decl., Ex. C (postcard notice), Ex. D (e-mail notice).  The Class Notice additionally directed the potential Class Member to the Class Settlement website, which clearly identified the claims released as part of the settlement.  *See* Geraci Decl., Ex. F (website notice) at 5 (discussing claims released by the settlement).  Due process does not require more.  *See Wal-Mart*, 396 F.3d at 116 (Due process does not "require[] further explanation of the effects of the release provision in addition to the clear meaning of the words of the release." (citation omitted)).  To the extent that Ms. Bowes or any other class member had any questions concerning the release, the Class Notice also provided a toll-free number to contact Class Counsel.  *See* Geraci Decl., Exs. C, D, F.

If Ms. Bowes had objected that the release was confusingly worded or that the terms of the settlement were unclear, then her objection might have gained more traction.  Instead, her objection appears to be that she did not receive all the information she wanted in the Class Notice.  But that is not the standard for the adequacy of a Class Notice.  Because the Court finds that the Class Notice "fairly apprise[d]" the class members of the settlement terms and of the class members' options, Ms. Bowes' objection is overruled.  *See Wal-Mart*, 396 F.3d at 114.

At the Final Approval Hearing, Ms. Bowes objected, for the first time, to the Class Settlement's release of claims arising after the end of the Class Period (January 24, 2017) and before the date of the Final Approval Order (early September 2017).  *See* Tr. 23:13-24:7.  This objection is untimely because it was raised approximately three months after the deadline to file objections.  *See* Preliminary Approval Order ¶ 26.  Therefore, Ms. Bowes waived this objection, and it is accordingly dismissed.  *See In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 341 (S.D.N.Y. 2005).[20]

**D.  Motion for Service Awards, Attorneys' Fees, and Costs**

Plaintiffs move for: incentive awards in the amount of $10,000 to each of the four named Plaintiffs; attorneys' fees for Class Counsel in the amount of $4,832,850, which is one-third of

---

[20]     Nevertheless, even if the Court were to consider this objection, the Court would find it meritless because the Class Members were given fair and adequate notice that they would be bound by the settlement's release of their claims.  The postcard and email notice stated that the Class Member would be "bound by the Settlement" and would "release AEO from liability," Geraci Decl., Ex. C at 3; Geraci Decl., Ex. D at 2, and the website notice explained, in greater detail, that the Class Member "agree[d] to release AEO and any other Released Parties, as defined in the settlement agreement, from any and all claims that arise from the text messages to your cellphone telephone at issue in this action" unless he or she opted out.  Geraci Decl, Ex. F at 5.

The Court finds that the Class Notice fairly apprised the Class Members of the broad release that would bind them.  *See In re WorldCom*, 388 F. Supp. 2d at 341 ("Because [the objector] chose to remain a Class Member, there is no unfairness in applying the Release to all of her claims, even if they involve [claims] . . . prior to the Class Period, so long as they are predicated on the same facts alleged in the class action complaint.").  To the extent the objection was not waived, it is overruled.

the settlement fund; and $110,732.71 in costs.  Fees Mot. 1.  For the following reasons, the Court

awards incentive awards, fees, and costs, but at a lesser amount than that requested by Plaintiffs.

1.  <u>Incentive Awards</u>

"Incentive awards are not uncommon in class action cases and are within the discretion of

the court."  *In re AOL Time Warner ERISA Litig.*, No. 02 CV. 8853 (SWK), 2007 WL 3145111,

at *2 (S.D.N.Y. Oct. 26, 2007) (citation omitted).   Courts "look for the existence of 'special

circumstances'" in determining whether and how much to award class representatives.  *Id.*; *see*

*also Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 201 (S.D.N.Y. 1997) ("[W]hen it comes to

incentive awards, the inquiry is whether there are present special circumstances warranting grant

of an award.").  Courts often consider the following factors in assessing requests for incentive

awards:

> the personal risk (if any) incurred by the plaintiff-applicant in
> becoming and continuing as a litigant, the time and effort
> expended by that plaintiff in assisting in the prosecution of the
> litigation or in bringing to bear added value (e.g., factual
> expertise), any other burdens sustained by that plaintiff in lending
> himself or herself to the prosecution of the claim, and of course,
> the ultimate recovery.

*Roberts*, 979 F. Supp. at 200.  In addition, "courts often . . . compare the named plaintiff's

requested award to each class member's estimated *pro rata* share of the monetary judgment or

settlement."  *In re AOL*, 2007 WL 3145111, at *2 (collecting cases).   Nevertheless, the Court

notes that "although payments can be made to compensate named plaintiffs for hardships caused

by the action, class representatives are fiduciaries of the absent class members, and are expected

to endure the ordinary inconveniences of litigation without special compensation."  *Gulino v.*

*Symbol Techs., Inc.*, No. 06 CV 2810 (JG) (AKT), 2007 WL 3036890, at *3 (E.D.N.Y. Oct. 17,

2007).

30

Class Counsel move for an award of $10,000 to each of the four class representatives on the basis that the representatives "thoroughly responded to multiple sets of written discovery and sat for depositions, requiring them to set aside work and personal obligations (and in some cases requiring them to travel out-of-state)." Terrell Decl. ¶ 47. Class Counsel also assert that the representatives "were willing and able to prosecute this case by assisting with the drafting of the complaints, providing information regarding their interactions with AEO, responding to written discovery, sitting for depositions, and testifying at trial." Terrell Decl. ¶ 47.

Although other courts may have awarded $10,000 service awards to class representatives, *see* Fees Mot. 7 (collecting cases), an award of $10,000 to each representative in this case would be excessive, particularly in light of the fact that the settlement results in a payout of only approximately $232 to each claiming Class Member. To the extent that the class representatives incurred any expenses in furtherance of this litigation, the Court is not opposed to reimbursing those expenses. But Class Counsel have not provided any documentation of the class representatives' expenses. In addition, Class Counsel have neither provided documentation of the time or effort that each representative expended in furtherance of this case nor identified any personal risks or burdens incurred by the representatives. At the Final Approval Hearing, Class Counsel proffered that each class representative searched for and produced documents, assisted in the preparation of interrogatory responses concerning their claims, and provided seven to eight hours of deposition testimony. Tr. 42:20-43:19. Based on these facts, the Court concludes that an incentive award of $2,500 to each of the class representatives, which represents a recovery of more than ten times what class members receive and reflects ample compensation for the limited time they invested, is fair and reasonable.[21]

---

[21]     Ms. Bowes argues that *Trustees v. Greenough*, 105 U.S. 527 (1881), and *Central Railroad & Banking Co. of Georgia v. Pettus*, 113 U.S. 116 (1885), preclude an incentive award, in any amount, to class representatives.

2.   Attorneys' Fees and Costs

Plaintiffs also move for an award of attorneys' fees and costs, requesting an award of

$4,832,850 (one-third of the settlement fund) in attorneys' fees and reimbursement of

$110,732.71 in litigation costs.  Fees Mot. 8.  Plaintiffs argue that the Court should award

attorneys' fees using the percentage method, which bases the fee calculation on a percentage of

the settlement fund, rather than the lodestar method, which multiplies the number of attorney

hours reasonably expended by reasonable hourly rates.  *See Wal-Mart*, 396 F.3d at 121

(discussing the percentage and lodestar methods).

Although courts award attorneys' fees under either the lodestar method or the percentage-

of-the-fund method, the "trend in this Circuit is toward the percentage method."  *Id*; *see also*

*McDaniel v. County of Schnectady*, 595 F.3d 411, 417 (2d Cir. 2010) (citing *Wal-Mart*).  This is

because the percentage method "directly aligns the interests of the class and its counsel and

provides a powerful incentive for the efficient prosecution and early resolution of litigation,"

whereas the "lodestar create[s] an unanticipated disincentive to early settlements, tempt[s]

lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of

line-item fee audits."  *Wal-Mart*, 396 F.3d at 121 (citations omitted).  Consistent with the "trend

in this Circuit," *id*., this Court adopts the percentage-of-the-fund method in determining Class

Counsel's fee award.[22]

---

This argument is meritless.  As Plaintiffs point out, both of these case are extremely old and pre-date Rule 23 by decades.  As discussed *supra*, courts routinely award named plaintiffs payment for "special circumstances" arising out of their participation in the class litigation.

[22]     Ms. Bowes argues that the Court should instead adopt the lodestar method because that method is presumptively sufficient for cases involving fee-shifting statutes.  Bowes Obj. 19.  This argument is meritless because the TCPA is not a fee-shifting statute.  In addition, Ms. Bowes points out various drawbacks of the percentage method, but, as discussed *supra*, there also are drawbacks associated with the lodestar method.  The Court finds no basis to depart from the percentage method in this case, using the lodestar as a cross-check.

a. **The *Goldberger* Factors Support the Reasonableness of Class Counsel's Fee.**

Irrespective of whether the percentage or the lodestar method is used, "the '*Goldberger* factors' ultimately determine the reasonableness of a common fund fee." *Id.* Those factors include:

> (1) the time and labor expended by counsel;
> (2) the magnitude and complexities of the litigation;
> (3) the risk of the litigation . . . ;
> (4) the quality of representation;
> (5) the requested fee in relation to the settlement; and
> (6) public policy considerations.

*Id.* at 121-122 (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)).

For the following reasons, the Court concludes that the *Goldberger* factors support an award equal to thirty (30) percent of the settlement fund.

### i.   *Time and Labor Expended By Counsel*

The record reflects that Class Counsel have litigated this case since early 2014 and have expended over 3,900 hours to this case.  *See* Terrell Decl. ¶ 37; Keogh Decl. ¶ 16; Fitapelli Decl. ¶ 16; King Decl. ¶ 19; Owens Decl. ¶ 29.  Among other things, Class Counsel amended the complaint several times, engaged in substantial motion practice, reviewed hundreds of thousands of pages of documents, and deposed several witnesses.  *See* Terrell Decl. ¶¶ 7-12.  The Court finds Class Counsel expended substantial time and labor in furtherance of this case and agrees that this factor tilts in favor of a substantial award.

### ii.   *Magnitude and Complexities of the Litigation*

As discussed *supra* in connection with the Court's approval of the Class Settlement, this case involved complex legal issues, including whether AEO was vicariously liable for the texts sent on a third-party platform, whether the platform was an ATDS, and whether issues of individualized consent precluded class certification.  Discovery was not straightforward; it

required review of hundreds of thousands of pages of documents and substantial third-party discovery, including from a bankrupt third party.  In addition, litigation was conducted in several courts (Southern District of New York, Southern District of Florida, Northern District of Illinois) before the cases were consolidated before this Court.  The Court finds that this factor weighs in favor of a substantial award.

### iii.   *Risk of the Litigation*

"The third *Goldberger* factor—*i.e.,* the risk to counsel of pursuing this case on a contingency basis—is 'perhaps the foremost' factor to be considered in determining whether to award an enhancement."  *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 374 (S.D.N.Y. 2005) (citation omitted).  Class Counsel represented Plaintiffs on a contingent basis, investing considerable time and money (e.g., thousands of attorney hours and tens of thousands of dollars in litigation costs) to further this litigation.  *See* Terrell Decl. ¶¶ 37, 41-44; Keogh Decl. ¶¶ 15-17; Fitapelli Decl. ¶ 15-16, 18; King Decl. ¶¶ 19, 27; Owens Decl. ¶¶ 29, 32-35.  As discussed *supra*, Plaintiffs faced risks that they would not prevail.  In such circumstances, "Class [C]ounsel undertook a substantial risk of absolute non-payment in prosecuting this action, for which they should be adequately compensated."  *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 372 (S.D.N.Y. 2002) (citation omitted).  The Court finds that this factor also supports a substantial award of attorneys' fees.

### iv.   *Quality of the Representation*

"To evaluate the quality of the representation, courts review the recovery obtained and the backgrounds of the lawyers involved in the lawsuit."  *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369 (S.D.N.Y. 2013) (internal quotation marks and citation omitted).  A $14,500,000 settlement fund reflects a substantial recovery for the Class Members.  In addition, Class Counsel

are class action litigators with experience in litigating TCPA class actions, as well as other

complex consumer cases.  *See* Terrell Decl. ¶¶ 17-25; Keogh Decl. ¶¶ 11-12, 18-29; Fitapelli

Decl. ¶ 5; Owens Decl. ¶¶ 20-23.  The Court finds that this factor also weighs in favor of a

substantial fee.[23]

>    v.    *Requested Fee in Relation to the Settlement*

In comparing the amount of the requested fee to the size of the settlement, courts must

ensure that "the percentage awarded does not constitute a 'windfall.'"  *Johnson v. Brennan*, No.

10 CIV. 4712(CM), 2011 WL 4357376, at *18 (S.D.N.Y. Sept. 16, 2011).  The Second Circuit

has noted that the "percentage used in calculating any given fee award must follow a sliding-

scale and bear an inverse relationship to the amount of the settlement" so as to avoid over-

compensating law firms "who obtain huge settlements, whether by happenstance or skill, . . . to

the detriment of the class members they represent."  *Wal-Mart*, 396 F.3d at 122 (quoting *In re*

*Indep. Energy Holdings PLC*, 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003)).  Thus,

"[w]here the size of the fund is relatively small, courts typically find that requests for a greater

percentage of the fund are reasonable."  *Johnson*, 2017 WL 4357376, at *18.

In addition, courts examine whether the requested percentage "is reasonable when

compared to fees awarded in similar cases."  *In re Citigroup*, 965 F. Supp. 2d at 400.  Although

awards as high as one-third of the settlement fund are not uncommon, *see, e.g.*, *Mohney v.*

*Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270 (PAC), 2009 WL 5851465, at

*1, 5 (S.D.N.Y Mar. 31, 2009) ($3,265,000 settlement); *Strougo ex rel. Brazilian Equity Fund v.*

---

[23]    Although Class Counsel generally did a good job, the Court notes that there were aspects of their
representation that were not at the level the Court would have expected from experienced litigators.  For example,
the Class Notice as originally submitted to the Court for preliminary approval had a number of typographical errors
and internal inconsistencies; and the Motion for Service Awards, Attorneys' Fees, and Costs cited to an Owens
Declaration that was not filed in connection with the Motion.

*Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) ($1.5 million settlement), smaller

percentages are also not uncommon.  *See Donoghue v. Morgan Stanley High Yield Fund*, No. 10

CIV. 3131 DLC, 2012 WL 6097654, at *2 (S.D.N.Y. Dec. 7, 2012) ("In 'common fund' cases,

the percentage-of-fund recovery typically falls within a 15% to one-third range.").  The Court

finds that this factor neither weighs nor against Class Counsel's request for a one-third fee.

### vi.    *Public Policy Considerations*

"In rendering awards of attorneys' fees, the Second Circuit and courts in this district also

have taken into account the social and economic value of class actions, and the need to

encourage experienced and able counsel to undertake such litigation."  *Johnson*, 2011 WL

4357376, at *19 (internal quotation marks and citation omitted); *accord In re WorldCom, Inc.*

*Sec. Litig.*, 388 F. Supp. 2d at 359.  The TCPA was enacted to protect consumers from unwanted

automated phone contact.  *See Reyes*, 861 F.3d at 55.  When most consumers' cellular telephone

billing packages included per text charges or limits on texts, a case like this one would have been

particularly valuable from a public policy perspective.  As billing packages have shifted to no

limits on text messages and flat billing, the utility of a case like this is less obvious.  Although

Class Counsel deserves to be adequately compensated, this factor does not militate in favor of

the requested fee.

### b.  **The Lodestar Cross-Check Suggests the Requested Fee Should be Reduced.**

In assessing the reasonableness of a fee award, courts may compare the lodestar to the

fees award under the percentage method "[a]s a cross-check."  *In re Citigroup*, 965 F. Supp. 2d

at 388 (quoting *Wal-Mart*, 396 F.3d at 123).  Where the lodestar method is used as a cross-check,

the Court need not exhaustively scrutinize the hours documented by counsel; instead, the

reasonableness of the lodestar "can be tested by the court's familiarity with the case."  *Sewell v.*

*Bovis Lend Lease, Inc.*, No. 09 CIV. 6548 RLE, 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16,

2012) (citation omitted).  In addition, where the lodestar method is used as a cross-check,

"counsel may be entitled to a 'multiplier' of their lodestar rate to compensate them for the risk

they assumed, the quality of their work and the result achieved for the class."  *In re Telik, Inc.*

*Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008).

Here, Class Counsel asserts that the firms spent approximately 3,911 hours litigating and

settling this matter, which resulted in a lodestar, per their calculations, of approximately

$2,068,562.00.  *See* Terrell Decl. ¶ 37; Keogh Decl. ¶ 16; Fitapelli Decl. ¶ 16; King Decl. ¶ 19;

Owens Decl. ¶ 29.  Plaintiffs' request for attorneys' fees in the amount of $4,832,850 (or one-

third of the fund) is approximately 2.3 times the lodestar.  Of course, that assumes that the

lodestar is reasonable.  The Court notes that, according to the attorneys' fees petition, no fewer

than 19 attorneys worked on this matter, at hourly rates ranging from $250 to $850.  *See* Fitapelli

Decl. ¶ 16; Keogh Decl. ¶ 16; Terrell Decl. ¶ 37; King Decl. ¶ 19; Owens Decl. ¶ 33.  There is no

showing that any of these attorneys in fact bill their time to non-contingent paying clients at

those rates.  Additionally, one firm "billed" two paralegals' time at $275 per hour and two

secretaries' time at $225 per hour.  Terrell Decl. ¶ 37.  Given the fact that five firms were

involved in the litigation, there is reason to suspect that there was duplication of effort and hours

spent coordinating between the various firms that was not strictly in the interest of the class.

Accordingly, the Court finds that the lodestar of approximately $2.06 million is somewhat

inflated.

Although there are cases that have approved multipliers in the range sought by Class

Counsel, *see, e.g.*, *In re Lloyd's Am. Tr. Fund Litig.*, No. 96 CIV.1262 RWS, 2002 WL

31663577, at *27 (S.D.N.Y. Nov. 26, 2002), *aff'd sub nom. Adams v. Rose*, No. 03-7011, 2003

WL 21982207 (2d Cir. Aug. 20, 2003) ("multiplier of 2.09 is at the lower end of the range of

multipliers awarded by courts within the Second Circuit"), lower multipliers are also within the

range of what is reasonable.  *See Hall v. Children's Place Retail Stores, Inc.*, 669 F. Supp. 2d

399, 403 n.35 (S.D.N.Y. 2009) (collecting cases).

 For the foregoing reasons, the Court concludes that an award of $4,350,000, which is 2.1

times the reported lodestar (which, as noted, the Court finds to be somewhat inflated), or 30% of

the settlement fund) in attorneys' fees is fair and reasonable.[24]

### c.  **The Court Awards Class Counsel's Litigation Expenses.**

"It is well-established that counsel who create a common fund like this one are entitled to

the reimbursement of litigation costs and expenses."  *In re Marsh ERISA Litig.*, 265 F.R.D. 128,

150 (S.D.N.Y. 2010).  Class Counsel seek reimbursement of $110,732.71 in litigation expenses,

comprised of expert fees to identify class members, among other things, as well as general

litigation expenses.  *See* Terrell Decl. ¶ 41; Keogh Decl. ¶ 17; Fitapelli Decl. ¶ 18; King Decl. ¶

27; Owens Decl. ¶ 35.  The Court finds that most of these litigation expenses are reasonable,

with the exception of Class Counsel's requests for reimbursement of: "Reproductions & Scans,"

which Ms. Terrell withdrew during the Final Approval Hearing; and Westlaw expenses, which as

explained during the Final Approval Hearing, should be part of a law firm's overhead.

Accordingly, the Court grants Class Counsel $104,785.52 in litigation expenses.

---

[24]     Ms. Bowes objects to Class Counsel's requested fee award, arguing (among other things) that the *Goldberger* factors weigh against the fee award.  Ms. Bowes's arguments are largely without basis in law or fact and are meritless for those reasons.  The Court concludes that the *Goldberger* factors support a substantial award as noted *supra*.

CONCLUSION

For the foregoing reasons, the Court CERTIFIES the Settlement Class, APPROVES the

Class Settlement as fair and reasonable, and DENIES in part Plaintiffs' Motion for Service

Awards, Attorneys' Fees, and Costs.  The Clerk of Court is respectfully directed to terminate

Docket Entry Nos. 267 and 292.


**SO ORDERED.**


Date:  **September 8, 2017**
       **New York, New York**
                                        _____
                                           **VALERIE CAPRONI**
                                           **United States District Judge**

39